JOSEPH H. HUNT
*Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
AUGUST E. FLENTJE
*Special Counsel*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
JOSEPH A. DARROW
FRANCESCA GENOVA
KATHRYNE M. GRAY
BENTON YORK
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-2445
Email: joseph.a.darrow@usdoj.gov
*Trial Attorneys*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O.A., *et al.*, ) | |
| ) | |
| Plaintiffs, and, ) | |
| ) | |
| S.M.S.R., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action Nos. 18-cv-2718, 18-cv-2838 |
| ) | |
| Donald J. Trump, President of the United ) | |
| States, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## Defendants' Cross-Motion for Summary Judgment and
## Opposition to Plaintiffs' Motion for Class Certification

Pursuant to Rules 23 and 56 of the Federal Rules of Civil Procedure and Rules 7 and 23.1 of the Local Civil Rules, Defendants respectfully that the Court deny Plaintiffs' request for class certification, ECF 51, 52, and enter summary judgment in Defendants' favor on all claims brought by Plaintiffs.  These arguments are based upon the memorandum of points and authorities provided below as well as Defendants' prior briefing in this case.

**Memorandum in Support of Defendants'
Cross-Motion for Summary Judgment and
Opposition to Plaintiffs' Motion for Class Certification**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

LEGAL AND PROCEDURAL BACKGROUND ..................................................2

STANDARD OF REVIEW ....................................................................................7

ARGUMENT ..........................................................................................................8

I.     Plaintiffs' Claims Are Not Justiciable................................................................9

        A.     The Court Lacks Subject Matter Jurisdiction ..........................................9

               1.     The Court lacks jurisdiction under 8 U.S.C. § 1252(e)(3)........................12

               2.     The Court lacks jurisdiction under 28 U.S.C. § 1331. ..............................15

        B.     Plaintiffs Lack Article III Standing........................................................24

               1.     The Individual Plaintiffs lack standing....................................................24

               2.     The Organizational Plaintiffs Lack Standing and Fall Outside the Statutory Zone of Interests ................................................................25

II.     Defendants Are Entitled to Summary Judgment on All Counts. ..............................26

        A.     The Rule is Consistent with Sections 1225 and 1158............................26

        B.     The Rule Is a Valid Exercise of Discretion Authorized by Congress....................28

        C.     The Rule Was Properly Issued as an Interim Final Rule ......................29

        D.     The Rule Is Consistent with the INA And Amply Supported by the Record ........32

        E.     The Rule is Consistent with the TVPRA ...............................................35

II.     Class Certification is Inappropriate................................................................36

        A.     This Court Lacks Jurisdiction to Certify Any Class Under 8 U.S.C. §§ 1252(b)(9) & 1252(e)(1).. .............................................................................36

        B.     The Court Lacks Jurisdiction to Certify a Class Seeking Injunctive Relief Under 8 U.S.C. § 1252(f).......................................................................37

C.      Since Most of Plaintiffs' Claims Must be Brought through Individual Petitions for Review or as Claims Under 8 U.S.C. § 1252(e)(3) (Which Cannot Proceed as a Class), the District of Columbia is Not the Proper Venue ....................................38

D.      Even if This Court Had Jurisdiction, Class Certification Would Be Inappropriate.. ........................................................................................................39

.          1.      The Class Definition is Overbroad and Not Ascertainable, As It Potentially Encompasses All Aliens Outside the United States, and the Challenged Actions Apply Only to Aliens on U.S. Soil............................40

2.      Due Process Considerations Counsel Against Binding Future Unknown Class Members..........................................................................................43

3.      The Proposed Class Fails to Meet the Commonality and Typicality Requirements of Rule 23(a)(2) & (3).........................................................44

4.      The Proposed Class Representatives are Inadequate Because They Cannot Vigorously Prosecute the Interests of the Entire Class.............................47

5.      Plaintiffs Seek No Relief That Can Apply to the Entire Class as a Whole........................................................................................................47

V.      **Any Remedy Must be Narrowly Tailored to the Court's Limited Role** ....................**48**

**CONCLUSION** ........................................................................................................**50**

**CERTIFICATE OF SERVICE** ................................................................................**51**

# TABLE OF AUTHORITIES

## CASE LAW

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) .................................................................................... *passim*

*Am. Immigration Lawyers Ass'n  v. Reno*,
   199 F.3d 1352 (D.C. Cir. 2000) ........................................................................... *passim*

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 39, 40

*Artis v. Yellen*,
   307 F.R.D. 13 (D.D.C. 2014) ...................................................................................... 44

*Bennett v. Blanchard*,
   802 F.2d 456 (6th Cir. 1986) ...................................................................................... 43

*Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*,
   419 U.S. 281 (1974) ...................................................................................................... 8

*Brewer v. Lynch*,
   No. CV 08-1747-BJR, 2015 WL 13604257 (D.D.C. Sept. 30, 2015) ................................. 40, 42

*Bringas-Rodriguez v. Sessions*,
   850 F.3d 1051 (9th Cir. 2017) .................................................................................... 41

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) .................................................................................... 42

*Burlington Truck Lines v. United States*,
   371 U.S. 156 (1962) ...................................................................................................... 8

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................................................................ 39, 40

*Castro v. United States Dep't of Homeland Sec.*,
   835 F.3d 422 (3d Cir. 2016) ................................................................................... 9, 14

*Cheruku v. Attorney Gen. of U.S.*,
   662 F.3d 198 (3d Cir. 2011) ....................................................................................... 46

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ............................................................................................... 24

*Comcast Corp. v. Behrend*,
   589 U.S. 27 (2013) ........................................................................................................ 40

*Crawford v. Bell,*
   599 F.2d 890 (9th Cir. 1979) ...................................................................................... 43

*Dababneh v. Gonzales*,
   471 F.3d 806 (7th Cir. 2006) ...................................................................................... 23

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) ............................................................................ 48

*Davis v. Michigan Dep't of Treasury*,
   489 U.S. 803 (1989) ...................................................................................................... 50

*Delgado v. Quarantillo*,
   643 F.3d 52 (2d Cir. 2011) ..................................................................................... 17, 21

*DL v. District of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013) ..................................................................................... 44

*East Bay Sanctuary Covenant v. Trump*,
   No. 18-681, 2018 WL 6053140 (N.D. Cal. Nov. 19, 2018) ......................................... 3

*East Bay Sanctuary Covenant v. Trump*,
   2018 WL 6428204 (9th Cir. 2018) .............................................................................. 27

*East Bay Sanctuary Covenant, et al. v. Trump, et al.*,
   No. 18-cv-06810-JST, 2018 WL 6660080 (N.D. Cal. Dec. 19, 2018) ....................... 32

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) .......................................................................................................... 21

*Gen. Tel. Co., v. Falcon*
   457 U.S. 160 (1982) ...................................................................................................... 40

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) .................................................................................................. 49

*Gillespie v. Crawford*,
   858 F.2d 1101 (5th Cir. 1988) ..................................................................................... 43

*Goff v. Menke*,
   672 F.2d 702 (8th Cir. 1982) ....................................................................................... 43

*Gomez-Palacios v. Holder,*
    560 F.3d 354 (5th Cir. 2009) ................................................................... 23

*Coal. for Common Sense in Gov't Procurement v. United States,*
    821 F. Supp. 2d 275 (D.D.C. 2011) ......................................................... 7

*Grace v. Whitaker,* No. 18-CV-01853 (EGS),
    2018 WL 66238081 (D.D.C. 2018) .......................................................... 27

*Grace v. Whitaker,*
    344 F. Supp. 3d 96 (D.D.C. 2018) ............................................................ 21

*Haider v. Gonzales,*
    438 F.3d 902 (8th Cir. 2006) ................................................................... 23

*Hamama v. Adducci,*
    912 F.3d 869 (6th Cir. 2018) ................................................................... 38

*Hawaii Helicopter Operators Ass'n v. FAA,*
    51 F.3d 212 (9th Cir. 1995) ............................................................... 30, 31

*Hernandez-Perez v. Whitaker,*
    No. 18-3137, 2018 WL 6580478 (6th Cir. Dec. 14, 2018) ....................... 23

*Hi–Tech Pharmacal Co. v. U.S. F.D.A.,*
    587 F. Supp. 2d 13 (D.D.C. 2008) ....................................................... 7, 32

*Horns v. Whalen,*
    922 F.2d 835 (4th Cir. 1991) ................................................................... 43

*Huashan Zhang v. United States Citizenship & Immigration Servs.,*
    344 F. Supp. 3d 32 (D.D.C. 2018) ........................................................... 48

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) ......................................................... *passim*

*Jarkesy v. S.E.C.,*
    803 F.3d 9 (D.C. Cir. 2015) ..................................................................... 21

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ............................................................................... 20

*Jifry v. F.A.A.,*
    370 F.3d 1174 (D.C. Cir. 2004) ......................................................... 30, 31

*Johnson v. Eisentrager*,
  339 U.S. 763 (1950) ........................................................................................ 46

*Karingithi v. Whitaker*,
  913 F.3d 1158 (9th Cir. 2019) ....................................................................... 23

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
  571 F.3d 672 (7th Cir. 2009) ......................................................................... 41

*Kwong Hai Chew v. Colding*,
  344 U.S. 590 (1953) ................................................................................. 9, 46

*L.A. Haven Hospice, Inc. v. Sebelius*,
  638 F.3d 644 (9th Cir. 2011) ......................................................................... 49

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ................................................................................... 9, 46

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................. 9, 24

*Mack Trucks, Inc. v. EPA*,
  682 F.3d 87 (D.C. Cir. 2012) ......................................................................... 30

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ....................................................................................... 49

*Marshall Cty. Health Care Auth. v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993) ....................................................................... 7

*Martinez v. Napolitano*,
  704 F.3d 620 (9th Cir. 2012) ......................................................................... 17

*McNeil v. Guthrie*,
  945 F.2d 1163 (10th Cir. 1991) ....................................................................... 43

*Mobil Oil Corp. v. Dep't of Energy*,
  728 F.2d 1477 (TECA 1983) ........................................................................... 30

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ....................................................................................... 43

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................... 8, 32, 33

*Pereira v. Sessions*,
   138 S. Ct. 2105 (2018) ................................................................................................ 23

*Popa v. Holder*,
   571 F.3d 890 (9th Cir. 2009) ...................................................................................... 23

*Pub. Citizen, Inc. v. F.A.A.*,
   988 F.2d 186 (D.C. Cir. 1993) ...................................................................................... 8

*Qiao v. Lynch*,
   672 Fed. Appx. 134 (2d Cir. 2017) ............................................................................ 17

*R.I.L.-R. v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................................. 48

*Raines v. Byrd*,
   521 U.S. 811 (1997) .................................................................................................... 24

*Ramirez v. U.S. Immigration & Customs Enf't*,
   338 F. Supp. 3d 1 (D.D.C. 2018) ................................................................................ 48

*Regents of the Univ. of Cal. v. DHS*,
   908 F.3d 476 (9th Cir. 2018) ...................................................................................... 19

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) .................................................................................................... 37

*Ross v. Lockheed Martin Corp.*,
   287 F. Supp. 3d 174 (D.D.C. 2017) ...................................................................... 41, 42

*Sale v. Haitian Centers Council, Inc.*,
   509 U.S. 155 (1993) ............................................................................................. *passim*

*Steele v. United States*,
   159 F. Supp. 3d 73 (D.D.C. 2016) .............................................................................. 42

*Texas v. United States*,
   523 U.S. 296 (1998) .................................................................................................... 24

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .................................................................................................... 21

*Trump v. East Bay Sanctuary Covenant*,
   No. 18A615, --- S. Ct. ---, 2018 WL 6713079 (Dec. 21, 2018) .................................... 3

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) ........................................................................ 3, 29, 33, 49

*Twelve John Does v. District of Columbia,*
    117 F.3d 571 (D.C. Cir. 1997) ........................................................................ 47

*United States v. Mendoza,*
    464 U.S. 154 (1984) ........................................................................ 39, 49

*United States v. Verdugo-Urquidez,*
    494 U.S. 259 (1990) ........................................................................ 46

*Util. Solid Waste Activities Group v. EPA,*
    236 F.3d 749 (D.C. Cir. 2001) ........................................................................ 30

*Vargas v. Meese*
    119 F.R.D. 291 (D.D.C. 1987) ........................................................................ 48

*Vetcher v. Sessions,*
    316 F. Supp. 3d 70 (D.D.C. 2018) ........................................................................ *passim*

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................ 40, 43

*Xiao v. Barr,*
    979 F.2d 151 (9th Cir. 1992) ........................................................................ 17

## FEDERAL STATUTES

5 U.S.C. § 553(b)(B) ........................................................................ 2, 30

5 U.S.C. § 706(2)(A) ........................................................................ 8

8 U.S.C. § 1158 ........................................................................ 6, 26, 41

8 U.S.C. § 1158(a) ........................................................................ 1, 23

8 U.S.C. § 1158(a)(1) ........................................................................ 1, 26

8 U.S.C. § 1158(b) ........................................................................ 3

8 U.S.C. § 1158(b)(1) ........................................................................ 26

8 U.S.C. § 1158(b)(1)(A) ........................................................................ 1, 26

8 U.S.C. § 1158(b)(2)(A) ........................................................................ 26, 38

8 U.S.C. § 1158(b)(2)(C) ....................................................................... 1, 3, 26, 28

8 U.S.C. § 1158(b)(3)(C) ............................................................................ 35, 36

8 U.S.C. § 1158(d)(5)(B) .................................................................................... 27

8 U.S.C. § 1182(a)(6)(A) ............................................................................ 11, 18

8 U.S.C. § 1182(a)(7) ................................................................................ 11, 17, 18

8 U.S.C. § 1182(f) ................................................................................................... 3

8 U.S.C. § 1185(a)(1) ................................................................................... 30, 31

8 U.S.C. § 1225(b) .......................................................................................... *passim*

8 U.S.C. § 1225(b)(1) ..................................................................................... 11, 13

8 U.S.C. § 1225(b)(1)(A)(2) .......................................................................... 11. 18

8 U.S.C. § 1225(b)(1)(A)(i) ................................................................................. 11

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ......................................................................... 31

8 U.S.C. § 1225(b)(1)(B) .................................................................................... 29

8 U.S.C. § 1225(b)(1)(B)(ii) ............................................................................... 27

8 U.S.C. § 1225(b)(1)(B)(v) ......................................................................... 26, 27

8 U.S.C. § 1225(b)(2)(A)(i) ................................................................................ 17

8 U.S.C. § 1225(b)(2)(A) ............................................................................... 11, 18

8 U.S.C. § 1229(a) ................................................................................................ 23

8 U.S.C. § 1229a ........................................................................................... *passim*

8 U.S.C. § 1231(a)(5) ................................................................................. 5, 10, 45

8 U.S.C. § 1231(b)(3) ...................................................................................... 6, 45

8 U.S.C. § 1232 ..................................................................................................... 35

8 U.S.C. § 1252 ............................................................................................. *passim*

8 U.S.C. § 1252(a)(2)(A) .................................................................................................. 15

8 U.S.C. § 1252(b)(2) ....................................................................................................... 38

8 U.S.C. § 1252(b)(9) ................................................................................................ *passim*

8 U.S.C. § 1252(e) ............................................................................................................ 22

8 U.S.C. § 1252(e)(1) ................................................................................................. 36, 49

8 U.S.C. § 1252(e)(1)(A) ..................................................................................... 13, 15, 50

8 U.S.C. § 1252(e)(1)(B) .......................................................................................... 18, 37

8 U.S.C. § 1252(e)(2) ....................................................................................................... 14

8 U.S.C. § 1252(e)(3) ................................................................................................ *passim*

8 U.S.C. § 1252(e)(3)(A) ........................................................................................... 14, 15

8 U.S.C. § 1252(e)(3)(A)(ii) ............................................................................................. 50

8 U.S.C. § 1252(e)(4) ................................................................................................. 24, 50

8 U.S.C. § 1252(e)(4)(B) .................................................................................................. 50

8 U.S.C. § 1252(f) ............................................................................................................. 37

8 U.S.C. § 1252(f)(1) ................................................................................................. 37, 38

8 U.S.C. § 1255(i) ............................................................................................................. 46

28 U.S.C. § 508 ............................................................................................................... 6, 7

28 U.S.C. § 1331 ...................................................................................................... 8, 9, 15

## REGULATIONS

8 C.F.R. § 208.13(c)(3) ............................................................................................. 14, 35

8 C.F.R. § 208.31 ...................................................................................................... 10, 14

8 C.F.R. § 208.31(b) ........................................................................................................... 5

8 C.F.R. § 208.31(e) ................................................................................. 6, 10

8 C.F.R. § 208.31(f) ...................................................................................... 6

8 C.F.R. § 208.31(g) ...................................................................................... 6

8 C.F.R. § 208.31(g)(2) ................................................................................. 6

8 C.F.R. § 241.8(e) ...................................................................................... 45

8 C.F.R. § 1.2 .............................................................................................. 41

8 C.F.R. § 1208.13(c)(3) .............................................................................. 14

8 C.F.R. § 1208.16(b) .................................................................................. 45

8 C.F.R. § 1208.16(c) ..................................................................................... 6

8 C.F.R. § 1208.2(c)(3)(i) ............................................................................... 6

8 C.F.R. § 1001.1(q) ................................................................................... 41

8 C.F.R. § 208.30(e)(5) ........................................................................ *passim*

8 C.F.R. § 1208.30(e) ..................................................................... 13, 14, 27

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(a) ............................................................................ 2, 9, 40

Fed. R. Civ. P. 23(a)(2) ............................................................................... 44

Fed. R. Civ. P. 23(b)(2) ......................................................................... 40, 47

Fed. R. Civ. P. 56 ......................................................................................... 7

Fed. R. Civ. P. 56(a) ..................................................................................... 7

Fed. R. Civ. P. 82 ....................................................................................... 39

## PUBLIC LAW

Pub. L. No. 105-277 ...................................................................................... 6

## FEDERAL REGISTER

73 Fed. Reg. 75, 540-01 ........................................................................................ 46

83 Fed. Reg. 55,934 ............................................................................................... 3

## LEGISLATIVE HISTORY

H.R. Rep. No. 104-469(I) ...................................................................................... 16

H.R. Rep. No. 109-72, at 173 ................................................................................ 16

**INTRODUCTION**

The Court should grant summary judgment for Defendants. The Presidential Proclamation and Interim Final Rule at issue, which together operate to dissuade illegal entry and channel asylum seekers at the country's southern border to ports of entry to properly file their asylum claims, are valid exercises of the Executive Branch's authority under the Immigration and Nationality Act (INA) and U.S. Constitution. The cause for these measures has a more than ample basis in the record. Defendants are entitled to judgment as a matter of law on several grounds.

To start, Plaintiffs' claims are not justiciable. Plaintiffs may not challenge their eligibility for asylum outside of the administrative and judicial channels established by Congress. Eighteen of the plaintiffs are currently in removal proceedings under 8 U.S.C. § 1229a, and thus must raise any legal challenges to their eligibility for asylum in those proceedings. The two remaining plaintiffs are awaiting criminal prosecution and under a reinstated order of removal, and so are not even subject to the Rule. And none of the Plaintiffs have standing to challenge the rule because none of them have been injured by it or are likely to be injured by it imminently.

Plaintiffs fare no better on the merits. They argue that the new asylum-ineligibility rule, as applied to the proclamation, conflicts with the INA's provision allowing most aliens, including those who enter unlawfully, to apply for asylum. But though the INA allows unlawful entrants *to apply* for asylum, 8 U.S.C. § 1158(a)(1), it confers broad discretion on the Attorney General and Secretary as to whether *to grant* asylum, *id.* § 1158(b)(1)(A), and confers broad authority to adopt categorical "limitations and conditions" on asylum eligibility, *id.* § 1158(b)(2)(C). Plaintiffs take issue with the categorical nature of the Rule. But the statute makes clear that the agencies may exercise discretion over granting asylum through categorical rules, rather than individualized determinations.

Plaintiffs challenge the factual basis for the Rule. But the record amply supports the Executive's measured efforts to channel asylum seekers to lawful ports of entry. Indeed, the record confirms that nearly 1,000 illegal aliens are making the dangerous border crossing each day rather than entering through lawful ports of entry.

1

Plaintiffs further argue that the Rule violates the Administrative Procedure Act's notice-and-comment and effective-date requirements. But those requirements do not apply where, as here, they would harm important national interests. *See* 5 U.S.C. § 553(b)(B), (d)(3). Nor are notice and comment required when agencies are implementing a measure linked intimately with foreign affairs—here, ongoing negotiations between the United States, Mexico, and Northern Triangle countries to address cross-border travel and asylum. *See id.* § 553(a)(1).

Finally, the Court should deny class certification and narrowly tailor any relief it does issue. Plaintiffs request certification of a nationwide class defined as "[a]ll noncitizen asylum-seekers who have entered or will enter the United States through the southern border but outside ports of entry after November 9, 2018." ECF 51 at 15. Federal law bars certification of such a class in multiple ways. Plaintiffs do not move for certification on the sole Plaintiff's expedited removal claim, *e.g.*, ECF 51 at 9 n.7, which is the only claim they can properly bring in this Court, as all other Plaintiffs and claims must be brought, individually, in a petition for review to a court of appeals overseeing the venues where those claims are being heard. Aside from these jurisdictional bars, Plaintiffs fail to meet the certification requirements of Fed. R. Civ. P. 23(a) and (b). The class members are unascertainable as they include any alien who ever may enter the United States unlawfully. They may or may not be injured by the Rule based on their individual type of proceedings and available admission claims, and thus their cases do not present the Court with a single question it can answer nor permit a universal remedy across the board. Were the Court to grant Plaintiffs relief on the merits, it should be limited to declaratory relief that is no broader than necessary to remedy the alleged injuries of these Plaintiffs.

## LEGAL AND PROCEDURAL BACKGROUND

The Court is familiar with the legal and factual background of this case, which the Government set out in its prior briefing, O.A., ECF 22 at 4-10; S.M.S.R., ECF 31 at 4-11, and incorporates here by reference.[1]

---

[1] Pursuant to Local Rule 7(h)(2), Defendants do not submit a Statement of Material Facts, but instead summarize relevant facts, as judicial review in this case is limited to the Administrative Record Defendants have filed. ECF 64. Defendants incorporate the facts stated in their prior briefing. O.A., ECF 22 at 4-10; S.M.S.R., ECF 31 at 4-11.

In brief, the United States has experienced a surge in the number of aliens entering the country unlawfully from Mexico and, if caught, claiming asylum and remaining in the country while the claim is adjudicated, frequently with little prospect of actually being granted that discretionary relief.  The President, relying on his "broad discretion to suspend the entry of aliens into the United States," *Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018), and concerned that the status quo encourages dangerous and illegal border crossings and undermines the integrity of the Nation's borders, determined that a temporary suspension of entry by aliens who fail to present themselves for inspection at a port of entry along the southern border is in the nation's interest. *See* 8 U.S.C. §§ 1182(f), 1185(a)(1). In conjunction with that action, the Attorney General and Secretary of Homeland Security, exercising their statutory authority to establish "additional limitations" on asylum, *id.* § 1158(b)(2)(C), and their general authority and discretion over asylum, *id.* § 1158(b), issued an interim final rule rendering ineligible for asylum any alien who enters the country in violation of a proclamation limiting or suspending entry at the southern border.  *See* 83 Fed. Reg. 55934.  The Rule provides a process for aliens covered by the new asylum-eligibility bar who have a reasonable fear of persecution or torture to seek other forms of protection from removal.  Taken together, the Rule and Proclamation: channel asylum seekers to ports of entry, where their claims can be processed in an orderly manner; deter unlawful and dangerous border crossings; reduce the backlog of meritless asylum claims; and assist the Executive Branch in ongoing diplomatic negotiations with Mexico and other countries regarding mass migration.

Procedural History.

a.      *Litigation Challenging the Rule*

Defendants have already detailed the history that led to another district court preliminarily enjoining the Rule from going into effect in *East Bay Sanctuary Covenant v. Trump*, No. 18-681, 2018 WL 6053140 (N.D. Cal. Nov. 19, 2018). ECF 22 at 9. The Government filed a notice of appeal and unsuccessfully sought an emergency stay with the United States Supreme Court

pending the appeal. *Trump v. East Bay Sanctuary Covenant,* No. 18A615, --- S. Ct. ---, 2018 WL 6713079 (Dec. 21, 2018).[2]

     b.    *These Consolidated Lawsuits.*

This consolidated action originated as two separate lawsuits—the first filed November 20, 2018, *O.A. v. Trump*, No. 18-cv-2718 ("O.A."), and the second on December 3, 2018, *S.M.S.R. v. Trump*, No. 18-cv-2838 ("S.M.S.R."). Both sets of Plaintiffs filed amended complaints on December 18, 2018. ECF 39, 40. Unlike with *East Bay*, *O.A.* and *S.M.S.R.* were brought on behalf of individuals claiming to be subject to the Rule, but their arguments for challenging the Rule were substantially the same as in *East Bay*. Plaintiffs here sought entry of a temporary restraining order (TRO) or preliminary injunction against the Rule, and this Court held a joint hearing on the motions on December 17, 2018. The Court heard arguments but declined to rule on injunctive relief pending the Ninth Circuit's resolution of the Government's *East Bay* appeal from the Northern District's preliminary injunction. The Court lifted its stay due to lapse in government appropriations on January 28, 2019 and ordered dispositive briefing.

The Litigants.  The 20 individual Plaintiffs each challenge the Rule because they entered the United States unlawfully after the Rule was issued but are subject to different procedural circumstances. All but one Plaintiff received positive credible fear findings. Because the Rule was enjoined before it could ever be implemented, none of these Plaintiffs has been subject to its enforcement.

     a.    *Plaintiffs Subject to Expedited Removal Orders*

Plaintiff A.V., a citizen of Honduras, entered the country on November 11, 2018, and is subject to a November 12, 2018 expedited removal order. She is in Department of Homeland Security custody pending a criminal prosecution. ECF 22-6.

---

[2] Additionally, the President has extended the duration of the Proclamation by 90 days. Addressing Mass Migration Through the Southern Border of the United States.  84 Fed. Reg. 3665 (Feb. 07, 2019).

ii.  *Plaintiffs Referred for Section 1229a Removal Proceedings*

Eighteen of the 20 Plaintiffs have been referred for full removal proceedings under 8 U.S.C. § 1229a.  A Notice to Appear in those proceedings (NTA),, along with a scheduled court date, has been issued for each of them. These plaintiffs are:

- D.S. (Honduras, mother of C.A., entered Nov. 13).

- C.A. (Honduras, son of D.S., entered Nov. 13)

- G.Z. (Honduras, unaccompanied minor, entered Nov. 10)

- O.A. (Honduras, father of K.S., entered Nov. 13)

- K.S. (Honduras, daughter of O.A., entered Nov. 13)

- D.R. (El Salvador, mother of adult P.R., entered Nov. 13)

- P.R. (El Salvador, adult daughter of D.R., entered Nov. 13)

- G.R. (Nicaragua, entered Nov. 13)

- S.M.S.R. (Honduras, entered Nov. 10)

- R.S.P.S. (Honduras, entered Nov. 10)

- L.C.V.R. (El Salvador, mother of 2-year-old C.S.C.C., entered Nov. 18)

- C.S.C.C. (El Salvador, 2-year-old child of L.C.V.R., entered Nov. 18)

- R.G.G. (Guatemala, entered with 2-year-old N.A.G.A. Nov. 17)

- N.A.G.A. (Guatemala, 2-year-old entered with R.G.G. Nov. 17)

- K.P.P.V. (Honduras, entered Nov. 21)

- R.D.P.V. (Honduras, minor child of K.P.P.V., entered Nov. 21)

- A.J.E.A.M. (Guatemala, minor child of A.J.A.C., entered Nov. 15)

- Y.A.L.P. (Guatemala, teenager with non-party child, entered Nov. 26)

iii.  *Withholding-only*

The final Plaintiff, A.J.A.C., is a citizen of Guatemala who entered the United States on November 15, 2018. He previously was ordered removed in 2001 and voluntarily departed in 2005. He re-entered on November 15, 2018, and the Department of Homeland Security (DHS) reinstated his removal order under 8 U.S.C. § 1231(a)(5)when he was apprehended. Section 1231(a)(5) authorizes DHS to reinstate a prior removal order for an alien it finds "has reentered the United

States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.* When an alien subject to a reinstated removal order expresses a fear of returning to the country of removal, DHS refers the alien to USCIS for an interview by an asylum officer to determine whether the alien possesses a "reasonable fear" of persecution or torture if returned to that country. 8 C.F.R. § 208.31(b).

If a USCIS asylum officer determines that the alien has not established a reasonable fear, the alien may request review of that determination by an IJ. 8 C.F.R. § 208.31(f). If the IJ concurs with the determination that no reasonable fear of persecution or torture exists, the case is returned to DHS for execution of the reinstated order of removal, and no administrative appeal is available. 8 C.F.R. § 208.31(g). If, on the other hand, the asylum officer determines that the alien has established a reasonable fear of persecution or torture, the alien is referred to the immigration judge for the filing of an application for and consideration of withholding of removal under 8 U.S.C. § 1231(b)(3) or under the regulations promulgated under section 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, 112 Stat. 2681, which implement the United States' obligations under the CAT. 8 C.F.R. § 208.31(e); 8 C.F.R. § 1208.16(c). Additionally, if upon review of USCIS's negative determination, the IJ finds that the alien does have a reasonable fear, the alien may apply for withholding or deferral of removal. 8 C.F.R. § 208.31(g)(2). In withholding-only proceedings, the IJ's jurisdiction is "limited to a determination of whether the alien is eligible for withholding or deferral of removal." 8 C.F.R. § 1208.2(c)(3)(i). During withholding-only proceedings, "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." *Id.*

Consistent with this finding, A.J.A.C. expressed a fear of return and received a reasonable fear interview in front of a USCIS asylum officer. However, he appealed to an immigration judge who reversed this determination and referred him for withholding-only proceedings before an IJ. Ex. A at 28-29. His hearing is scheduled for August 26, 2019. Ex. B ¶ 49.

*iv.      Summary Judgment on Amended Complaints and Putative Class Certification*

In their amended complaints, the two groups of Plaintiffs in this consolidated action each assert eight claims.  The *O.A.* Plaintiffs argue that the Rule violates the Administrative Procedure Act through: (I) rulemaking contrary to 8 U.S.C. 1158; (II) rulemaking contrary to 8 U.S.C. § 1225(b); (III) rulemaking contrary to the Trafficking Victims Protection Reauthorization Act; (IV) arbitrary and capricious rulemaking; (V) rulemaking contrary to 28 U.S.C. § 508 and the Appointments Clause; (VI) action contrary to the statutory requirement that asylum be limited through regulation; (VII) a violation of the APA's notice and comment rule; and (VIII) ultra vires rulemaking. ECF 40 at 27-35.  They move for summary judgment on all except the Appointments Clause claim.

The *S.M.S.R.* Plaintiffs bring the following claims: (I) substantive violation of section 1158 and the INA; (II) arbitrary and capricious action in violation of the APA; (III) failure to follow the APA's notice-and-comment procedures; (IV) Due Process Clause violation; (V) substantive violation of the TVPRA; (VI) request for a writ of mandamus; (VII) violation of 28 U.S.C. § 508 and the Appointments Clause; and (VIII) claim under the Declaratory Judgment Act.  ECF 39 at 57-67.  They move for summary judgment on Counts I-V and VIII.

Plaintiffs also request certification of a nationwide class defined as: "All noncitizen asylum-seekers who have entered or will enter the United States through the southern border but outside ports of entry after November 9, 2018." *E.g.*, ECF 51 at 15.

## STANDARD OF REVIEW

Summary judgment is ordinarily available under Federal Rule of Civil Procedure 56 if the movant demonstrates "that there is no genuine dispute as to any material fact and" that, based on the uncontested facts, "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of an Administrative Procedure Act (APA) claim, however, the district court "sit[s] as an appellate tribunal," *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222–23 (D.C. Cir. 1993), to decide "as a matter of law [whether] the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review," *Coal. for Common Sense in Gov't Procurement v. United States*, 821 F. Supp. 2d 275, 280 (D.D.C. 2011).

In short, it is the role of the administrative agency to "resolve factual issues" and "to arrive at a decision that is supported by the administrative record," while it is the role of the district court "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Hi–Tech Pharmacal Co. v. U.S. F.D.A.*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008). The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" if, when challenged on the basis of legal claims such as presented here, such action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Indeed, courts should even "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Pub. Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 197 (D.C. Cir. 1993) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

## ARGUMENT

The Court should enter summary judgment in Defendants' favor on all claims.

At the threshold, the Court lacks jurisdiction over all their claims under 8 U.S.C. § 1252 and 28 U.S.C. § 1331, and they fail to show an injury to provide Article III standing.  Even were the Court to reach the merits, Plaintiffs' claims must fail because the Rule is fully consistent with sections 1158(a) and 1225(b)—and represents a reasonable application of the agency's authority to implement those sections—and has no bearing on protections for unaccompanied alien minors under the Trafficking Victims' Protection Reauthorization Act (TVPRA). Plaintiffs do not move for summary judgment on their Appointments Clause claim. ECF 51 at 4.  Procedurally, the Rule was properly promulgated as an interim final rule pursuant to the good-cause and foreign-affairs

exceptions. As invited by the Court, Defendants incorporate their prior arguments on all of Plaintiffs' claims. *See O.A.,* ECF 22 at 11-45; *S.M.S.R.*, ECF 31 at 11-44; *O.A.*, ECF 36 at 2-3.[3]

The Court should also decline to certify a nationwide class. Section 1252 bars certification of such a class in multiple ways. Plaintiffs do not move for certification on A.V.'s expedited removal claim, *e.g.*, ECF 51 at 9 n.7, which is the only claim they can properly bring in this Court, as all other Plaintiffs and claims must be brought, individually, in a petition for review to the court of appeals overseeing the venues where those claims are being heard. Even absent section 1252's bars, Plaintiffs fail to meet the certification requirements of Fed. R. Civ. P. 23(a) and (b). Finally, were the Court to grant Plaintiffs relief on the merits, it must be limited to declaratory relief that is no broader than necessary to remedy the alleged injuries of these Plaintiffs.

## I.      **Plaintiffs' Claims Are Not Justiciable.**

Plaintiffs fail to carry their burden of establishing that this Court has subject-matter jurisdiction to hear their claims or that they have standing to raise them. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs assert jurisdiction under 28 U.S.C. § 1331 and 8 U.S.C. § 1252(e)(3). O.A. Am. Compl. ¶¶ 29-30; S.M.S.R. Am. Compl. ¶¶ 8, 11. As the Government explained in its earlier filings, which it incorporates by reference here, the Court lacks jurisdiction under both provisions. O.A., ECF 22 at 11-15; S.M.S.R., ECF 31 at 12-15; O.A., ECF 36 at 2-3. Namely, the Court lacks jurisdiction under 8 U.S.C. § 1252(e)(3) because the Rule's changes to the expedited removal procedures have not been applied to any Plaintiff, and all but one Plaintiff lack any "determination" under the expedited removal procedures. This Court also

---

[3] The parties' previous briefing and this memorandum address all claims related to the agencies' statutory authority to promulgate the Rule and Proclamation. The only claim that is potentially unaddressed in the S.M.S.R. Plaintiffs' Due Process claim. Plaintiffs do not develop this claim in their motion for summary judgment. *See generally* ECF 52-1; S.M.S.R., ECF 6-1. The claim is meritless. Plaintiffs are by definition unadmitted aliens seeking asylum after recently—or prospectively—illegally crossing the border. Supreme Court precedent dictates that they lack constitutional rights regarding their claims for relief from removal. *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953); *accord Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 448 (3d Cir. 2016); ); *see also, e.g., Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) ("Denial of . . . discretionary relief 'cannot violate a substantive interest protected by the Due Process clause.'" (quoting *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003)).

does not have jurisdiction under 28 U.S.C. § 1331 because Sections 1252(a)(5) and (b)(9) of INA explicitly foreclose district-court review over Plaintiffs' claims. But even if the court had statutory jurisdiction, the individual Plaintiffs would lack standing to assert their claims, because the challenged rule has not been applied to them and they cannot show any possibility of imminent injury. And the organizational Plaintiffs' claims are not justiciable, because they too lack standing and because they are not within the asylum statute's zone-of-interests. *See* ECF 22 at 15; ECF 31 at 15-20.

### A.    The Court Lacks Subject Matter Jurisdiction.

The individual Plaintiffs' only opportunity to apply for asylum is in the expedited or full removal proceedings that their inadmissibility dictated they be placed in. Therefore, the jurisdictional channeling provisions at 8 U.S.C. § 1252 that govern those immigration proceedings necessarily apply here and deprive the Court of jurisdiction.

To recap, there are nine named individual Plaintiffs in the *O.A. v. Trump* case, who filed the operative complaint on December 18, 2018. *See* ECF 40 ("O.A. Am. Compl."). In the *S.M.S.R. v. Trump* case, there are currently eleven named individual Plaintiffs and two organizational Plaintiffs. *See* ECF 49 ("S.M.S.R. Am. Compl."); *see also* ECF 48 (Notice of Voluntary Dismissal re Z.A.G.G. & D.A.L.G.). Of these 20 named individual Plaintiffs in the consolidated cases, eight Plaintiffs in the *O.A.* case—D.S., C.A., G.Z., O.A., K.S., D.R., P.R., and G.R.—and ten Plaintiffs in the *S.M.S.R.* case—S.M.S.R., R.S.P.S., L.V.C.R., C.S.C.C., R.G.G., N.A.G.A., A.J.E.A.M., K.P.P.V., R.D.P.V., and Y.A.L.P.— received *positive* credible fear findings from USCIS and were served notices to appear in full removal proceedings under 8 U.S.C. § 1229a. Ex. A (New Plaintiffs' Notices to Appear and of Referral) at 1-29; ECF 36, 37 Ex. 3-10. The notices to appear are being calendared with the appropriate immigration courts, Ex. B (providing schedules for 13 of 19 Plaintiffs in proceedings).  These Plaintiffs are in full removal proceedings before an immigration judge, where they may—and if they want such relief, must—apply for asylum. *See* 8 U.S.C. §§ 1229a, 1158(a). At no point was the challenged Rule or proclamation applied to any of these 18 Plaintiffs.

The ninth and final Plaintiff in the *O.A.* suit—A.V.—was issued an order of expedited

removal under 8 U.S.C. § 1225(b) on November 12. *O.A.* ECF 22-6.  A.V. is being criminally prosecuted, however, and thus has not yet had a credible fear interview. The eleventh and final individual Plaintiff in *S.M.S.R.*—A.J.A.C.—was determined to have illegally reentered the United States after having been ordered removed and is therefore subject to the reinstatement of his prior final order of removal under 8 U.S.C. § 1231(a)(5). He is thus *statutorily* ineligible for asylum regardless of the Rule at issue here. *See* 8 U.S.C. § 1231(a)(5). After an immigration judge found A.J.A.C. to have a reasonable fear, he was issued a notice to appear in withholding-only proceedings before an immigration judge. Ex. A at 28-29; Ex. B ¶¶ 46-49; *see* 8 U.S.C. § 208.31(e). A.J.A.C.'s reasonable fear interview was thus conducted in accordance with 8 C.F.R. § 208.31. At no point was the challenged Rule or proclamation applied to either A.V. or A.J.A.C.

Because 19 of the 20 individual Plaintiffs in these consolidated cases were apprehended at the border and have been charged as inadmissible for being present without admission or parole or for lacking proper entry documentation under 8 U.S.C. § 1182(a)(6)(A), (7), 1225(b)(1)(A)(i), each of these Plaintiffs must initially be placed in *one of two* types of immigration proceedings: expedited removal proceedings under 8 U.S.C. § 1225(b)(1) *or* full removal proceedings under 8 U.S.C. § 1229a. No other type of proceeding applies.[4] Under this binary framework, a Plaintiff is *either* in expedited proceedings and subject to the limitations on judicial review in 8 U.S.C. § 1252(e)(3), *or* in full proceedings under section 1229a and subject to the limitations on judicial review in 8 U.S.C. §§ 1252(a)(5) and (b)(9). There is no "in-between" status for these Plaintiffs. Upon their apprehension at the border, they were determined inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) or (a)(7) and immediately placed in either expedited or full removal proceedings, where any asylum claim can be pursued as a form of relief from removal. 8 U.S.C. §§ 1225(b)(1), 1225(b)(2)(A).

Plaintiffs argue that their challenge falls outside the scope of sections 1252(a)(5) and (b)(9) because asylum, in some circumstances, may "be sought affirmatively before an Asylum Officer,

---

[4] The remaining individual Plaintiff—A.J.A.C.—is not eligible for asylum by *statute*, and is subject to separate mandatory procedures. So the rule has absolutely no effect on him because at no point in his proceedings could he apply for asylum. Thus, this filing focuses primarily on the 19 other individual Plaintiffs who are or will be in proceedings where asylum may be requested.

outside of the removal process." ECF 51 at 12. Such circumstances have no bearing on this case because at no time after their apprehension could Plaintiffs have filed an "affirmative" asylum application, *i.e.*, applied for asylum outside their removal proceedings. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (2)(A), 1229a(a)(1), (3). Plaintiffs provide no support for their suggestions to the contrary. *See* ECF 51 ("the jurisdictional limitations in 8 U.S.C. § 1252 do not apply here because the Rule at issue makes a systemic change to asylum eligibility that applies to all refugees seeking asylum, whether as an affirmative claim, in ordinary removal proceedings, or in expedited removal."); ECF 52-1 n.8 (suggesting that plaintiffs could have filed an affirmative application for asylum).

In sum, the Rule was not applied to any of the 20 individual Plaintiffs in this case. And only one Plaintiff is even potentially subject to expedited removal proceedings under 8 U.S.C. § 1225(b). Finally, because at all times after their apprehension, each Plaintiff was subject to either expedited or full removal proceedings—and thus unable to "affirmatively" apply for asylum outside these proceedings or otherwise obtain review of matters related to those ongoing proceedings in an APA action—there can be no meaningful dispute that, *in this case*, either 8 U.S.C. § 1252(e)(3) or 8 U.S.C. §§ 1252(a)(5) and (b)(9) apply to determine the proper scope and type of judicial review available to Plaintiffs. The true issue, then, is whether Plaintiff A.V.'s claims are reviewable under section 1252(e)(3), and whether all other individual Plaintiffs' claims are reviewable in spite of the jurisdiction-channeling provisions of Sections 1252(a)(5) and (b)(9). For the reasons addressed in the government's earlier filings, which it incorporates by reference here, section 1252 precludes this Court's review over all of Plaintiffs' claims. *See* ECF 22 at 11-15; ECF 31 at 12-15.

### 1.      The Court lacks jurisdiction under 8 U.S.C. § 1252(e)(3).

To the extent Plaintiffs invoke jurisdiction under section 1252(e)(3), such a claim must fail because the Rule has not been applied to any Plaintiff's expedited removal proceedings, as Defendants previously argued. O.A., ECF 22 at 11-12, 14-15; S.M.S.R., ECF 31 at 12, 14-15. *See Am. Immigration Lawyers Ass'n ("AILA") v. Reno*, 199 F.3d 1352, 1360 (D.C. Cir. 2000). Section 1252(e)(3) permits "litigation challenging the new system *by, and only by, aliens against whom*

*the new procedures had been applied.*" *Id.* (emphasis added). The only Plaintiff even subject to an expedited removal order has not had the Rule applied against her—both because of the *East Bay* preliminary injunction and because that Plaintiff is currently undergoing criminal prosecution and has not received a credible fear interview—and therefore section 1252(e)(3) provides no avenue for review at this time under governing circuit precedent.

At the outset, only the *O.A.* Plaintiffs argue in any meaningful way that they have established jurisdiction under 8 U.S.C. § 1252(e)(3). *Compare* ECF 40 ¶ 30 (O.A., seeking review under 8 U.S.C. § 1252(e)(3) through a challenge to the "validity of the [expedited removal] system"), *and* ECF 51 at 11-12, *with* ECF 39 ¶ 11 (S.M.S.R., invoking section 1252(e)(3) "[t]o the extent that Plaintiffs' claims constitute '[j]udicial review of determinations under [8 U.S.C. § 1225(b)]"), *with* ECF 52-1 at 17-20 (addressing only section 1252(b)(9)). This makes sense because Plaintiff A.V., who is the sole Plaintiff with a "determination[] under section 1225(b)," would be the only plaintiff with even a remotely colorable challenge to any "regulation, … written policy directive, written policy guideline, or written procedure issued … to implement [] section [1225(b)]." 8 U.S.C. § 1252(e)(3). But this Court nonetheless lacks jurisdiction under this Section because, to the extent the rule "implement[s]" the expedited removal section (§ 1225(b)), the rule has not been "applied" to A.V. or any other Plaintiff (the rest of whom are not subject to expedited removal proceedings at all). *AILA*, 199 F.3d at 1360.

Plaintiffs suggest that the government's December 18 Notice "essentially concedes jurisdiction" because it states that "A.V. is in expedited removal proceedings . . . and so 'is subject to 8 U.S.C. § 1252(e)(3).'" ECF 51 at 11 (quoting ECF 36 at 1). But the government did not suggest that jurisdiction is proper under section 1252(e)(3) by explaining that A.V. is "subject to" that provision. Rather, the point is that because A.V. is in expedited removal proceedings, her only possible avenue to *seek* judicial review in this Court is under section 1252(e)(3). Whether she may *obtain* review under that Section is a separate question, which the government addressed in its earlier filing. ECF 22 at 11-12. Plaintiffs also appear to dispute whether section 1252(e)(3) provides the exclusive means to seek judicial review for aliens subject to expedited removal proceedings or, at minimum, faults the government for not citing "authority to that effect" in its

December 18 "Notice of Filing." ECF 51 at 11 (citing ECF 36). But, as the government has explained, section 1252(e)(3) by its terms is the sole basis for jurisdiction for purposes of any challenge to expedited removal statutes, regulations, and subsidiary policies, including changes to 8 C.F.R. §§ 208.30(e)(5) and 1208.30(e). *See* ECF 22 at 14-15 (citing 8 U.S.C. §§ 1252(e)(1)(A) ("Without regard to the nature of the action or claim … no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) … except as specifically authorized in a subsequent paragraph of this subsection…."), 1252(e)(3)(A) (providing the exclusive means for judicial review of determinations under section 1225(b))); *see also id.* § 1252(g) (limiting any court's jurisdiction to hear claims arising from the decision "to commence proceedings, adjudicate cases, or execute removal orders against any alien" to only that specifically provided for in Section 1252). Here, Plaintiffs do not assert individual habeas challenges in the districts where they are detained claiming they are actually citizens, lack expedited removal orders, or were previously admitted. *See* 8 U.S.C. § 1252(e)(2).  Plaintiffs may only seek judicial review *in this Court* of changes to the expedited removal system that are applied to them under the review scheme in section 1252(e)(3). *See* ECF 36 at 1 (explaining that Congress did not intend for aliens in expedited removal proceedings to obtain review outside the limited procedures in § 1252(e)(3)); *accord Castro,* 835 F.3d at 430 ("§ 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute.").[5]

This Court nevertheless lacks jurisdiction under section 1252(e)(3) to review any Plaintiffs' claim because, to the extent that the Rule "implements" the expedited removal statute through 8 C.F.R. §§ 208.30(e)(5)/1208.30(e) and 208.13(c)(3)/1208.13(c)(3), s*ee* ECF 22 at 12, those regulations have not "been applied" to any Plaintiff, including A.V. *AILA*, 199 F.3d at 1360. A.V.

---

[5] To the extent that the rule implements Section 1225(b), it does so to the limited extent that it amends 8 C.F.R. §§ 208.30(e)(5) and 1208.30(e) to permit asylum officers and immigration judges to deny credible fear based on a mandatory ineligibility bar premised on a Presidential proclamation.  But as with the other Plaintiffs' claims, Plaintiff A.V. may not invoke Section 1252(e)(3) because 8 C.F.R. §§ 208.30(e)(5) and 1208.30(e) have not "been applied" to her, and thus 8 C.F.R. §§ 208.13(c)(3) and 1208.13(c)(3) have also not "been applied" to her. *AILA*, 199 F.3d at 1360.

has not received a negative credible fear determination at all, much less a determination based on the ineligibility bar under the challenged rule. Indeed, she has not even had a credible fear interview. Instead, A.V. is currently subject to criminal prosecution for illegal entry, and it is speculative when, if at all, she will have a credible fear interview, let alone one in which the rule applies. *O.A.* ECF 22-6. And all other individual Plaintiffs, who are subject to full removal proceedings under 8 U.S.C. § 1229a or withholding-only proceedings under 8 C.F.R. § 1208.31, lack any "determination under 1225(b)." 8 U.S.C. § 1252(e)(3)(A). Thus, because they are not subject to expedited removal proceedings at all, any alleged changes to the expedited removal system imposed by the challenged rule had no effect on these Plaintiffs, and they may not invoke section 1252(e)(3). *See AILA*, 199 F.3d at 1360. The same is true for the organizational Plaintiffs. *See* ECF 31 at 15.

Plaintiffs misunderstand the government's argument to say that section 1252(e)(3) challenges may be brought only at the conclusion of expedited removal proceedings, despite the 60-day requirement to bring suit under that Section. ECF 51 at 11-12, n.8. The government has never suggested that an alien must wait until the conclusion of her administrative proceedings to challenge a new rule implementing the expedited removal statute under Section 1252(e)(3). Nor has it argued that there is *no* means to challenge the rule at issue here under Section 1252(e)(3). ECF 51 at 12 n.8. Rather, Section 1252(e)(3) does not supply jurisdiction *in this case* because the only Plaintiff with an expedited removal order challenging the rule has not had that rule applied to her. *See AILA*, 199 F.3d at 1360.

### 2.    The Court lacks jurisdiction under 28 U.S.C. § 1331.

As the Government has explained, O.A., ECF 22 at 12-15; S.M.S.R., ECF 31 at 12-14, the Court also lacks jurisdiction under 28 U.S.C. § 1331 because the provisions of section 1252 strip district courts of jurisdiction over claims that arise from removal proceedings, the forum for which Plaintiffs' asylum claims are properly heard, and channel such claims through an administrative adjudication process for ultimate review by federal courts of appeal. *See* 8 U.S.C. §§ 1252(a)(5),

(b)(9); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.");.

As noted, only Plaintiff A.V. is subject to expedited removal proceedings, the exclusive means for review of which are provided in section 1252(e). *See* 8 U.S.C. §§ 1252(e)(1)(A), 1252(e)(3)(A) (providing the exclusive means for judicial review in cases with expedited removal determinations). No other federal statute provides for review of expedited removal matters. *See* 8 U.S.C. § 1252(a)(2)(A) ("Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review" issues pertaining to expedited removal except as provided at 8 U.S.C. § 1252(e).). Further, A.V. cannot challenge the changes to 8 C.F.R. §§ 208.30(e)(5) and 1208.30(e) under section 1252(e)(3) without any application of those changes to her, so she cannot invoke 28 U.S.C. § 1331 as a basis for jurisdiction for any of her claims (O.A. ECF 22 at 14-15).

For all other Plaintiffs,[6] sections 1252(a)(5) and (b)(9) of the INA preclude district-court jurisdiction over their claims because they are in full removal proceedings under section 1229a and have not been issued final removal orders. Therefore, they may not preemptively raise claims in district court arising from or that can be raised in their removal proceedings, including challenges to the rule's changes to asylum eligibility. 8 U.S.C. § 1252(b)(9) (consolidating "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" into "judicial review of a final order"); *see J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032-35 (9th Cir. 2016) (explaining section 1252 prohibits "policies-and-practices challenges," if they challenge policies or practices that are "bound up in and an inextricable part of the administrative process"). And even if Plaintiffs had final orders of removal, they must direct those challenges to the appropriate court of appeals. 8 U.S.C. § 1252(a)(5) (providing that "a petition for review filed with an appropriate court of appeals…shall be the sole and exclusive means for judicial review of an order of removal"); *J.E.F.M.*, 837 F.3d at 1033-34 (Section 1252 was

---

[6] Except for A.J.A.C., that is, who is in withholding-only proceedings. *See supra*.

"designed to make perfectly clear 'that only courts of appeals—and not district courts—could review a final removal order' [and] that 'review of a final removal order is the only mechanism for reviewing an issue raised in a removal proceeding.'" (quoting H.R. Rep. No. 109-72, at 173 (2005)); *Vetcher Sessions*, 316 F.3d 70, 76 (D.D.C. 2018) ("consolidating all claims [arising from removal proceedings] in courts of appeals after a final order of removal is precisely what Congress intended").

Plaintiffs argue that sections 1252(a)(5) and (b)(9) divest this Court of jurisdiction only where an alien seeks review of an individual final order of removal. ECF 51 at 12. Plaintiffs also suggest that their "legal challenges to general restrictions on asylum eligibility do not arise from individual removal proceedings" and are "thus not covered by § 1252(a)(5) or (b)(9)" because asylum "can be sought affirmatively before an Asylum Officer, outside of the removal process." ECF 51 at 12; ECF 52-1 at 18. Plaintiffs are wrong for several reasons.

Plaintiffs confuse the standard under section 1252. It is not whether a claim (such as an affirmative application for asylum) could *also* arise *outside* of removal proceedings; rather, district court review is precluded if the claim can be brought *inside* removal proceedings. "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." *J.E.F.M.*, 837 F.3d at 1031 ("Section 1252(b)(9) is…'breathtaking' in scope and 'vise-like' in grip and therefore swallows up virtually all claims that are tied to removal proceedings." (quoting *Aguilar*, 510 F.3d 1, 9 (1st Cir. 2007) (emphasis in original)).  That other aliens not in removal proceedings may request asylum in certain circumstances in no way affects the fact that Plaintiffs, who *are* in removal proceedings (where a detailed scheme governs asylum applications before an immigration judge) must exhaust their remedies in those proceedings and only then seek review in a court of appeals. *See, e.g.*, *Xiao v. Barr*, 979 F.2d 151, 153 (9th Cir. 1992) ("even when an alien is not, strictly speaking, seeking to attack a final order of exclusion, judicial review is precluded if the alien has failed to avail himself of all administrative remedies, one of which is the exclusion hearing itself.").  In any event, Plaintiffs lack standing to challenge the Rule's eligibility bar based on affirmative applications for asylum: their sole remedy is through their removal proceedings.

*See* ECF 36 at 2 (explaining that because Plaintiffs were apprehended at the border and charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A), (7), and processed under § 1225(b)(1)(A)(i),  no other status or process exists under the immigration laws in which they would have an opportunity to apply for asylum outside their removal proceedings). No Plaintiff has filed an affirmative asylum application, and Plaintiffs cannot rely on the general ability of others to affirmatively seek asylum to get around the channeling provisions of sections 1252(a)(5) and (b)(9) that apply to Plaintiffs in their removal proceedings. And because Plaintiffs must assert their asylum and protection claims in their removal proceedings, legal challenges concerning their ability to seek asylum are necessarily "inextricably intertwined" with their removal proceedings. *J.E.F.M.*, 837 F.3d at 1033.

That is because a decision by this Court concerning what rules govern an alien's asylum claim in removal proceedings would necessarily entail reviewing the merits of Plaintiffs' claims for relief from removal. *See Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011) (no jurisdiction where relief requested effectively "render[s] the [removal] order" that may ultimately issue "invalid"). In other words, reviewing asylum eligibility criteria outside the context of Plaintiffs' removal proceedings would "require consideration of the merits of [Plaintiff's] eligibility for removal," *Qiao v. Lynch*, 672 F. App'x 134, 134-35 (2d Cir. 2017), and so is "inextricably linked" to those proceedings and subject to section 1252. *See Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (holding in the context of a challenge under the APA that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the [removal proceedings], it is prohibited" by Section 1252").

Similarly, Plaintiffs are wrong that they "were in neither expedited nor ordinary removal proceedings when they filed this suit, and so could have filed an affirmative application for asylum at that time." ECF 52-1 at 18 n.8. As explained above, because all Plaintiffs were apprehended and charged as inadmissible under §§ 1182(a)(6)(A) and (7), and processed under § 1225(b)(1)(A)(i), they were at all times subject to expedited removal and any expressed intent to file for asylum would have  triggered a credible fear interview by an asylum officer. Where the aliens is found to have a credible fear (either by DHS or upon an immigration judge's review of a no reasonable fear

finding by DHS), the expedited removal order is vacated and the case is referred to an immigration judge pursuant to a notice to appear for full removal proceedings, where the alien may then file an application for asylum before the immigration judge. The immigration laws do not provide for some other, "in-between" status from the time Plaintiffs were apprehended and subject to an expedited removal order to the date they were placed in full removal proceedings where they would have been permitted to affirmatively apply for asylum outside of their proceedings. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (2)(A), 1229a(a)(1), (3).

Moreover, section 1252 squarely aims to end class-action and pattern-and-practice systemic challenges outside the petition-for-review process specifically provided for in sections 1252(a)(5) and (b)(9). *Cf.* ECF 51 at 11.[7] Section 1252(b)(9)'s expansive language and use of the phrases "all questions of law and fact" and "arising from any action taken or proceeding brought" evinces Congress' intention to preclude district-court jurisdiction over any claim (including systemic claims) arising from removal proceedings. 8 U.S.C. § 1252(b)(9). Section 1252(a)(2)(D) confirms this intent, ensuring that "constitutional claims or questions of law" may be raised upon a [petition for review] filed with an appropriate court of appeals in accordance with this section." *Id.* § 1252(a)(2)(D); *see J.E.F.M.*, 837 F.3d at 1035 (Congress specifically rewrote section 1252(b)(9) to "channel review of all claims, including policies-and-practices challenges" brought by groups in addition to individuals); *Vetcher*, 316 F. Supp. 3d at 75 (holding that section 1252 channeling provisions barred jurisdiction over prisoners' challenge to alleged "unconstitutional policies and practices" depriving him access to library materials).

Further, Plaintiffs are wrong that sections 1252(a)(5) and (b)(9) seek to channel only those issues arising from an order of removal. ECF 51 at 12. Those sections preclude district-court review of "all questions of law and fact … arising from *any action taken or proceeding brought* to remove an alien." 8 U.S.C. § 1252(b)(9) (emphasis added). Thus, sections 1252(a)(5) and (b)(9) channel all issues arising from any action taken to initiate and arising from Plaintiffs' removal

---

[7] Plaintiffs acknowledge that they have no authority to pursue their section 1225 claim on a class basis and are limited to pursing it on an individual basis under 8 U.S.C. § 1252(e)(1)(B). ECF 51 at 9 n.7. Their suggestion that they are nonetheless entitled to a nationwide injunction on their "individual claims," *id.*, is wrong for the reasons set forth above. *See supra.*

proceedings, not just those arising from a final order of removal. Only "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M.*, 837 F.3d at 1032 (citations omitted); *see also Aguilar*, 510 F.3d at 11 (interpreting "arising from" "to exclude claims that are independent of, or wholly collateral to, the removal process").  While these sections require that a petition for review in a court of appeals be *filed* only after a final order of removal, they do not limit the issues subject to their channeling provisions to only those *arising from* the narrow determination of removability itself. *See Vetcher*, 316 F. Supp. 3d at 76 (noting "these two subsections streamline *all issues* arising from removal proceedings into a petition for review" and that such issues encompass claims such as right to counsel) (citing *J.E.F.M.*, 837 F.3d at 1033). *J.E.F.M.*, *Aguilar*, and *Vetcher* all make clear that, even assuming actual application of the Rule's changes to Plaintiffs, Plaintiffs' challenges to the Rule's asylum eligibility bar present legal questions that are not "independent" or "ancillary" to their removal proceedings. "Rather these claims are bound up in and an inextricable part of the administrative process," and are therefore subject to the exhaustion and limited judicial review provisions of 8 U.S.C. § 1252, and precluded from district-court review here. *J.E.F.M.*, 837 F.3d at 1033.

Plaintiffs cite *Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476, 504 n.19 (9th Cir. 2018), arguing that "Section 1252(a)(5) applies only to judicial review of an order of removal." ECF 51 at 12. There, the court held that section 1252(g)—which bars judicial review of "any cause or claim by or on behalf of any alien arising from the decision or action … to commence proceedings, adjudicate cases, or execute removal orders"— did not deprive the court of jurisdiction over APA challenges to DHS's programmatic rescission of a policy that provided deferred action and work authorization to certain individuals without lawful immigration status who had entered the United States as children. *Id.* at 503-04. In a footnote, the court also stated that section 1252(b)(9) did not bar jurisdiction, based on its view that that section applied "only to those claims seeking judicial review of orders of removal." *Id.* at 504, n.19. But this brief, footnoted *dicta* cannot be read to overcome the Ninth Circuit's detailed analysis and holding regarding section 1252(g)'s scope in *J.E.F.M.* or the Supreme Court's plurality in *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (Alito, J.) (Section 1252(b)(9) precludes review of the "decision to detain [aliens] in the first place

or to seek removal" or "any part of the process by which their removability will be determined"); *id.* at 852 (Thomas, J. concurring) (through § 1252(b)(9), "Congress has prohibited courts from reviewing aliens' claims related to their removal").

Plaintiffs also argue that "the fact that claims *could* be brought in removal proceedings does not mean that they are subject to Section 1252(b)(9); the question is whether the claims in fact arose out of such proceedings, and Plaintiffs' claims did not." ECF 52-1 at 18 n.8. This is wrong. Sections 1252(a)(5) and (b)(9) channel all claims arising out of removal proceedings and requires an alien to first exhaust claims there. That a claim could be brought there means that it must be brought there, because it arises out of removal proceedings, meaning that it must be brought there before it may be raised for federal appellate court review on a petition for review. *See J.E.F.M.*, 837 F.3d at 1034; *Vetcher*, 316 F. Supp. at 76. Thus, the fact that a claim *could* be raised is, in fact, determinative. Moreover, Plaintiffs preemptively challenge the denial of applications for asylum that have not yet been made and, thus, any decision here would necessarily mean that the Court would be ruling on an issue that will be pending before the immigration court before that process even has a chance to play out. In other words, their premature legal challenges in this Court are inextricably linked with their removal proceedings such that deciding them here would pretermit those proceedings. *J.E.F.M.*, 837 F.3d at 1033. Indeed, the question of whether Plaintiffs are eligible for asylum or related protection from removal will likely be a central question in their removal proceedings, and the relief they seek in this Court may well be granted in that process. *See Delgado*, 643 F.3d at 54 (no jurisdiction over claims where relief requested effectively "render[s] the [removal] order" that may ultimately issue "invalid").

Thus, deciding any future asylum claim—a request for relief from removal—presents questions "arising from" Plaintiffs' removal proceedings, barring district-court review of Plaintiffs' asylum-related challenges. 8 U.S.C. § 1252(b)(9). If Plaintiffs are denied asylum in removal proceedings, they may challenge that decision before an immigration judge in those proceedings. And any final order of removal entered against Plaintiffs may then be challenged in the appropriate court of appeals. *See J.E.F.M.*, 837 F.3d at 1033; *Aguilar*, 510 F.3d at 9. Plaintiffs

cannot bypass the immigration courts and administrative process they are required to exhaust before proceeding to federal court.[8]

Plaintiffs argue that *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), supports finding jurisdiction here because of judicial reluctance to eliminate forums for judicial review. ECF 51 at 13-14 (citing *Grace*, 344 F. Supp. 3d at 117).   That argument is wrong: section 1252 merely channels claims to the appropriate courts, but does not eliminate federal judicial review over those claims. "[S]ection 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). As Congress made clear by adding Section 1252(a)(2)(D) to the INA in 2005, neither Section 1252(b)(9) nor any other provision of Section 1252 shall be read to preclude review of "constitutional claims or questions of law" in the courts of appeal, which

---

[8] Nor can Plaintiffs show that the review channeling provisions of section 1252 do not apply. ECF 51 at 11 (arguing "the jurisdictional limitations in 8 U.S.C. § 1252 do not apply here"); ECF 52-1 at 18. Even assuming some exception to section 1252's clear statutory command might exist, it would require demonstrating that (1) lack of district-court jurisdiction "could foreclose all meaningful judicial review," (2) Plaintiffs' claims are "wholly collateral to [section 1252's] review provisions," and (3) the lawsuit is "outside the agency's expertise." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994). Those criteria are not satisfied. First, section 1252 provides for meaningful judicial review. Under 8 U.S.C. § 1252(a)(5), Plaintiffs may "secure judicial review in a court of appeals when (and if)" their removal proceedings "culminate[] in a resolution" through a final removal order. *Jarkesy v. S.E.C.*, 803 F.3d 9, 12 (D.C. Cir. 2015). "[W]hile [§§ 1252(a)(5) and (b)(9)] limit *how* aliens can challenge their removal proceedings, they are not jurisdiction-stripping statutes that, by their terms foreclose *all* judicial review of agency actions. Instead, the provisions channel judicial review over final orders of removal to the court of appeals." *J.E.F.M.*, 837 F.3d at 1031 (emphasis in original). Thus, Plaintiffs may eventually seek judicial review, assuming they are denied anything, "but just not in *this* Court." *Vetcher*, 316 F. Supp. 3d at 77 (emphasis in original). Second, as explained, Plaintiffs' challenges to the rule's changes in asylum eligibility are inextricably intertwined in their impending removal proceedings, where Plaintiffs will presumably seek asylum and receive a decision either granting or denying them the relief they seek here. Far from a suit wholly collateral to section 1252's scheme, Plaintiffs' suits request relief that immigration courts routinely afford. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22 (2012). Third, the question of Plaintiffs' asylum eligibility is squarely within immigration courts' expertise. Thus, nothing about Plaintiffs' suit exempts it from section 1252's review channeling provisions such that they may seek review now, in this Court. And finally, that relief available in removal proceedings may be different than district court cannot overcome a clear statutory prescription against district court review." *J.E.F.M.*, 837 F.3d at 1038.

may be "raised upon a [petition for review] filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D).

Plaintiffs continue to maintain that they are not subject to section 1252(b)(9) because some of them were initially issued notices to appear that did not yet specify the date or time to appear. ECF 52-1 at 19-20. They are wrong. Even assuming arguendo they were still formally subject to their preexisting expedited removal orders at the time of filing their suit, that only means section 1252(e) would govern their claims, and as with A.V., the Rule would not yet have been applied to them and therefore a cause of action under section 1252(e)(3) was not yet available to them. *See AILA*, 199 F.3d at 1360. Further, outside of a section 1252(e)(3) claim, had this Court had jurisdiction over any of the Plaintiffs, its only recourse would have been to place them into full removal proceedings, where their claims would be subject to the channeling provision at section 1252(b)(9). 8 U.S.C. § 1252(e)(4) (providing for sole remedy in section 1252(e) case of referral to full removal proceedings). The Court could not have ruled on the merits of their claim for asylum. More importantly, regardless of when the NTA was filed, Plaintiffs, except for AV, are *now* in removal proceedings and adjudication of their asylum claims will occur there. Any issues will arise from those removal proceedings under section 1252(b)(9), which includes no timing requirements for channeling jurisdiction or exception for district court cases filed prior to service of NTAs. *See* 8 U.S.C. § 1252(b)(9). Reading such an exception into the statute would permit an alien to thwart Congress's explicit design to channel review of removal through the petition for review process simply by coordinating with an attorney within the United States to file suit the moment the alien arrived at the border, before inspection by authorities could be concluded.

Plaintiffs err in contending that any notice to appear is procedurally defective because it did not contain a date and/or time for an initial hearing at the time it was initially issued or is otherwise inconsistent with *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). *See* ECF 52-1 at 19-20. Even if a notice to appear does not contain a date/time for an initial hearing, that does not render the notice procedurally improper so long as an initial hearing date is later disseminated. *See, e.g.*, *Popa v. Holder*, 571 F.3d 890, 895-96 (9th Cir. 2009) ("[A] Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set

later, is not defective [under section 239(a)(1)(G)(i)] so long as a notice of the hearing is in fact later sent to the alien.") (citing *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Dababneh v. Gonzales*, 471 F.3d 806, 809-10 (7th Cir. 2006), and *Haider v. Gonzales*, 438 F.3d 902, 907 (8th Cir. 2006)). Plaintiffs argue that these authorities predate *Pereira*. ECF 52-1 at 19. *See Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019) (holding, post-*Pereira*, that "the Immigration Court has jurisdiction over removal proceedings when the initial notice to appear does not specify the time and date of the proceedings, but later notices of hearing include that information"); *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 443-45 (BIA 2018) (distinguishing *Pereira*, and holding that a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229(a), so long as a notice of hearing specifying this information is later sent to the alien); *Hernandez-Perez v. Whitaker*, No. 18-3137, 2018 WL 6580478, at *5 (6th Cir. Dec. 14, 2018) ("We agree with the Board that *Pereira* is an imperfect fit in the jurisdictional context and it does not mandate a different conclusion than the one already reached by this court and all our sister circuits."). Here, each individual Plaintiff who was issued an NTA has also received a notice of hearing date. *Pereira* does not dictate that Plaintiffs subject to those notices are not lawfully subject to removal proceedings under 8 U.S.C. § 1229a. And regardless of when they enter removal proceedings, once they do, the Court lacks jurisdiction under sections 1252(b)(9) and (a)(5). A Court has an obligation to ensure jurisdiction exists throughout proceedings, and must dismiss a case even on appeal if circumstances have destroyed its jurisdiction. *See Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012).

## B.  Plaintiffs Lack Article III Standing.

### 1.  The Individual Plaintiffs lack standing.

Plaintiffs' suit fails for an additional reason that independently precludes this Court's review: no Plaintiff can establish any injury attributable to the challenged rule because it has not been applied to Plaintiffs. Plaintiffs therefore cannot demonstrate that the rule causes an

"imminent," "concrete and particularized" injury, *Lujan*, 504 U.S. at 560-61, that is "legally and judicially cognizable, *Raines v. Byrd*, 521 U.S. 811, 819 (1997), sufficient to confer standing.

Here, as the government has explained, *see* O.A., ECF 22 at 15; S.M.S.R., ECF 31 at 15, Plaintiffs cannot and do not identify any injury from application of the rule or proclamation. The Rule was enjoined by a different court and therefore was not applied to Plaintiffs and did not otherwise affect them. Even without that injunction, Plaintiffs lack any injury because the Rule has not been applied to them: 18 individual Plaintiffs are in full immigration proceedings after having received *positive* credible-fear determinations, one Plaintiff is in withholding-only proceedings where he is *statutorily* precluded from seeking asylum, and the remaining individual Plaintiff is being criminally prosecuted and thus has not had a credible fear interview, the setting for the Rule to be applied if it were not enjoined, at all.  Nothing prevents those Plaintiffs who are otherwise eligible from seeking asylum in those removal proceedings, and even were the injunction stayed at some future date, Plaintiffs could challenge the Rule in the courts of appeals. It is therefore speculative whether the challenged rule and proclamation, even if enforced, would injure these Plaintiffs in any imminent way, let alone that such injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

Moreover, unless and until Plaintiffs are denied asylum after being found subject to the Rule's asylum-eligibility bar, their asserted injuries are not ripe because they necessarily assume "contingent future events that . . . may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Indeed, Plaintiffs' removal proceedings have only just begun. They are many steps removed from exhausting the administrative process required of them before they can seek federal-court review of their claims, which, as explained, necessarily arise from their removal proceedings. Any injury they claim here is unripe: each of the Plaintiffs may be denied asylum on bases other than the Rule and Proclamation, or may be granted asylum or other protection from removal, as appropriate.

Finally, the Northern District of California has, in effect, provided Plaintiffs with the full relief they seek from this Court pursuant to their motion for a preliminary injunction. Plaintiffs

have not and cannot identify any cognizable injury they suffer that would justify this Court entering a second, duplicative injunction.

> **2. The Organizational Plaintiffs Lack Standing and Fall Outside the Statutory Zone of Interests.**

As the government has explained and incorporates here, the organizational Plaintiffs, CAIR and RAICES, also lack standing. *See S.M.S.R.*, ECF 31 at 16-18. Those organizations also fall outside the zone of interests of the asylum statute. *See id.* at 18-20. Plaintiffs have not provided further argument for why they have standing or fall within the statutory zone of interests. Defendants incorporate by reference those portions of its earlier briefing. *S.M.S.R.*, ECF 31 at 16-19.

### II. Defendants Are Entitled to Summary Judgment on All Counts.

As the government has explained, the Rule and proclamation fall well within the Executive's authority to regulate the entry of aliens and grant or deny asylum.  O.A., ECF 22 at 16-30, 32-38; S.M.S.R., ECF 31 at 20-37.  This Court's review is limited and deferential, and asks only whether there is a rational connection between the facts in the record and the government's action.  Under this deferential standard, the facts in the record amply demonstrate a border security problem arising from illegal crossing by persons who make predominantly meritless claims for admission at the southern border once apprehended, which is rationally connected to the Executive Branch's measured, tailored effort to disincentivize such illegal entry, an initiative which falls within its statutory authority under 8 U.S.C. §§ 1182 and 1158. The Rule also comports with the agencies' authority under 8 U.S.C. 1225(b) and explicitly does not alter the rights of unaccompanied alien minors. Therefore, the Court should grant summary judgment in Defendants' favor on all counts before the Court now.

### A.  The Rule is Consistent with Sections 1225 and 1158.

As the Government has previously argued, the Rule is consistent with INA.  O.A., ECF 22 at 17-27; S.M.S.R., ECF 31 at 20-27.  Specifically, the Rule is consistent with 8 U.S.C. §1158, which authorizes the agency heads to "establish additional limitations and conditions . . . under which an alien shall be ineligible for asylum" on top of the six statutory bars on asylum eligibility

set forth in § 1158(b)(2)(A), as the agency heads did in the Rule for aliens who enter in violation of a Presidential proclamation. *See* 8 U.S.C § 1158(b)(2)(C). The Rule represents one such permissible limitation. The Rule is also consistent with 8 U.S.C. § 1225(b)(1), which provides that asylum officers conducting credible fear interviews may screen out inadmissible aliens based on ineligibility for asylum. *See* 8 U.S.C. § 1225(b)(1)(B)(v). Nothing in section 1225(b)(1) suggests that asylum officers may not consider categorical bars on asylum eligibility in screening out meritless claims.

First, the Rule is consistent with section 1158. *See, e.g.*, S.M.S.R. ECF 31 at § 1158(b)(1) makes a grant of asylum a matter of the Executive's discretion, and § 1158(b)(2)(C) authorizes the agency heads to "establish *additional* limitations and conditions . . . under which an alien shall be ineligible for asylum" on top of the six statutory bars on asylum eligibility set forth in § 1158(b)(2)(A). 8 U.S.C § 1158(b)(2)(C) (emphasis added). Plaintiffs contend that the Rule violates § 1158(a), which provides that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such alien's status, may apply for asylum in accordance with this section." 8 U.S.C. § 1158(a)(1). But the instruction that aliens "may apply" for asylum regardless of whether they entered at a port of entry does not require that an alien must be eligible for or be able to "receive" asylum. Rather, § 1158 carefully distinguishes between an alien's ability *to apply* for asylum and the Executive's authority *to deny* asylum on grounds of ineligibility, imposing different sets of requirements for each stage of the process. Section 1158(a) governs who may apply for asylum, includes several categorical bars to applying (*e.g.*, an alien present in the country for more than one year may not apply). Section 1158(b), in turn, governs who may be granted asylum. To start, § 1158(b)(1)(A) authorizes the Attorney General or the Secretary to "grant asylum to an alien who has applied" as an exercise of discretion. Section 1158(b)(2) specifies six categories of aliens to whom "[p]aragraph (1)" (*i.e.,* the discretionary authority to *grant* asylum to an applicant) "shall not apply." Any alien falling within one of those categories may apply for asylum under §1158(a)(1) but is categorically ineligible to receive it under §1158(b). The text and structure of the statute thus show that "Congress has decided that the right to apply for asylum does not assure

any alien that something other than a categorical denial of asylum is inevitable. . . . [T]here is nothing inconsistent in allowing an application for asylum and categorically denying any possibility of being granted asylum on that application." *East Bay Sanctuary Covenant*, 2018 2018 WL 6428204, Dissent at 3 (Leavy, J., dissenting in part). The rule merely adds an additional bar that operates the same way, as Congress expressly authorized.

Second, the Rule is consistent with 8 U.S.C. § 1225(b). Section 1225(b)(1)(B)(ii) provides that "[i]f the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of [8 U.S.C. § 1225(b)(1)(B)](v)), the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). The definition, in turn, says that "credible fear" means "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158." *Id.* § 1225(b)(1)(B)](v) (emphasis added). Thus, the statute specifically provides for the asylum officer to consider asylum eligibility, and the Rule reasonably applies the statute. Moreover, the INA delegates to the Attorney General and Secretary broad authority to promulgate regulations implementing the expedited removal system, including credible-fear procedures. 8 U.S.C. §§ 1103(a)(3), 1103(g), 1158(d)(5)(B , 1225(b). The Secretary's decision to modify 8 C.F.R. §§ 208.30(e)(5) and the Attorney General's decision to modify § 1208.30(e)(5) under these authorities in this limited circumstance is therefore expressly authorized and reasonable.

Plaintiffs argue that a rule that "categorically prohibits refugees from passing credible fear interviews based on a single criterion" violates section 1225(b)'s alleged requirement of an individualized assessment, relying for this argument on *Grace v. Whitaker*, No. 18-CV-01853 (EGS), 2018 WL 66238081 (D.D.C. 2018). ECF 51 at 9-10. This argument is wrong. *Grace* addressed an adjudicatory determination of whether victims of gang or domestic violence could constitute a particular social group under the asylum standard. *Id. Grace* did not address the Rule challenged here, and, moreover, was based on the erroneous conclusion that the statute precludes categorical bars to asylum. *Id.* at *20 ("[T]he general rule is arbitrary and capricious because there is no legal basis for an effective categorical ban on domestic violence and gang-related claims.").

Both *Grace* and Plaintiffs' argument here are wrong because nothing in the statute proscribes the imposition of a categorical bar; indeed, § 1158(b)(1) makes a grant of asylum a matter of the Executive's discretion, and § 1158(b)(2)(C) authorizes the agency heads to "establish additional limitations and conditions . . . under which an alien shall be ineligible for asylum" on top of the six statutory bars on asylum eligibility set forth in § 1158(b)(2)(A). 8 U.S.C § 1158(b)(2)(C) (emphasis added). Accordingly, *Grace*'s extra-statutory categorical bar against categorical bars should be rejected because it runs directly against the text and intent of the statute.

### B. The Rule Is a Valid Exercise of Discretion Authorized by Congress.

As the government has explained, aliens subject to the Rule are those who violate the proclamation, which temporarily suspends entry between ports of entry along the southern border. *O.A.*, ECF 22 at 28-30, 32-38; *S.M.S.R.*, ECF 31 at 25-27. That suspension—which rests on the President's authority under 8 U.S.C. § 1185(a)(1) and § 1182(f)—is lawful. *See* Proclamation § 2; AR 001. The President may suspend or restrict the entry of any "aliens or of any class of aliens" if he determines such entry "would be detrimental to the interests of the United States," "for such period as he shall deem necessary," 8 U.S.C. § 1182(f), and adopt "reasonable rules, regulations, and orders" governing the "entry" or "depart[ure]" of aliens, "subject to such limitations and exceptions as [he] may prescribe," *id.* § 1185(a)(1). The President found it in the national interest to suspend entry of these aliens and provided a detailed explanation for that determination. Proclamation (preamble). This limitation on entry is consistent with the President's authority under § 1182(f) and § 1185(a)(1), which together permit the President to block a class of aliens from entering, even if the entry of such aliens is already illegal. *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 187 (1993). The proclamation does not deny anyone asylum, but simply suspends entry for aliens between ports of entry at the southern border for a temporary period. *See* Proclamation §§ 1, 2. To be sure, the Rule imposes an eligibility bar to asylum for those who violate the proclamation's entry suspension—but, as explained, the INA authorizes the agency heads to establish that bar, and it was both lawful and reasonable to impose such a bar on aliens who violate a Presidential proclamation. *See infra*. Section 1182(f) concerns restrictions on entry—a matter over which the President has broad authority—whereas sections 1158(a) and

(b) go to the separate issue of which aliens are eligible to apply for or receive asylum, which is a matter that the Proclamation does not affect but the Rule lawfully addresses. *See Hawaii*, 138 S. Ct. at 2411.

Plaintiffs have argued that, because the Rule contemplates future Presidential proclamations, the President would essentially be provided a blank check to govern asylum eligibility. ECF 6 at 32. This argument misses the mark: Congress has already provided the President sweeping authority to suspend entry, which the presence or absence of the Rule does not alter, but that authority is limited to entry, and does not extend to dictate the terms of admission of all aliens unlawfully present in the United States at all stages of their presence here. *See Hawaii*, 138 S. Ct. at 2408 (explaining that "§ 1182(f) vests the President with 'ample power' to impose entry restrictions" and "exudes deference" to the President's decisions regarding suspension of entry). The President's section 1182(f) authority applies solely to the discretion over entry into the United States, a core sovereign authority. Congress was aware of the authority provided to the President under section 1182(f) when it revised § 1158, and indeed the Supreme Court had affirmed use of the President's authority to interdict aliens in a manner that prevented them from seeking asylum. *See Sale*, 509 U.S. at 187. Congress could have, but did not, restrict the President's authority regarding the entry of persons from outside the United States. However, central to this authority is a limitation on *entry*.[9] There is thus an inherent limit to the President's broad but not unbounded section 1182(f) authority, *i.e.*, matters concerning entry, which undermines Plaintiffs parade-of-horribles argument portraying unbridled Executive power to deny asylum.

### C.   The Rule Was Properly Issued as an Interim Final Rule.

As the Government has argued, there was good cause for the Rule to take immediate effect. *O.A.*, ECF 22 at 32-38; *S.M.S.R.*, ECF 31 at 35-37. Plaintiffs contend that the Rule violates the APA's procedural requirements because it was issued without notice and an opportunity for

---

[9] There are other restrictions on the President's use of section 1182(f) authority, as well. Section 1182 requires that "the President 'find[ ]' that the entry of the covered aliens 'would be detrimental to the interests of the United States.'" *Hawaii*, 138 S. Ct. at 2408 (quoting 8 U.S.C. § 1182(f)).

comment. *See, e.g.*, ECF 51 at 5.  But the APA provides exceptions to its general notice-and-comment and publication requirements when "the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," 5 U.S.C. § 553(b)(B), (d)(3). The good-cause exception applies when "the very announcement of a proposed rule itself can be expected to precipitate activity by affected parties that would harm the public welfare." *Mobil Oil Corp. v. Dep't of Energy*, 728 F.2d 1477, 1492 (TECA 1983). Significant public-safety harms provide good cause to make rule changes without pre-promulgation notice and comment. *Hawaii Helicopter Operators Ass'n v. FAA*, 51 F.3d 212, 214 (9th Cir. 1995) (delay may increase "threat[s] to public safety").  For instance, the D.C. Circuit, citing the Ninth Circuit's *Hawaii Helicopter* decision, has indicated this standard is met where "delay could result in serious harm." *Jifry v. F.A.A.*, 370 F.3d 1174, 1179–80 (D.C. Cir. 2004). That standard is satisfied here. Moreover, good cause applies "when an agency finds that due and timely execution of its functions would be impeded by the notice and comment otherwise required" under the APA. *Util. Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754–55 (D.C. Cir. 2001). Examples of such circumstances include an agency determination that new rules were needed "to address threats posing a possible imminent hazard to aircraft, persons, and property within the United States," or were "of life-saving importance to mine workers in the event of a mine explosion," or were necessary to "stave off any imminent threat to the environment or safety or national security." *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (citations and internal quotation marks omitted).

The Rule here satisfies the governing requirements.  The agencies recognized that pre-promulgation notice and comment or a delayed effective date "would result in serious damage to important interests" by encouraging a surge to enter the United States between ports of entry before the rule took effect and that each of those crossings risks the safety of aliens and Border Patrol agents.  83 Fed. Reg. 55949-50; AR016. As the preamble to the Rule explained, 396,579 aliens were apprehended in FY 2018 entering unlawfully between ports of entry, on average over 1,000 a day. 83 Fed. Reg. at 55948; AR011, 015, 373, 447.  There were, at the time of the Rule's promulgation, "thousands of aliens traveling in groups . . . expected to attempt entry at the southern

border in the coming weeks" including "large, organized groups [transiting] through Mexico." 83 Fed. Reg. at 55950; *e.g.*, AR017, 386. Hundreds die each year making the dangerous border crossing. AR017. These crossings—which require at-large, mass apprehensions—also "endanger[] . . . [Customs and Border Protection (CBP)] agents who seek to apprehend them." 83 Fed. Reg. at 55935; AR 002. The Departments therefore concluded that immediate implementation is warranted because it will prevent a "rush" at the border before the rule goes into effect, steer the large groups of aliens *en route* to ports of entry to make a safe and orderly crossing, and avoid an increase in the already high number of aliens making the dangerous border crossing to beat the effective date of the rule. 83 Fed. Reg. at 55950; AR017; *see* AR385. As the preamble explains, "[c]reating an incentive for members of those groups to attempt to enter the United States unlawfully before this rule took effect would make more dangerous their already perilous journeys, and would further strain CBP's apprehension operations." 83 Fed. Reg. at 55950; AR017.

This is consistent with D.C. Circuit law, which holds that the good cause exception "excuses notice and comment in emergency situations, or where delay could result in serious harm." *Jifry*, 370 F.3d at 1179–80. Indeed, *Jifry* relies on *Hawaii Helicopter*, which found good cause based on far fewer incidents of safety risk than are presented here. *Id.*; *see Hawaii Helicopter*, 51 F.3d at 214 (noting 20 air tour accidents over about three years). It is also consistent with prior changes to entry policies. As with prior border-policy changes, there is good cause to prevent hundreds of thousands of "foreign nationals from undertaking dangerous border crossings, and thereby prevent the needless deaths and crimes associated with human trafficking and alien smuggling operations.'" 83 Fed. Reg. at 55950 (quoting 69 Fed. Reg. at 48878); *see id.* (citing prior uses of good-cause exception to address border-entry rules); AR017 This is also consistent with Congress's provision regarding changes to those subject to expedited removal, where modifications are permitted "at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Avoiding a surge of illegal border crossings where already hundreds die each year and over a thousand are apprehended each day satisfies the good-cause exception.

Moreover, as Plaintiffs concede, the Northern District of California determined "the Government has identified a 'rational connection between the facts found and the choice made' to

promulgate the interim rule on an emergency basis, and that the Government is likely to prevail on its claim regarding the good cause exception." *East Bay Sanctuary Covenant, et al. v. Trump, et al.*, No. 18-cv-06810-JST, 2018 WL 6660080, at \*21 (N.D. Cal. Dec. 19, 2018). That is, the only other court to consider this very issue already concluded this Rule is likely to be exempt from the APA's prior notice and comment requirements. Plaintiffs take issue with this finding, claiming that ruling was improperly based on a newspaper article from the administrative record rather than the Rule itself. ECF 52-1 at 20-21. That argument makes no sense, because the relevant question is whether the record in fact provides a rational basis for the Rule—and the cited material is part of the record. *See, e.g., Hi–Tech Pharmacal Co.*, 587 F. Supp. 2d at 18. Regardless of *East Bay*'s scope of inquiry, its conclusion was correct and consistent with the numerous findings made by the Departments supporting immediate enforcement of the rule.

As previously explained, O.A. ECF 22 at 34-37, the APA's procedural requirements also do not apply here because the rule "involve[s]" a "foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). The foreign-affairs exception covers agency actions "linked intimately with the Government's overall political agenda concerning relations with another country." *Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1249 (Fed. Cir. 1985). As the Ninth Circuit has explained, "[a] rule of law that would inhibit the flexibility of the political branches [in matters of foreign affairs] should be adopted with only the greatest caution." *Yassini v. Crosland*, 618 F.2d 1356, 1361 (9th Cir. 1980).

D. **The Rule Is Consistent with the INA And Amply Supported by the Record.**

As explained previously and below, the Rule and Proclamation together address a critical issue of safety at the border. The government incorporates by reference its extensive early briefing explaining how the Rule is consistent with the Government's statutory authority and supported by the factual record. O.A., ECF 22 at 16-30; S.M.S.R., ECF 31 at 20-37. The Rule represents a reasonable application of the Executive Branch's authority over admissions at the border to address an undisputable problem concerning mass illegal entry. The Departments' decisions more than

sufficiently provide "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

The Rule is rationally connected to the factual basis laid out in the record. The Rule works in conjunction with a Presidential proclamation to restore control over the border and mitigate the situation whereby aliens enter the country unlawfully and, if apprehended, claim asylum and remain in the country while the claim is adjudicated, often with little prospect of actually being granted that discretionary relief once the merits are reviewed. Presidential proclamations "generally reflect sensitive determinations regarding foreign relations and national security that Congress recognized should be entrusted to the President." 83 Fed. Reg. at 55940 (citing *Hawaii*, 138 S. Ct. at 2411); AR017. As the Rule explains, "Aliens who contravene such a measure have not merely violated the immigration laws, but have also undercut the efficacy of a measure adopted by the President based upon his determination of the national interest in matters that could have significant implications for the foreign affairs of the United States." *Id.* Even if "most of those aliens would already be inadmissible under our laws, the proclamation would impose limitations on entry for the period of the suspension against a particular class of aliens defined by the President. That judgment would reflect a determination that certain illegal entrants—namely, those crossing between the ports of entry on the southern border during the duration of the proclamation—were a source of particular concern to the national interest." *Id.*

"The interim final rule [thus] reflects the Departments' judgment that, under the extraordinary circumstances presented here, aliens crossing the southern border in contravention of such a proclamation should not be eligible for a grant of asylum during the period of suspension or limitation on entry. The result would be to channel to ports of entry aliens who seek to enter the United States and assert an intention to apply for asylum or a fear of persecution, and to provide for consideration of those statements there." *Id.* The Departments thus provided a reason for their policy choice, and explained why implementing it in the way they chose furthered that goal. That

explanation is reasonable, and that is all that is required. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

The Rule rationally addresses the well-documented danger faced by migrants seeking to reach the United States through the southern border by seeking to channel asylum-seekers to lawful ports of entry, rather than attempting surreptitious, illegal crossings. "Unlawful entry puts lives of both law enforcement and aliens at risk." Proclamation (preamble). Plaintiffs unconvincingly contend this conclusion is not rational, stating that seeking asylum through legitimate ports of entry "is not a safe option for refugees—faced with violence and crime in Mexico, they must cross as expeditiously as possible to reach the safety of the United States." ECF 51 at 6. Plaintiffs' disagreement with judgments of the President, however, is not a basis to overturn the Rule given the great discretion afforded the President, *see Hawaii*, 138 S. Ct. at 2408, and moreover, Plaintiffs' same arguments could just as easily support the Rule. Plaintiffs specifically cite the Doctors Without Borders finding that "[a] stunning 68.3 percent of migrants and refugees surveyed … reported having been victims of violence on the transit route to the United States." *Id.* (quoting AR178 (emphasis added). It follows that dissuading individuals from engaging in even riskier, unlawful activity, which endangers their safety and that of law enforcement, and directing them toward legitimate entry points, as the Rule and Proclamation do, are reasonable responses to such well-documented abuse.

The Administrative Record amply indicates that large numbers of unauthorized border crossings are occurring. The Departments explained that the Rule is urgently needed to discourage aliens from crossing the border illegally, raising meritless asylum claims, and securing release into the country. In FY2018, 396,579 aliens were apprehended entering unlawfully between ports of entry along the southern border. 83 Fed. Reg. at 55948; AR011, 15, 373, 447 That is more than 1,000 aliens every day—many with children—who are making a dangerous and illegal border crossing rather than presenting at a port of entry. Plaintiffs do not mention these statistics, instead focusing only on the degree of change downward from past years. ECF 51 at 6-7. But the data

shows that large numbers of unauthorized border crossings continue to occur, and Plaintiffs fail to show that the Rule does not rationally seek to curtail this ongoing dangerous and unlawful activity.

Plaintiffs' construction of asylum applicant rates fails to address the enormous percentage of meritless asylum claims by individuals asserting credible fear. The number of aliens making a credible-fear claim has increased by 2000% since 2008, from "5,000 a year in [FY] 2008 to about 97,000 in FY 2018," while a large majority of these asylum claims are not meritorious. 83 Fed. Reg. at 55935, 55946; AR 505 (Executive Office for Immigration Review, Credible Fear Origin Data, Date of Data Run: Nov. 4, 2018) (of 34,158 case completions in FY2018 that began with a credible-fear claim, 71% resulted in a removal order, and asylum was granted in only 17%). Indeed, a substantial number of aliens "do not pursue their claims" once released into the United States, adding to significant backlogs in the immigration court system, or "fail to appear for . . . proceedings." *Id.* (26% of the 791,821 immigration case backlog due to this process, and 31% of case completions in FY2018 were due to alien not showing up to proceedings, and in many an asylum application was never filed). The statistics relating to nationals of Northern Triangle countries highlight this problem: of those establishing credible fear whose cases were resolved in FY2018, only 54% sought asylum, only 9% received asylum, and 38% did not appear in proceedings. *Id.*   Accordingly, faced with a massive backlog of asylum cases and extensive evidence of claims without merit, the Rule rationally seeks to remove the incentives driving this burdening of the asylum processing system.

E. **The Rule is Consistent with the TVPRA.**

As the Government has previously argued, the Rule has no impact on the statutory protections afforded to unaccompanied alien children under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232 *et seq. O.A.*, ECF 22 at 27-28; *S.M.S.R.*, ECF 31 at 27-28.   Plaintiffs' claims that the Rule limits their rights under the TVPRA, ECF 51 at 5-7, lack merit.   The Rule's plain language makes no reference to unaccompanied minors or the TVPRA and only applies to the status of individuals found inside the United States in violation of a presidential proclamation. Section 208.13(c)(3) states: "This limitation on eligibility does not apply if the proclamation or order expressly provides that it does not affect eligibility for asylum,

or expressly provides for a waiver or exception that makes the suspension or limitation inapplicable" to the individual. 8 C.F.R. § 208.13(c)(3). Moreover, the direction to enter a "negative credible fear determination" applies only to the individuals who are subject to § 208.13(c)(3) Presidential proclamations. *Id.* § 208.30(e)(5). Accordingly, the only way the Rule would impact unaccompanied children is if they violate a Presidential proclamation. The proclamation at issue here unequivocally states that the procedures guaranteed by the TVPRA for unaccompanied children are not affected. The express language of the proclamation dictates that "Nothing in this proclamation shall . . . limit the statutory processes afforded to unaccompanied alien children upon entering the United States under section 279 of title 6, United States Code, and [the TVPRA.]" Proclamation § 2(c).  In other words, children who qualify for protections under the TVPRA are expressly entitled to its procedural guarantees even if they would fall under the Rule or the proclamation.  Moreover, unaccompanied children are not subject to expedited removal procedures, but are directly eligible for full removal proceedings to the extent they do not pursue an affirmative application for asylum. *See* 8 U.S.C. §§ 1158(b)(3)(C), 1232(a)(5)(D). Therefore, the provisions of the Rule governing credible and reasonable fear screenings categorically do not impact unaccompanied children.

Plaintiffs also claim that qualifying children will be deprived of an opportunity to present claims in the first instance in a non-adversarial setting because they "will proceed immediately to the adversarial immigration court proceedings." *Id.* at 25. This is incorrect. USCIS asylum officers have "initial jurisdiction over any asylum application filed by" an unaccompanied child, which means that the children have an opportunity to file for asylum in a non-adversarial process through USCIS, even if the child has been issued a notice to appear in immigration court. 8 U.S.C. § 1158(b)(3)(C). Nothing in the Rule or proclamation alters this; children qualifying under TVPRA will receive the same process, including the initial non-adversarial interview, dictated by that statute.  Accordingly, Plaintiffs lack any support for their argument that the Rule conflicts with the TVPRA.

### III.    Class Certification is Inappropriate.

The Court should decline to certify Plaintiffs' putative nationwide class for two

overarching reasons.  First, multiple provisions in 8 U.S.C. § 1252 bar certification of a class of aliens in removal or expedited removal proceedings seeking injunctive relief.  Second, and independently, Plaintiffs fail to meet the class-certification requirements of Federal Rule of Civil Procedure 23(a) and (b).[10]

### A.  This Court Lacks Jurisdiction to Certify Any Class Under 8 U.S.C. §§ 1252(b)(9) & 1252(e)(1).

At the threshold, the Court lacks jurisdiction to certify the class Plaintiffs seek to represent. As explained above, challenges to the Rule must be made either in a petition for review under 8 U.S.C. § 1252(b)(9) or under the requirements for expedited-removal challenges provided by 8 U.S.C. § 1252(e)(3). By requiring all challenges to final removal orders to be brought through petitions for review under § 1252(b)(9), Congress has determined that they must be brought individually, not through class actions. Indeed, as the Ninth Circuit has explained, that "a class remedy arguably might be more efficient than requiring each applicant to file a PFR, . . . is not a ground for ignoring the jurisdictional statute," especially where Congress sought to end such class action "challenges to agency policies and practices." *J.E.F.M*, 837 F.3d at 1034, 1038; *accord Aguilar,* 510 F.3d at 16 (aliens may not "employ the class action format to evade the INA's channeling requirements").  Plaintiffs seek to evade this limitation by claiming that they challenge actions that occur before the removal process begins. ECF 52-1 at 17-18. But "nothing in the statute limits its reach to claims arising from extant removal proceedings" and a reading doing so "would put an undue premium on which party rushed to the courthouse first." *Aguilar*, 510 F.3d at 10; *see J.E.F.M.*, 837 F.3d at 1031 ("[A]ny issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the PFR process.").

And, to the extent that Plaintiffs bring a challenge subject to § 1252(e), Plaintiffs concede, and the statutory text makes clear, that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action" governed by it. 8 U.S.C. § 1252(e)(1)(B); *see* ECF 51 at 9 n.7. Plaintiffs' attempt to frame their case to avoid these jurisdictional bars is unavailing: as the First Circuit has held, plaintiffs "cannot skirt the statutory channel markers by

---

[10] O.A. Plaintiffs only move for class certification on Counts I and IV-VIII.  ECF 51 at 14. S.M.S.R. Plaintiffs do not specify which Counts they seek certification on.  *See* ECF 52-1.

lumping together a mélange of claims associated with removal, each of which would be jurisdictionally barred [in district court] if brought alone, and eschewing a direct challenge to any particular removal proceeding." *Aguilar*, 510 F.3d at 10. The Court should follow this logic and deny class certification on these statutory grounds alone.

### B. The Court Lacks Jurisdiction to Certify a Class Seeking Injunctive Relief Under 8 U.S.C. § 1252(f).

Plaintiffs seek injunctive relief in addition to a declaration that the Rule is invalid.  ECF 39 at 68; ECF 40 at 35-36. This request dooms their bid for class certification.  In addition to the general bars against class certification in section 1252, Congress has specifically barred the injunctive relief sought here. Section 1252(f)(1) states:

> Regardless of the nature of the action or claim or the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1232], other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated.

8 U.S.C. § 1252(f)(1). The Supreme Court has made clear that § 1252(f)(1) bars "classwide injunctive relief against the operation of §§ 1221-1231" with a narrow carve-out that applies to "individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999). As the Sixth Circuit recently explained, section "1252(f)(1) unambiguously strips federal courts of the authority to enter class-wide injunctive relief." *Hamama v. Adducci*, 912 F.3d 869, 880 (6th Cir. 2018).  The provision inescapably prohibits class-based injunctions while preserving individual access to federal court relief through either an appropriate individual challenge or a petition for review. Accordingly, this Court lacks authority to certify a class sought for injunctive relief.  Class certification should be denied on this basis as well.[11]

### C. Since All of Plaintiffs' Claims Must be Brought through Petitions for Review or as Claims Under 8 U.S.C. § 1252(e)(3) the District of Columbia is Not the Proper Venue and Class Certification Should be Denied.

The only proper way to challenge the Rule under the APA is through the provision

---

[11] Plaintiffs fail to address the impact of section 1252 generally, and section 1252(f)(1) specifically, in their request for class certification.  *See* ECF 51, 52-1.

provided by § 1252(e)(3), as explained above. That provision also provides the sole avenue for suit challenging the Rule, to the extent it represents a change to the expedited removal system, in the District Court for the District of Columbia. 8 U.S.C. § 1252(e)(3). Plaintiffs concede that that statute prohibits class actions and thus do not bring a class action on that claim. ECF 51 at 9 n.7. But, as described above, the only proper way to challenge the Rule as a policy in this Court is through that provision, and the proper venue for a petition for review from removal proceedings—the avenue of review available to most Plaintiffs—is where the immigration court proceedings were held. 8 U.S.C. § 1252(b)(2). While acknowledging this clear jurisdictional limitation on class actions, Plaintiffs attempt to bootstrap a nationwide class action in this Court onto one Plaintiff's sole possibly properly venued, albeit meritless, claim under section 1252(e)(3). But Plaintiffs "cannot skirt the statutory channel markers by lumping together a mélange of claims" and associating them with one properly venued claim that has no bearing on the majority of Plaintiffs, who are not subject to expedited removal. *Aguilar*, 510 F.3d at 9; *see J.E.F.M.*, 837 F.3d at 1038 (holding that extra-statutory "considerations cannot overcome a clear statutory prescription [sic] against district court review"). The statute clearly forecloses universal injunctions and class injunctive relief. Plaintiffs cannot skirt that jurisdictional prohibition by relating a nationwide class action to an individual claim.

In addition to this clear statutory proscription, other reasons counsel against class certification. A universal class action "may have a detrimental effect by foreclosing adjudication by a number of different courts and judges." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *see United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."). "[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702. Certification of a universal class is not appropriate here because it would deprive the federal courts of appeals with jurisdiction over individuals' petitions for review of the ability to consider the issue here.

Further, the D.C. Circuit lacks a body of case law governing petitions for review because no immigration courts exist within the District of Columbia. The appropriate courts of appeals should be permitted to rule on issues percolating in the immigration courts their rulings govern. Injunctive class certification is improper here.

### D. Even if This Court Had Jurisdiction, Class Certification Would Be Inappropriate.

Even if section 1252 did not bar certification of a class here, Plaintiffs cannot meet the traditional standard governing class certification because the Court cannot resolve all the different claims of the putative class members with a single declaration or injunction.

At the outset, as the Supreme Court has held, "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)); Fed. R. Civ. P. 82 ("These rules do not extend . . . the jurisdiction of the district courts . . . ."). Because Congress has explicitly provided that district courts have no jurisdiction to certify the injunctive class sought here, the Court need not even address Rule 23's factors.

Even assuming that those statutes did not exist, class certification is inappropriate here. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 589 U.S. 27, 33 (2013) (quoting *Califano*, 442 U.S. at 700-01). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The burden of a party seeking certification of a proposed class includes demonstration of the existence of the required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure, including that: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class (typicality); and (4) the named plaintiffs will fairly and adequately protect the interests of the class (adequacy of representation). *See* Fed. R. Civ. P. 23(a).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See* ECF 51 at 19. As the Supreme Court has noted, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 564 U.S. at 360. If a court is not convinced that the plaintiff has fully satisfied all of the Rule 23 requirements, the class cannot be certified. *Gen. Tel. Co.*, 457 U.S. at 160.

1. **The Class Definition is Overbroad and Not Ascertainable, As It Potentially Encompasses All Aliens Outside the United States, and the Challenged Actions Apply Only to Aliens on U.S. Soil.**

"Courts in this Circuit have 'grafted' onto Rule 23 an 'implied' requirement that a court should first determine whether a proposed class is adequately defined such that its members are clearly ascertainable, before reaching the four 'explicit' prerequisites of Rule 23(a)." *Brewer v. Lynch*, No. CV 08-1747-BJR, 2015 WL 13604257, at *5 (D.D.C. Sept. 30, 2015); *see id.* (collecting cases and noting the same in other circuits). Any class "must be sufficiently definite 'that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1760)). "A court therefore should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Id.* (internal quotation marks and citation omitted). A class definition is overly broad if it includes persons "who could not have been injured by the defendant's conduct." *Ross v. Lockheed Martin Corp.*, 287 F. Supp. 3d 174, 191 (D.D.C. 2017) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)).

The proposed class, encompassing "all noncitizen asylum-seekers who have entered or

will enter the United States through the southern border but outside ports of entry after November 9, 2018," is overbroad, as it potentially includes all aliens outside the United States and extraterritorial aliens have no right to challenge laws that apply only to those on U.S. soil. It is also not ascertainable because it encompasses persons who may contemplate crossing illegally in the indefinite future but who have not attempted to do so yet. ECF 51 at 15; ECF 52 at 2.

First, the class is overbroad, in that it applies to aliens without standing or a cause of action, because the "will enter" portion of the class would encompass aliens outside the United States to whom the domestic law at issue in this case does not apply. *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 162 n.11 (1993). Section 1158 applies to "[a]ny alien who is physically present in the United States or who arrives in the United States." 8 U.S.C. § 1158 (emphasis added). *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) ("The Attorney General may, in his discretion, grant asylum to applicants in the United States who meet the definition of 'refugee' under 8 U.S.C. § 1101(a)(42)(A).") (emphasis added). And section 1225 applies to "alien[s] present in the United States . . . or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1) (defining "applicants for admission"); *see* 8 C.F.R. §§ 1.2, 1001.1(q) (defining "arriving alien" to include "an applicant for admission coming or attempting to come into the United States at a port of entry") (emphasis added). These statutes on their face do not apply to aliens who have not arrived in the United States. And generally, the Supreme Court has held that the government's *non-refoulement* obligations do not apply extraterritorially. *Sale*, 509 U.S. at 174.

Indeed, even if the laws did apply to such aliens outside the United States, the claims of potential members of the class who have been denied entry would not be justiciable. Persons outside of the United States "would not have standing to assert a right to cross the border illegally, to seek asylum or otherwise." *East Bay Sanctuary Covenant v. Trump,* 909 F.3d 1219, 1240 (9th Cir. 2018). The putative class thus includes aliens who would not be harmed by the Rule, since they are not within the United States and subject to the INA, and would lack standing to challenge it even if the Court could identify them. The class is therefore unascertainable. *See, e.g.*, *Ross v. Lockheed Martin Corp.*, 287 F. Supp. 3d at 191.

Second, the class is unascertainable because there is no way of determining who is among the subset of aliens that "will enter" the United States. *See Brewer*, 2015 WL 13604257, at *5. In arguing that "[t]his Court should not graft an extra 'ascertainability' requirement onto the explicit requirements of Rule 23," Plaintiffs cite *Brewer* without discussing its citation of this District's precedents. ECF 52 at 17. They instead rely on a Ninth Circuit case that declined to rule on an "ascertainability requirement," but that case is no help to them because it held that the substance of the requirement—including determining that a class is "overbroad"—could be interpreted as part of Rule 23's text itself. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017). They also cite a case in which the defendant did not dispute that Rule 23(a)'s requirements were met, thus rendering any analysis of the class unnecessary. *Steele v. United States*, 159 F. Supp. 3d 73, 80 (D.D.C. 2016).

Regardless of how the ascertainability requirement is characterized, this case shows why the requirement matters. Plaintiffs' class definition encompasses persons to whom the Rule does not apply and who lack standing to file suit regarding U.S. immigration laws. No understanding of Rule 23 would permit so broad a class. To do so would allow persons not subject to U.S. law and who lack a live case or controversy on their own to bring suit in federal court so long as they joined as a class with persons who were injured and did have standing, no matter how unrelated their statuses are. This connection would permit persons included in the class, to whom Congress did not intend domestic law to apply, to invoke it despite no evidence of its extraterritorial application. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."). The class definition is thus too broad and not ascertainable.

## 2. Due Process Considerations Counsel Against Binding Future Unknown Class Members.

Certifying a nationwide class locks all aliens who may wish to challenge the Rule in their petitions for review or through an individual suit into litigating that issue in this case. Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige

the District Court to afford them notice of the action." *Wal-Mart*, 564 U.S. at 362. Individual petitions for review challenging applications of the Rule filed by putative class members would therefore likely be dismissed or run the risk of incurring inconsistent judgments from different court's on the same party's rights. Multiple courts of appeals have upheld dismissals of a case if there is a parallel class action raising the same or substantially similar issues. *See, e.g.*, *Crawford v. Bell,* 599 F.2d 890, 892-93 (9th Cir. 1979) (a district court may dismiss "those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief"); *McNeil v. Guthrie*, 945 F.2d 1163, 1165-66 (10th Cir. 1991) (individual suits for injunctive and declaratory relief cannot be brought where a class action with the same claims exists); *Horns v. Whalen*, 922 F.2d 835, 835 & n.2 (4th Cir. 1991); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) (once a class action has been certified, "[s]eparate individual suits may not be maintained for equitable relief"); *Bennett v. Blanchard*, 802 F.2d 456, 456 (6th Cir. 1986) (affirming dismissal of a case when the plaintiff was a member in a parallel class action); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) (since class members generally "cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified"). Depriving others of their ability to challenge a determination through their petition for review when they cannot opt out of the class would hinder their due process rights. Certification should be denied for this reason and the Court's judgment, to the extent it finds jurisdiction to render one, limited to the litigants who have chosen to bring their claims here.

### 3. The Proposed Class Fails to Meet the Commonality and Typicality Requirements of Rule 23(a)(2) & (3).

Plaintiffs assert that "[c]ommonality is readily established in this case" because "[a]ll [putative] class members are . . . exposed to the same deprivation of their statutory and constitutional rights as a result of the same government policy." ECF 52 at 11; *see* ECF 51 at 18 ("[E]very member of the proposed class faces the same consequences . . . ."). That is wrong: the proposed class includes disparate groups of persons whose statutory and constitutional rights are distinct from each other, and thus would be affected by the Rule differently, some of whom have

no colorable claim to injury from the Rule even accepting Plaintiffs' contentions as true. So the proposed class representatives also cannot satisfy the requirement of typicality, because their injuries are not the same as members of the putative class.

Rule 23(a)(2)'s commonality rule requires "a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart*, 564 U.S. at 349 (quoting Fed. R. Civ. P. 23(a)(2)). As the Supreme Court has noted, "[t]hat language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'" *Id.* (internal quotation marks and citation omitted). The crux of the rule is not merely whether "all [putative class members] have suffered a violation of the same provision of law." *Id.* Instead, the rule "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id.* (internal quotation marks and citation omitted) (emphasis added). And Rule 23(b)(2), governing injunctive relief, "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 360 (emphasis added); *see DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (holding that there must be a "common harm suffered . . . that affects each class member"). The typicality requirement merges with the commonality requirement, *General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982), and is not satisfied when plaintiffs lack the same injuries as the putative class, *Artis v. Yellen*, 307 F.R.D. 13, 27 (D.D.C. 2014).

The class definition includes four distinct groups of aliens to whom different statutory rights and procedures apply, and therefore who would be affected to dramatically varying degrees by application of the Rule. First, the class definition includes certain aliens subject to expedited removal who are apprehended shortly after illegally crossing the border. 8 U.S.C. § 1225(b). As described above, not all aliens who cross the border between ports of entry are subject to expedited removal, and the vast majority of the named Plaintiffs in this case are not now. *See supra.* Only those aliens who are subject to an expedited removal order can challenge changes to that process in this district.  *See AILA*, 199 F.3d at 1360.

Second, the definition encompasses those aliens who are placed into full removal proceedings. *See supra.* Unlike aliens in expedited removal proceedings, who undergo screening

before they may apply for relief from removal, aliens in removal proceedings may raise any claim for relief or protection from removal, including asylum, withholding, and CAT protection. 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A); 8 C.F.R. § 1208.16(b), (c).

Third, the definition contains those aliens who have "reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). Those aliens are subject to their prior, "reinstated" removal order, which is "not subject to being reopened or reviewed." *Id.* Persons subject to a reinstated removal order are already ineligible for asylum and may only receive withholding of removal or protection under the Convention Against Torture in "withholding-only proceedings," not removal proceedings. See 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 241.8(e). Thus, the Rule does not affect them in any way.

Fourth, the defined class includes persons who are not yet in the United States. *See* ECF 51 at 15; ECF 52 at 2 (defining the class to include any noncitizen asylum-seeker who "will enter the United States").  Such persons have no rights concerning asylum and entry under the INA. *See Sale*, 509 U.S. at 174.

Aliens also have different constitutional rights depending on the extent of their ties and connections to the United States and its laws, which informs the extent to which they can invoke constitutional safeguards or due process interests—such as those undergirding the principle of ensuring a forum for review, *see* ECF 51 at 11, 13-14—in challenging the Rule. Longstanding Supreme Court precedent distinguishes between aliens who have been lawfully admitted, those who are physically present in the United States (albeit illegally) for some meaningful period of time, and those who have never entered and have yet to form a connection to the country, with the latter lacking constitutional procedural due process rights. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 270-71 (1990) (collecting cases); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), *Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953); *cf. Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between unlawful presence, lawful presence, and lawful presence accompanied by other ties to the United States like "preliminary declaration of intention to become a citizen").  Aliens not within the United States at all, at the threshold of initial entry at the border, apprehended after living within the United States after

some period, or already removed following unlawful presence, have varying due process rights that cannot all be served in a single analysis.  Indeed, the first two categories lack constitutional rights entirely regarding any applications for admission.  *See Landon*, 459 U.S. at 32.

Additionally, even within those groups, there is no single remedy that can be provided through an injunction. *See* Fed. R. Civ. P. 23(b)(2). Some of the putative class members may be ineligible for asylum for reasons other than those prescribed by the Rule—such as having reinstated removal orders or falling subject to pre-existing restrictions on asylum in section 1158(a)—and thus uninjured by the Rule. *See supra.* Others may have obtained collateral relief, such as a U visa or T visa, that provide a pathway to legal permanent residence and derivative benefits similar to asylum. *See* Adjustment of Status to Lawful Permanent Resident for Aliens in T or U Nonimmigrant Status, 73 Fed. Reg. 75,540-01 (Dec. 12, 2008). Still others could have received family sponsorship that can provide permanent status. *See* 8 U.S.C. § 1255(i); *Cheruku v. Attorney Gen. of U.S.*, 662 F.3d 198, 203 (3d Cir. 2011).

The Rule, were it even applied to Plaintiffs, would therefore not raise the same issues or cause the same impact on all of them.  Some have no ability to obtain asylum regardless of the Rule, and others will have already obtained collateral, more preferential status or relief from removal rendering their need for asylum obsolete.  And the proposed class representatives are not typical of the class because they too have different forms of relief available to them and are in different stages of their removal proceedings. *See supra.* Thus, not everyone would be entitled to the same relief—a declaration that the Rule is contrary to law will be irrelevant for those for whom no relief could be granted for other reasons and those in full removal proceedings, and may be moot for those who have received other relief. Because the injunction sought may not provide relief to persons who cannot be considered to have suffered harm, Plaintiffs have failed to satisfy the commonality and typicality requirements.

### 4. The Proposed Class Does Not Satisfy Rule 23(b)(2)'s Single-Injunction Requirement, and the Proposed Class Representatives are Inadequate Because They Cannot Vigorously Prosecute the Interests of the Entire Class.

Certification under Rule 23(b)(2) is inappropriate because a single remedy would not serve all members of the putative class.  Similarly, the proposed class representatives are inadequate

because they cannot vigorously prosecute the interests of the entire class, which, for reasons described above, have diverse and disparate situations. There are two main criteria for determining the adequacy of the class representatives: "1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (citation omitted). The relief that the named Plaintiffs seek in their individual cases is not the same relief that others could pursue and is specifically bound up with their particularized circumstances.

A class action under Rule 23(b)(2) seeking declaratory relief must seek relief that is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. It thus would resolve a central issue "in one stroke." *Id.* at 350. "It does not authorize class certification when each individual class member would be entitled to a different injunction." *Id.* at 360. Accordingly, Plaintiffs have the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to declaratory relief.

Plaintiffs' attempt to frame the declaratory judgment in broad terms fails, as the relief sought—invalidating the Rule—will not provide relief to all members of a class that includes persons who are not on U.S. soil, who are otherwise barred from receiving asylum, or who have received another form of relief. A declaration of the Rule's invalidity does not in itself provide every individual class member relief. It would not retroactively place someone into full removal proceedings who was found to have a negative credible fear for other reasons, for instance, and those already in formal removal proceedings need no relief. Instead, this Court would need to fashion discrete injunctive remedies based on an individual's particular immigration situations.

*R.I.L.-R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015), which Plaintiffs cite for the proposition that a declaratory judgment would provide classwide resolution, does not support Plaintiffs' claims. *See* ECF 52-1 at 24. In that case, the linchpin of the proposed class was that the persons were or would be subject to detention. *R.I.L.-R*, 80 F. Supp. 3d at 180. So individuals to

whom the declaration would apply would by necessity always be in detention. The court modified the class definition to include only those persons who "have been or will be denied . . . release after being subject to a determination" that considered the factor that the plaintiffs were challenging. *Id.* Therefore, all proposed class members would receive the single relief of not being subject to a factor in their custody determinations that they had originally been subject to. *Id.* The courts in other cases that Plaintiffs cite similarly determined that there would be a uniform result to a declaration or injunction that would not happen here. *Huashan Zhang v. United States Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32, 64 (D.D.C. 2018), *notice of appeal filed*, No. 19-5021 (common injury is "denial of their I-526 petitions"); *Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 43 (D.D.C. 2018) (class defined to include only those persons who are or will be "detained by ICE"); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 334 (D.D.C. 2018) (all persons in the class "denied the opportunity for release"). And *Vargas v. Meese*, which Plaintiffs cite, is a pre-*Wal-Mart* case in which the Defendants conceded this requirement under Rule 23(b)(2). 119 F.R.D. 291, 297 (D.D.C. 1987). The proposed class is different here where not every proposed class member, regardless of the Rule, even has the same eligibility for or interest in receiving asylum, nonetheless is in a position to obtain it. Therefore, an injunctive class is also inappropriate for this reason.

## IV.   Any Remedy Must be Narrowly Tailored to the Court's Limited Role.

As the Government has previously argued, *O.A.*, ECF 22 at 41-45; *S.M.S.R.*, ECF 31 at 42-44, even were the Court to rule for Plaintiffs on the merits, Plaintiffs' requested nationwide relief that encompasses all potential recent illegal entrants is inappropriately overbroad, particularly given the limited scope of this Court's review under section 1252(e), which encompasses only changes to the expedited removal framework.  Further, Congress has barred the Court from issuing the injunctive and mandamus relief Plaintiffs request.  ECF 39 at 68; ECF 40 at 35-36; *see* 8 U.S.C. § 1252(e)(1).

First, Article III and equitable principles require that relief be no broader than necessary to redress the Plaintiffs' injuries. Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). And the rule in

equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Here, any relief must be tailored to remedying any harms for those subject to expedited removal, *see L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011), because a challenge to regulations implementing section 1225(b)(1) is the only possible channel for this Court to review Plaintiffs' claims. *See supra*; 8 U.S.C. § 1252(e)(3).

Second, this Court should not grant nationwide relief. Nationwide injunctions "did not emerge until a century and a half after the founding," and they "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). And such injunctions mean a plaintiff need only win once to stop a national law or policy—but the government needs to win every case. *Cf. United States v. Mendoza*, 464 U.S. 154, 158-64 (1984). A nationwide injunction is particularly inappropriate here when a majority of the plaintiffs are in removal proceedings and should bring these claims in their petitions for review in federal courts of appeals overseeing the particular venues where their immigration proceedings take place.

Third, Congress made clear that this Court can issue no injunction of the program or policy at all. *See* 8 U.S.C. § 1252(e)(1). The sole specifically authorized remedy that section 1252(e)(3) affords is a "determination[]" whether any new written policy "is not consistent with applicable provisions of this subchapter or is otherwise in violation of law," 8 U.S.C. § 1252(e)(3)(A)(ii), and an "order" to that effect, *id.* § 1252(e)(3)(C). That provision, which authorizes a "determination[,]" does not therefore "specifically authorize[]" equitable relief. *Id.* § 1252(e)(1)(A); *compare id.* § 1252(e)(4)(B) (specifically authorizing delimited habeas relief). Indeed, the exclusive means of securing any equitable relief with respect to an order of expedited removal is not through a section 1252(e)(3) challenge, but through review under section 1252(e)(2); and even then, the sole and exclusive remedy available is placement in a removal proceeding under 8 U.S.C. § 1229a and nothing more. *See id.* § 1252(e)(4). To the extent that this Court determines that section 1252(e)(3) is ambiguous, it "must be read in [its] context and with a view to [its] place in the overall statutory

scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). That context shows that Congress intended that only "the Supreme Court [has the authority] to enjoin the operation" of the expedited removal scheme. H.R. Rep. No. 104-469(I), "Immigration in the National Interest Act of 1995" (Mar. 4, 1996). The limitations on relief "do not preclude challenges to the . . . procedures, but the procedures will remain in force while such lawsuits are pending." So this Court may issue *only* a declaration after a merits resolution.

Thus, this Court has the authority to grant only declaratory relief, and must limit the relief to remedying only the particular harms alleged by the specific plaintiffs properly before it—that is, a challenge to implementation of section 1225(b)(1) by the sole Plaintiff subject to an expedited removal order, A.V.  All other claims for relief must be denied.

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor on all counts and deny Plaintiffs' motion for class certification.

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor on all counts and deny Plaintiffs' motion for class certification.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*s/ Joseph A. Darrow*

JOSEPH A. DARROW
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-2445
Email: joseph.a.darrow@usdoj.gov
FRANCESCA GENOVA
KATHRYNE M. GRAY
BENTON YORK
Trial Attorneys

Dated: February 25, 2019          *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| O.A., *et al.*, and | ) | |
| | ) | |
| S.M.S.R., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action Nos. 1:18-cv-2718, -2838 |
| | ) | |
| DONALD J. TRUMP, in his official | ) | |
| capacity as Attorney General of | ) | |
| the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

Along with their cross-motion for summary judgment, Plaintiffs each submitted a "Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment and Class Certification," ECF 51-1, 52-2, raising various purported "undisputed facts" premised on both the administrative record and extra-record evidence not in the administrative record. Plaintiffs invoke Local Rule 7(h)(1), treating this case as a civil action that has proceeded to summary judgment after discovery. But no discovery has been conducted in this case, and thus there are no "parts of the record" to which Plaintiffs can credibly refer in their statement of material facts. *See* Local Rule 7(h)(1) (referring to "a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement"). Rather, this is a case seeking review of substantive agency action under the Administrative Procedure Act (APA). In such cases, summary judgment "serves as the mechanism for deciding, as a matter of law, whether agency action is . . . consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 90 (D.D.C. 2006) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)). Accordingly, when, as here, a party seeks review of agency action under the APA," the usual summary judgment standard does not apply and "the district judge" instead "sits as an appellate tribunal." *Am. Bioscience, Inc. v.*

*Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). There is no factual "record" in such a case, other than the administrative record before the agency. *See, e.g.*, *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made.")

"Statements of fact" under Local Rule 7(h)(1) are thus improper in such cases. *See, e.g.*, *Koretoff v. Vilsack*, 841 F. Supp. 2d 1, 5 (D.D.C. 2012) (Huvelle, C.J.) *aff'd*, 707 F.3d 394 (D.C. Cir. 2013) ("Defendant is correct in arguing that plaintiffs' submission was improper"); *Davis v. Pension Ben. Guar. Corp.*, 815 F. Supp. 2d 283, 292 (D.D.C. 2011) (Kennedy, J.) ("Plaintiffs' motion cites extensively to the attached statement of material facts not in genuine dispute, which does not belong in an administrative record case."); *accord Gore v. D.C.*, 67 F. Supp. 3d 147, 151 (D.D.C. 2014) (Rothstein, J.) ("Contrary to Plaintiff's contention, parties are not required to submit a statement of undisputed materials facts in cases where 'judicial review is based solely on the administrative record.'"). Rather, pursuant to Local Rule 7(h)(2) "[i]n such cases, motions for summary judgment and oppositions thereto shall include a statement of facts with references to the administrative record." *See IMS, P.C.*, 129 F.3d at 623; *see also, e.g.*, *Bellion Spirits, LLC v. United States*, --- F. Supp. 3d ---, 2018 WL 4637013, *7 (D.D.C. Sept. 27, 2018) (Boasberg, J.) ("when a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge must be judged on the record before the agency."). The Comment to Local Rule 7(h) recognizes precisely this point. *See* Comment to LCvR 7(h) ("This provision recognizes that in cases where review is based on an administrative record the Court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record. As a result the normal summary judgment procedures requiring the filing of a statement of undisputed material facts is not applicable.").

Therefore, Plaintiffs' Statement of Material of Facts is improper, and the Court should not consider it. *See, e.g.*, *Koretoff*, 841 F. Supp. 2d at 5; *Davis*, 815 F. Supp. 2d at 292; *Gore*, 67 F. Supp. 3d at 151; *see also Moradnejad v. District of Columbia*, 177 F. Supp. 3d 260, 263 (D.D.C.

2016) ("Plaintiffs . . . submitted statements of fact in conjunction with their motions for summary judgment. Those statements are not controlling in a case like this one, where review is based solely on the administrative record."). Moreover, Defendants need not respond to it paragraph by paragraph. Rather, consistent with Local Rule 7(h)(2), the Defendants' preliminary injunction briefing, incorporated by reference at the Court's invitation, "include[s] a statement of facts with references to the administrative record," and its summary judgment briefing similarly includes citation to the administrative record in support of its motion for summary judgment and in opposition to Plaintiffs' motion for class certification.

Dated: February 25, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director, Office of Immigration Litigation

By: /s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice, Civil Division
450 5th Street NW
Washington, DC 20530
Tel. (202) 598-2445
Joseph.a.darrow@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

By: _/s/ Joseph A. Darrow_
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division