**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| O.A., *et al.*,<br>　　　Plaintiffs,<br>　　　and<br>S.M.S.R., *et al.*,<br>　　　Plaintiffs,<br>　　　v.<br>DONALD J. TRUMP, *President of the United States, et al.*,<br>　　　Defendants. | No. 18-cv-2718-RDM, 18-cv-2838-RDM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BY *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE**

CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org

LAWRENCE J. JOSEPH
Law Office of Lawrence J. Joseph
1250 Connecticut Ave. NW, Suite 700-1A
Washington, DC 20036
(202) 355-9452
lj@larryjoseph.com

*Counsel for Immigration Reform Law Institute*

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................................. i
Table of Authorities ........................................................................................................................ ii
Certificate Required by Local Rules LCVR 7(o)(5) and 7.1 ........................................................ vi
Identity and Interest of *Amicus Curiae* ......................................................................................... 1
Introduction .................................................................................................................................... 1
Statement of Facts .......................................................................................................................... 2
Argument ....................................................................................................................................... 3
I.      This Court lacks jurisdiction for Plaintiffs' requested relief. ............................................. 3
          A.      Plaintiffs lack standing. ........................................................................................ 3
                1.      The individual Plaintiffs lack standing. ................................................... 4
                2.      The institutional Plaintiffs lack diverted-resources standing. ................. 4
                3.      The institutional Plaintiffs lack third-party standing. ............................. 6
                4.      The class allegations do not alter the standing analysis. ........................ 6
          B.      Plaintiffs lack statutory subject-matter jurisdiction and a waiver of sovereign immunity for this action. .................................................................... 7
                1.      The United States has not waived sovereign immunity for this action. ..................................................................................................... 7
                2.      This Court lacks statutory subject-matter jurisdiction for this action. ..................................................................................................... 8
                3.      Plaintiffs' adequate INA remedies displace equity jurisdiction. ............................................................................................... 9
II.     Plaintiffs' claims lack merit. ............................................................................................. 9
          A.      The asylum-ineligibility rule's promulgation did not violate the APA's procedural requirements. ......................................................................... 9
          B.      The asylum-ineligibility rule complies with the INA. ...................................... 10
          C.      The asylum-ineligibility rule complies with Plaintiffs' due-process rights. ................................................................................................................. 11
III.    This action cannot support class certification. ................................................................ 11
IV.    This Court should limit any relief to the parties before the Court. ................................. 12
Conclusion ................................................................................................................................... 12

# **TABLE OF AUTHORITIES**

## **CASES**

*Action Alliance of Senior Citizens v. Heckler*,
    789 F.2d 931 (D.C. Cir. 1986) .................................................................................. 5-6

*Air New Zealand Ltd. v. C.A.B.*,
    726 F.2d 832 (D.C. Cir. 1984) ......................................................................................8

*Arizona v. United States*,
    567 U.S. 387 (2012) ....................................................................................................10

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*,
    397 U.S. 150 (1970) ......................................................................................................3

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986) ......................................................................................................3

*Board of Governors of the Federal Reserve System v. MCorp Financial*,
    502 U.S. 32 (1991) ........................................................................................................9

*Boumediene v. Bush*,
    553 U.S. 723 (2008) ....................................................................................................11

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ....................................................................................................12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................. 3-4

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................................................4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ......................................................................................................11

*Commodity Futures Trading Comm'n v. Nahas*,
    738 F.2d 487 (D.C. Cir. 1984) ......................................................................................3

*Dep't of Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999) ......................................................................................................7

*East Bay Sanctuary Covenant v. Trump*,
    909 F.3d 1219 (9th Cir. 2018) ....................................................................................10

*FCC v. ITT World Commc'ns, Inc.*,
    466 U.S. 463 (1984) ..................................................................................................8, 9

*Fed'n for Am. Immigration Reform v. Reno*,
    93 F.3d 897 (D.C. Cir. 1996) ........................................................................................6

*Gen. Tel. Co. of the SW. v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................................12

*Gladstone, Realtors v. Bellwood*,
    441 U.S. 91 (1979)..................................................................................................5

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)............................................................................................ 4-6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)..................................................................................................3

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004).............................................................................................4, 6

*Landon v. Plasencia*,
    459 U.S. 21 (1982)................................................................................................11

*Lane v. Pena*,
    518 U.S. 187 (1996)..................................................................................................7

*Leedom v. Kyne,*
    358 U.S. 184 (1958)..................................................................................................9

*Lewis v. Casey*,
    518 U.S. 343 (1996)..................................................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................3

*Morales v. TWA*,
    504 U.S. 374 (1992)..................................................................................................9

*Mountain States Legal Found. v. Glickman,*
    92 F.3d 1228 (D.C. Cir. 1996)..................................................................................5

*Muskrat v. U.S.*,
    219 U.S. 346 (1911)..................................................................................................3

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)........................................................................................... 11-12

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976)..................................................................................................4

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974)..................................................................................................6

*Sea-Land Serv., Inc. v. Alaska R.R.*,
    659 F.2d 243 (D.C. Cir. 1982)..................................................................................7

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953)................................................................................................11

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...............................................................................................4, 6

*Steel Co. v. Citizens for a Better Env't.,*
    523 U.S. 83 (1998)....................................................................................................3

*Telecomms. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984) .................................................................................8

*Trump v. Hawaii*,
    138 S.Ct. 2392 (2018) ..........................................................................................10

*United States v. Mendoza*,
    464 U.S. 154 (1984) .............................................................................................12

*United States v. Sherwood*,
    312 U.S. 584 (1941) ...............................................................................................7

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ...............................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................11

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................................................5

## **STATUTES**

U.S. CONST. art. III ............................................................................................... 3-6, 12

Administrative Procedure Act,
    5 U.S.C. §§551-706 .................................................................................1-2, 7-8, 10

5 U.S.C. §553(a)(1) ....................................................................................................2, 10

5 U.S.C. §553(b)(B) ....................................................................................................2, 10

5 U.S.C. §553(d)(3) .....................................................................................................2, 10

5 U.S.C. §701(a)(1) ..........................................................................................................8

5 U.S.C. §702 ...................................................................................................................7

5 U.S.C. §703 ...................................................................................................................8

Immigration and Naturalization Act,
    8 U.S.C. §§1101-1537 ................................................................................... 1, 5-11

8 U.S.C. §1158(a)(1) ......................................................................................................10

8 U.S.C. §1158(a)(2)(A) .................................................................................................10

8 U.S.C. §1158(b)(1) ..................................................................................................1, 10

8 U.S.C. §1158(b)(2)(C) .............................................................................................1, 10

8 U.S.C. §1158(c)(2)(A) .................................................................................................10

8 U.S.C. §1158(c)(2)(A)(ii) ............................................................................................10

8 U.S.C. §1158(c)(2)(B) .................................................................................................10

8 U.S.C. §1158(c)(2)(C) .................................................................................................10

8 U.S.C. §1182(f) ..............................................................................................................2

8 U.S.C. §1231(b)(3) ........................................................................................................2

8 U.S.C. §1252(a)(5) ........................................................................................................8

8 U.S.C. §1252(b)(9) ........................................................................................................8

8 U.S.C. §1252(e)(1)(A) ...................................................................................................8

8 U.S.C. §1252(e)(3) ........................................................................................................8

8 U.S.C. §1252(e)(3)(A) ...................................................................................................8

8 U.S.C. §1325(a) ...........................................................................................................11

28 U.S.C. §1361 ................................................................................................................8

Fair Housing Act,
   PUB. L. NO. 90-284, Title VIII, 82 Stat. 83 (1968) ..................................................5

## **RULES AND REGULATIONS**

FED. R. CIV. P. 23 ............................................................................................................11

FED. R. CIV. P. 23(a) .......................................................................................................12

Local Rule 7(o)(5) .............................................................................................................1

FED. R. APP. P. 29(a)(4)(E) ...............................................................................................1

8 C.F.R. §§1208.16-1208.18 .............................................................................................2

*Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for
   Protection Claims*, 83 Fed. Reg. 55,934 (2018) ................................................. 1-2, 9

*Addressing Mass Migration Through the Southern Border of the United States*,
   83 Fed. Reg. 57,661 (2018) ......................................................................................2

## **CERTIFICATE REQUIRED BY LOCAL RULES LCVR 7(o)(5) AND 7.1**

Consistent with FED. R. APP. P. 29(a)(4)(A) and Local Rule 7(o)(5), I, the undersigned counsel of record for plaintiffs in the above-captioned action certify that, to the best of my knowledge and belief: (1) Immigration Reform Law Institute ("IRLI") has no parent corporation; and (2) no publicly traded company owns stock in IRLI. These representations are made in order that judges of this Court may determine the need for recusal.

Dated: March 13, 2019                                         Respectfully submitted,

                                                              Lawrence J. Joseph
                                                              _____

Christopher J. Hajec                                          Lawrence J. Joseph, D.C. Bar No. 464777
Immigration Reform Law Institute                              1250 Connecticut Av NW Suite 700-1A
25 Massachusetts Ave. NW, Suite 335                           Washington, DC 20036
Washington, DC 20001                                          Telephone: (202) 355-9452
Telephone: (202) 232-5590                                     Facsimile: (202) 318-2254
chajec@irli.org                                               lj@larryjoseph.com

                                                              *Counsel for Immigration Reform Law Institute*

## **IDENTITY AND INTEREST OF *AMICUS CURIAE***

*Amicus curiae* Immigration Law Reform Institute ("IRLI") seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion.[2] IRLI is a nonprofit 501(c)(3) public-interest law firm incorporated in the District of Columbia. IRLI is dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and legal permanent residents and to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus* briefs in many important immigration cases. For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's affiliate, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law. For these reasons, IRLI has direct interests in the issues here.

## **INTRODUCTION**

In this consolidated action, two sets of plaintiffs (collectively, "Plaintiffs") have sued Executive Branch offices and officials (collectively, the "Government") under the Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA"), and the Immigration and Naturalization Act, 8 U.S.C. §§1101-1537 ("INA"), to challenge the promulgation of a new rule, *Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims*, 83 Fed. Reg. 55,934 (2018). The rule implements the Attorney General's authority to "establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under [§1158(b)(1)]." 8 U.S.C. §1158(b)(2)(C). The Government promulgated its rule on

---

[2] Consistent with FED. R. APP. P. 29(a)(4)(E) and Local Rule 7(o)(5), counsel for movant and *amicus curiae* authored the motion and brief in whole, and no counsel for a party authored the motion or brief in whole or in part, nor did any person or entity, other than the movant/*amicus* and its counsel, make a monetary contribution to preparation or submission of the motion or brief.

November 9, 2018, as an interim final rule, invoking two APA good-cause exceptions: (1) the exception from notice-and-comment procedures when prior notice and comment are "impracticable, unnecessary, or contrary to the public interest," *id.* §553(b)(B), and (2) the exception from the requirement for a 30-day grace period before a rule's taking effect for "good cause found." *Id.* §553(d)(3). The Government also invoked the APA's foreign-affairs exception, which applies "to the extent that there is involved … a … foreign affairs function of the United States." *Id.* §553(a)(1). At the same time, the Federal Register notice also requested comments and evinces plans to promulgate a final rule, with a comment deadline of January 8, 2019. *See* 83 Fed. Reg. at 55,934. The interim final rule bars from eligibility for asylum all aliens who enter the country in contravention of a presidential proclamation suspending entry across the southern border. *Id.*

Once the rule was promulgated, the President issued a proclamation pursuant to 8 U.S.C. §1182(f) suspending just such entry, except at ports of entry. Neither the interim final rule nor the proclamation affects the eligibility of aliens for either withholding of removal under 8 U.S.C. §1231(b)(3) or protection under regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 8 C.F.R. §§1208.16-1208.18 ("CAT"). *See Addressing Mass Migration Through the Southern Border of the United States*, 83 Fed. Reg. 57,661, 57,663 (2018); 83 Fed. Reg. at 55,934. The proclamation does not apply to unaccompanied minors. 83 Fed. Reg. at 57,663. Before this Court are Plaintiffs' motion to certify a class action and the Government's motion for summary judgment.

## STATEMENT OF FACTS

IRLI adopts the facts as stated by the Government. Gov't Memo. at 1-11 (ECF #65).

**ARGUMENT**

**I.     THIS COURT LACKS JURISDICTION FOR PLAINTIFFS' REQUESTED RELIEF.**

Federal courts are courts of limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95 (1998) (courts must establish jurisdiction before deciding merits). To sue in federal court, therefore, a plaintiff must not only satisfy Article III's case-or-controversy requirement but also identify a statutory grant of subject matter jurisdiction to the court in question: "A federal court's subject-matter jurisdiction, constitutionally limited by Article III, extends only so far as Congress provides by statute." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984). Plaintiffs fail both tests, and each failure is independently fatal.

**A.     Plaintiffs lack standing.**

Under Article III, federal courts cannot issue advisory opinions and instead must focus on cases or controversies presented by affected parties. *Muskrat v. U.S.*, 219 U.S. 346, 356-57 (1911). To establish standing, a plaintiff must show that: (1) the challenged action constitutes an "injury in fact," (2) the injury is "arguably within the zone of interests to be protected or regulated" by the relevant statutory or constitutional provision, and (3) nothing otherwise precludes judicial review. *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970). An "injury in fact" must satisfy a tripartite test: it must be a legally cognizable injury to the plaintiff, be caused by the challenged conduct, and be redressable by a court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). The plaintiff, moreover, must show that it "has sustained or is immediately in danger of sustaining some direct injury" from the challenged action, and that injury must be "both

3

real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (interior quotation marks omitted). Standing doctrine also includes prudential elements, including the need for those seeking to assert absent third parties' rights to have their own Article III standing and a close relationship with the absent third parties, whom a sufficient "hindrance" keeps from asserting their own rights. *Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004). Finally, because "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), plaintiffs must establish standing for each form of relief that they request.

        1.      **The individual Plaintiffs lack standing.**

As the Government explains, none of the individual Plaintiffs are subject to the challenged asylum-ineligibility rule (*i.e.*, most received positive credible-fear determinations, and the others are barred from asylum by statute). Gov't Memo. at 15 (ECF #65); Gov't Memo, at 24-25 (S.M.S.R. ECF #31). In short, whatever defects the asylum-ineligibility rule does or does not have, the rule does not affect the individual Plaintiffs. That defeats the most basic element of standing: "federal plaintiffs must allege some threatened or actual injury resulting *from the putatively illegal action* before a federal court may assume jurisdiction." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) (emphasis added). With that element lacking, the individual Plaintiffs lack standing.

        2.      **The institutional Plaintiffs lack diverted-resources standing.**

The institutional Plaintiffs cannot premise standing on their diverted resources, which are self-inflicted injuries and, thus, cannot support standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976). Under the unique statutory and factual situation in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), a housing-rights organization's diverted resources provided it standing, but that argument must fail in most other settings.

4

Relying on *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 102-09 (1979), *Havens Realty* held that the Fair Housing Act at issue there extends "standing under § 812 … to the full limits of Art. III," so that "courts accordingly lack the authority to create prudential barriers to standing in suits brought under that section," 455 U.S. at 372, thereby collapsing the standing inquiry into the question of whether the alleged injuries met the Article III minimum of injury in fact. *Id.* The typical organizational plaintiff and typical statute lack several critical criteria from *Havens Realty*.

First, the *Havens Realty* organization had a statutory right (backed by a statutory cause of action) to truthful information that the defendants denied to it. Because "Congress may create a statutory right[,] … the alleged deprivation of [such rights] can confer standing." *Warth v. Seldin*, 422 U.S. 490, 514 (1975). Under a typical statute, by contrast, a typical organizational plaintiff has no claim to any rights related to its own voluntarily diverted resources.

Second, and related to the first issue, the injury that an organizational plaintiff claims must align with the other components of its standing, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000); *Mountain States Legal Found. v. Glickman,* 92 F.3d 1228, 1232 (D.C. Cir. 1996), including the allegedly cognizable right. In *Havens Realty,* the statutorily protected right to truthful housing information aligned with the alleged injury (costs to counteract false information given in violation of the statute). By contrast, under the INA (or any typical statute), there will be no rights even *remotely* related to — much less *aligned with* — a third-party organization's discretionary spending.

Third, and most critically, the *Havens Realty* statute eliminated prudential standing, so the zone-of-interest test did not apply. When a plaintiff — whether individual or organizational — sues under a statute that *does not eliminate prudential standing*, that plaintiff cannot bypass the zone-of-interest test or other prudential limits on standing. *See*, *e.g.*, *Action Alliance of Senior*

5

*Citizens v. Heckler*, 789 F.2d 931, 939 (D.C. Cir. 1986) (applying zone-of-interest test under *Havens Realty*) (R.B. Ginsburg, J.). Typically, it would be fanciful to suggest that a statute has private, third-party spending in its zone of interests. Certainly, that is the case for the INA. *Fed'n for Am. Immigration Reform v. Reno*, 93 F.3d 897, 904 (D.C. Cir. 1996).

In sum, the institutional Plaintiffs cannot establish standing based on diverted resources.

### 3. The institutional Plaintiffs lack third-party standing.

The institutional Plaintiffs cannot claim third-party standing because they fail the *Kowalski* test, not only because they lack their own standing, *see* Section I.A.2, *supra*, but also because they either lack a close relationship or (if they have one) nothing would hinder the actual rights-holders from suing on their own behalf. *Kowalski*, 543 U.S. at 128-30. Future relationships do not count because an "*existing* attorney-client relationship is, of course, quite distinct from the *hypothetical* attorney-client relationship posited here." *Id.* at 131 (emphasis in original). Accordingly, the institutional Plaintiffs lack third-party standing.

### 4. The class allegations do not alter the standing analysis.

Plaintiffs gain nothing, *vis-à-vis* the Article III threshold, by styling their suit as a class action:

> That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Simon*, 426 U.S. at 40 n.20 (citation and interior quotation marks omitted). Instead, "[t]o have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). If Plaintiffs lack standing in their own right, *see* Sections I.A.1-I.A.3, *supra*, they lack standing as

6

class representatives, too.

### B. Plaintiffs lack statutory subject-matter jurisdiction and a waiver of sovereign immunity for this action.

As the Government explains, the INA channels review of removal actions to the courts of appeals, which displaces APA review in the district courts. Gov't Memo. at 12-14 (ECF #65). In addition, those INA review procedures also deprive this Court of equity jurisdiction over, and deprive plaintiffs of a waiver of sovereign immunity from, this action. All of these jurisdictional defects bar review in this Court.

#### 1. The United States has not waived sovereign immunity for this action.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," without regard to any perceived unfairness, inefficiency, or inequity. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Moreover, such waivers are strictly construed, in terms of their scope, in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Thus, aside from lacking statutory subject-matter jurisdiction — as the Government argues, *see* Gov't Memo. at 12-14 (regarding federal-question jurisdiction) (ECF #65) — Plaintiffs also lack a waiver of sovereign immunity for this APA action.

In the 1976 APA amendments to 5 U.S.C. §702, Congress "*eliminat[ed]* the sovereign immunity defense in *all equitable actions* for specific relief against a Federal agency or officer acting in an official capacity." *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1982) (quoting S. Rep. No. 996, 94th Cong., 2d Sess. 8 (1976); H.R. Rep. No. 1656, 94th Cong., 2d Sess. 9 (1976), 1976 U.S. Code Cong. & Admin. News 6121, 6129) (R.B. Ginsburg, J.). But that waiver has several restrictions that preclude review in this action.

As relevant here, the APA excludes APA review for "statutes [that] preclude judicial

review" and ones with "special statutory review." 5 U.S.C. §§701(a)(1), 703. When a statute provides special statutory review, APA review is not available. *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 469 (1984). *Amicus* IRLI respectfully submits that INA review is exactly the type of statutory review that precludes APA review.[3] *See* Section I.B.2, *infra*.

### 2. This Court lacks statutory subject-matter jurisdiction for this action.

The Government argues that the INA's review-channeling provisions place review of all issues related to removal proceedings in the INA's review of final removal orders. *See* Gov't Memo. at 15-16 (ECF #65); 8 U.S.C. §§1252(e)(1)(A), 1252(e)(3)(A) (Plaintiff A.V.'s expedited removal proceedings); *id.* §1252(a)(5), (b)(9) (all other individual Plaintiffs' removal proceedings). By placing review of removal orders in the applicable courts of appeals, Congress displaced district court jurisdiction:

> It is well settled that even where Congress has not expressly stated that statutory jurisdiction is "exclusive," as it has here with regard to final FCC actions, a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute.

*Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) (footnote omitted). Under the circumstances here, this Court does not have federal-question jurisdiction for this action.[4]

---

[3] With the advent of general-purpose review statutes like the APA, the term "nonstatutory" has become something of a "misnomer." *Air New Zealand Ltd. v. C.A.B.*, 726 F.2d 832, 836-37 (D.C. Cir. 1984) (Scalia, J.). "Statutory review" means review pursuant the governing substantive statute (here, the INA), and "nonstatutory review" means review pursuant to a general-purpose provision (*e.g.*, originally equity, but now also the APA or 28 U.S.C. §1361).

[4] As the Government explains, review under 8 U.S.C. §1252(e)(3) does not lie here because no Plaintiff has proceedings under that subsection. *See* Gov't Memo. at 12-15 (ECF #65).

### 3. Plaintiffs' adequate INA remedies displace equity jurisdiction.

In addition to lacking a cause of action and a waiver of sovereign immunity, Plaintiffs also have no claim in equity: "It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. TWA*, 504 U.S. 374, 381 (1992) (interior quotation marks and alterations omitted). Here, the INA provides Plaintiffs with an adequate and exclusive means of judicial review in the federal courts of appeals, so Plaintiffs cannot rely on any equitable theory of judicial review to bring suit in district court. *See, e.g., ITT World Commc'ns*, 466 U.S. at 468 (holding that "[l]itigants may not evade" a provision that vests the courts of appeals with exclusive jurisdiction by requesting a district court to enjoin agency "action as ultra vires"). Only when preclusion-of-review statutes provide *no opportunity whatsoever* for review may federal courts rely on their equitable authority to provide review. *Leedom v. Kyne,* 358 U.S. 184, 188-90 (1958). That extraordinary relief is not available where — as here — review is available in enforcement proceedings. *Board of Governors of the Federal Reserve System v. MCorp Financial,* 502 U.S. 32, 43-44 (1991). The INA's special statutory review displaces review in equity.

## II. PLAINTIFFS' CLAIMS LACK MERIT.

Assuming *arguendo* that this Court reaches the merits, this Court should reject Plaintiffs' procedural and substantive challenges to the asylum-ineligibility rule.

### A. The asylum-ineligibility rule's promulgation did not violate the APA's procedural requirements.

The Government issued its interim final rule to address not only a public-safety and humanitarian emergency, but also issues of national security and foreign relations. 83 Fed. Reg. at 55,950-51. These grave and weighty concerns easily meet the APA's exceptions for notice-and-comment rulemaking and the suspending the 30-day grace period for a rule's taking effect. 5

9

U.S.C. §553(a)(1), (b)(B), (d)(3). Significantly, the foreign-affairs question here (namely, negotiations with Mexico) aligns with the INA merits (namely, the two asylum exemptions for aliens removed to a "safe third country"). *See* 8 U.S.C. §1158(a)(2)(A) (ineligibility to apply for asylum), (b)(2)(C) (termination of asylum). The Supreme Court has found it imperative that the United States speak with one national voice — not 50 states' voices — on issues, such as immigration, that touch foreign relations, even though the states joined the union as sovereigns. *Arizona v. United States*, 567 U.S. 387, 395 (2012). Given the APA's foreign-affairs exception, 5 U.S.C. §553(a)(1), the 88 federal district courts do not have authority, *vis-à-vis* APA procedural issues, to interfere in these aspects of sovereignty, which the Constitution commits to the political branches. *Trump v. Hawaii*, 138 S.Ct. 2392, 2419 (2018). The APA poses no procedural barrier to the asylum-ineligibility rule.

### B. The asylum-ineligibility rule complies with the INA.

The substantive validity of the asylum-ineligibility rule hinges on whether the Government's proposed additional criteria for denying asylum qualify as "consistent with this section." 8 U.S.C. §1158(c)(2)(B). A categorical prohibition on the *granting* of asylum is fully consistent with the mandatory right to *apply* for asylum. *Compare* 8 U.S.C. §1158(a)(1) (right to apply for asylum) *with id.* §1158(c)(2)(A)-(C) (exceptions to subsection (b)(1)'s permissive grant of asylum). For example, an alien "who arrives in the United States … whether or not at a designated port of arrival" has an unfettered right to *apply* for asylum, 8 U.S.C. §1158(a)(1), but immigration officials lack the authority to *grant* that application if the alien in question has been convicted of certain crimes. *Id.* §1158(c)(2)(A)(ii). Through these provisions, "Congress has decided that the right to apply for asylum does not assure any alien that something other than a categorical denial of asylum is inevitable." *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1256 (9th Cir. 2018) (Leavy, J., dissenting in part). The INA does not create a right to obtain the

10

discretionary grant of asylum merely by giving aliens the right to apply for asylum. The Supreme Court recognized that the INA makes a similar distinction between obtaining a visa to enter the United States and being deemed admissible to enter the United States. *Trump*, 138 S.Ct. at 2414 ("plaintiffs' interpretation … ignores the basic distinction between admissibility determinations and visa issuance that runs throughout the INA"). Neither the INA nor the Constitution prohibits allowing applications that are doomed to fail.

### C. The asylum-ineligibility rule complies with Plaintiffs' due-process rights.

The asylum-ineligibility rule seeks to deter aliens abroad from undertaking *illegal* border crossings, 8 U.S.C. §1325(a), and aliens abroad do not have rights under our Constitution. *Boumediene v. Bush*, 553 U.S. 723, 755-62 (2008). Instead, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Excluding an alien seeking admission is an act of sovereignty. *Id.* Accordingly, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (interior quotation marks omitted). Here, because the Government followed the INA (*i.e.*, "the procedure authorized by Congress"), Plaintiffs have suffered no due-process injury.

### III. THIS ACTION CANNOT SUPPORT CLASS CERTIFICATION.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted). Although class-certification issues can be "logically antecedent" to jurisdictional issues — and, as such, resolved

before jurisdiction as questions of statutory standing, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 830-31 (1999) — here the Article III issue predominates on the class-certification issue: no Plaintiff has standing. *See* Section I.A.4, *supra* (discussing class standing issue); *Gen. Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 156 (1982) ("class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (interior quotation marks omitted). While the Government is certainly correct that Plaintiffs do not meet the requirements of FED. R. CIV. P. 23(a) (*e.g.*, commonality, typicality), Gov't Memo. 36-48 (ECF #65), the lack of Article III standing by any one plaintiff alone requires rejection of class certification.

## IV. THIS COURT SHOULD LIMIT ANY RELIEF TO THE PARTIES BEFORE THE COURT.

For practical, jurisprudential, and jurisdictional reasons, "[i]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Accordingly, if this Court finds Plaintiffs entitled to any relief, this Court should limit the relief to these Plaintiffs or this Circuit. Nationwide injunctions effectively preclude other circuits from ruling on the enjoined agency action and thus "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue," which deprives the Supreme Court of the benefit of decisions from several courts of appeals. *United States v. Mendoza*, 464 U.S. 154, 160 (1984). That practical harm is reason enough to reject nationwide relief.

## CONCLUSION

For the foregoing reasons and those cited by the Government, this Court should deny class certification and grant the Government's motion for summary judgment.

Dated: March 13, 2019               Respectfully submitted,

                                    Lawrence J. Joseph

                                    _____
Christopher J. Hajec                Lawrence J. Joseph, D.C. Bar No. 464777
Immigration Reform Law Institute    1250 Connecticut Av NW Suite 700-1A
25 Massachusetts Ave. NW, Suite 335 Washington, DC 20036
Washington, DC 20001                Telephone: (202) 355-9452
Telephone: (202) 232-5590           Facsimile: (202) 318-2254
chajec@irli.org                     lj@larryjoseph.com

*Counsel for Immigration Reform Law Institute*

13