**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

S.M.S.R., *et al.*,

                        Plaintiffs,

        v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

                        Defendants.

Civil Action No. 1:18-cv-02838

[Consolidated with Civil Action
Action No. 18-2718-RDM]

**PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT AND CLASS
CERTIFICATION, AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    The Court Has Jurisdiction .......................................................................... 2

        A.    Each Of The Plaintiffs Has Standing ................................................ 2

        B.    Section 1252 Does Not Deprive The Court Of Jurisdiction ............ 4

    II.    Class Certification Is Appropriate ............................................................... 8

        A.    The Court Has Jurisdiction to Certify the Proposed Class ............. 9

        B.    The Putative Class Meets All of the Requirements of Rule 23(a) and (b)(2) ...................................................................................... 11

            1.    Ascertainability is not a requirement for class certification under Rule 23(b)(2), and is satisfied here in any event ........................................................................... 11

            2.    Certification comports with due process ............................... 14

            3.    The proposed class satisfies Rule 23(a) ................................ 15

            4.    The proposed class satisfies Rule 23(b)(2) .......................... 19

    III.    The Court Should Grant Summary Judgment To The Plaintiff Class ........ 19

        A.    The Rule Violates Section 1158(a)(1) ........................................... 19

        B.    The Rule Exceeds The Rulemaking Authority Granted By Section 1158(b)(2)(C) ................................................................... 20

        C.    The Rule Was Improperly Issued Without Notice-And-Comment Procedures ..................................................................................... 22

        D.    The Rule Is Arbitrary And Capricious ........................................... 24

        E.    The Rule Violates The TVPRA ...................................................... 25

    IV.    Declaratory Relief And Injunctive Relief Are Proper ............................... 26

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Aguilar v. U.S. Immigration and Customs Enforcement Div.*,
    510 F.3d 1 (1st Cir. 2007) ................................................................................7, 9

*Brewer v. Lynch*,
    No. 08-1747-BJR, 2015 WL 13604257 (D.D.C. Sept. 30, 2015) ....................12, 13

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ........................................................................................10, 26

*Cole v. City of Memphis*,
    839 F.3d 530 (6th Cir. 2016) ................................................................................12

*Damus v. Nielsen*,
    313 F. Supp. 3d 317 (D.D.C. 2018) ................................................................17, 19

*Delgado v. Quarantillo*,
    643 F.3d 52 (2d Cir. 2011) ....................................................................................7

*DL v. District of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013) ........................................................................15, 16

*East Bay Sanctuary Covenant v. Trump*,
    909 F.3d 1219 (9th Cir. 2018) ....................................................................20, 22, 24

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..............................................................................................17

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ..................................................................................9

*Harmon v. Thornburgh*,
    878 F.2d 484 (D.C. Cir. 1989) ..............................................................................26

*Hawaii Helicopter Operators Ass'n v. FAA*,
    51 F.3d 212 (9th Cir. 1995) ..................................................................................23

*Hoyte v. District of Columbia*,
    325 F.R.D. 485 (D.D.C. 2017) ........................................................................11, 13

*Huashan Zhang v. U.S. Citizenship & Immigration Servs.*,
    344 F. Supp. 3d 32, 66 (D.D.C. 2018) ..................................................................17

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*In re Bermudez-Cota*,
  27 I. & N. Dec. 441 (BIA 2018) ............................................................5

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ......................................................6, 7, 9

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ..........................................................6, 7, 8, 14

*Karingithi v. Whitaker*,
  913 F.3d 1158 (9th Cir. 2019) ............................................................6

*Little v. Wash. Metro. Area Transit Auth.*,
  249 F. Supp. 3d 394 (D.D.C. 2017) ....................................................11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...........................................................................3

*Mack Trucks, Inc. v. EPA*,
  682 F.3d 87 (D.C. Cir. 2012) ........................................................22, 23

*Martinez v. Napolitano*,
  704 F.3d 620 (9th Cir. 2012) ...............................................................7

*Pereira v. Sessions*,
  138 S. Ct. 2105 (2018) ........................................................................5

*Pigford v. Glickman*,
  182 F.R.D. 341 (D.D.C. 1998) ............................................................13

*Qiao v. Lynch*,
  672 F. App'x 134 (2d Cir. 2017) ...........................................................7

*Ramirez v. U.S. Immigration & Customs Enf't*,
  338 F. Supp. 3d 1 (D.D.C. 2018) ..........................................11, 13, 16, 17 18

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ...........................................................................9

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) .........................................14, 15, 17, 19

*Russell-Murray Hospice, Inc. v. Sebelius*,
  724 F. Supp. 2d 43 (D.D.C. 2010) ........................................................3

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Sale v. Haitian Centers Council, Inc.*,
   509 U.S. 155 (1993)............................................................................................21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)......................................................................................10, 11

*Shelton v. Bledsoe*,
   775 F.3d 554 (3d Cir. 2015)...............................................................................12

*Shook v. El Paso County*,
   386 F.3d 963 (10th Cir. 2004) ...........................................................................12

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002).............................................................................3

*Sorenson Commc'ns Inc. v. FCC*,
   755 F.3d 702 (D.C. Cir. 2014)......................................................................22, 24

*Steele v. United States*,
   159 F. Supp. 3d 73 (D.D.C. 2016) .....................................................................12

*Sullivan v. Zebley*,
   493 U.S. 521 (1990)............................................................................................26

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018)........................................................................................21

*Trump v. Int'l Refugee Assistance Project*,
   137 S. Ct. 2080 (2017)........................................................................................27

*Twelve John Does v. District of Columbia*,
   117 F.3d 571 (D.C. Cir. 1997)............................................................................18

*Vetcher v. Sessions*,
   316 F. Supp. 3d 70 (D.D.C. 2018) .......................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...........................................................10, 11, 12, 14, 15, 19

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972).............................................................................12

*Yassini v. Crosland*,
   618 F.2d 1356 (9th Cir. 1980) ............................................................................22

# TABLE OF AUTHORITIES—Continued

Page(s)

**STATUTES:**

5 U.S.C. § 706(2) .................................................................................26

8 U.S.C. § 1158 ..............................................................................6, 20

8 U.S.C. § 1158(a) .............................................................................21

8 U.S.C. § 1158(a)(1) ......................................................................1, 19

8 U.S.C. § 1158(b)(2)(C) .............................................................9, 20, 21

8 U.S.C. § 1158(b)(3)(C) .....................................................................26

8 U.S.C. § 1182(f) ..........................................................................20, 21

8 U.S.C. §§ 1221-1231 .........................................................................9

8 U.S.C. § 1225(b) ........................................................................10, 23

8 U.S.C. § 1225(b)(1)(A)(i) ...................................................................6

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ............................................................23

8 U.S.C. § 1225(b)(1)(B)(ii) ..................................................................7

8 U.S.C. § 1252 ........................................................................2, 4, 16

8 U.S.C. § 1252(a)(5) ...........................................................................4

8 U.S.C. § 1252(b)(9) ...........................................................1, 2, 4, 5, 6, 7, 9

8 U.S.C. § 1252(e) .........................................................9, 10, 16, 27

8 U.S.C. § 1252(e)(3) ........................................................................4, 9

8 U.S.C. § 1252(e)(3)(A) ...........................................................10, 16, 27

8 U.S.C. § 1252(f) .................................................................................9

8 U.S.C. § 1252(f)(1) ............................................................................9

28 U.S.C. § 1331 ..................................................................................4

Administrative Procedure Act.................................1, 10, 19, 22, 23, 24

Declaratory Judgment Act ....................................................................26

# TABLE OF AUTHORITIES—Continued

**Page(s)**

Immigration and Nationality Act ........................................................................................1, 19, 21

Rules Enabling Act ....................................................................................................................10

Trafficking Victims Protection Reauthorization Act ............................................................19, 25

**RULES:**

D.C. Cir. R. 28(a)(7) ...................................................................................................................3

Fed. R. Civ. P. 23 ...............................................................................................9, 10, 11, 15, 18

Fed. R. Civ. P. 23(a) ..........................................................................................................11, 15

Fed. R. Civ. P. 23(a)(2) ............................................................................................................16

Fed. R. Civ. P. 23(b)(2)....................................................................... 2, 8, 11-15, 17, 19, 27

Fed. R. Civ. P. 23(b)(3)............................................................................................................17

Fed. R. Civ. P. 23(g) ................................................................................................................18

Fed. R. Civ. P. 56(c) ..................................................................................................................3

Fed. R. Civ. P. 56(e)(2) ..............................................................................................................3

Local Civil Rule 7(h) ..................................................................................................................3

**REGULATIONS:**

*Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations;*
    *Procedures for Protection Claims,*
    83 Fed. Reg. 55,934 (Nov. 9, 2018)..................................................................1, 8, 21, 23, 25

Proclamation No. 9822, 83 Fed. Reg. 57,661 (Nov. 9, 2018) ........................................................1

Proclamation No. 9842, 84 Fed. Reg. 3665 (Feb. 7, 2019) ........................................................1, 4

**LEGISLATIVE MATERIAL:**

S. Rep. No. 79-752 (1945) ........................................................................................................22

**OTHER AUTHORITIES:**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &*
    *Procedure* § 1790 (1986) ....................................................................................................13

## <u>TABLE OF AUTHORITIES</u>—Continued

**Page(s)**

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*,
　131 Harv. L. Rev. 417 (2017) ................................................................................................27

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
　84 N.Y.U. L. Rev. 97 (2009) ................................................................................................12

William B. Rubenstein, Newberg on Class Actions (5th ed. Nov. 2018 update).........................16

## INTRODUCTION

Defendants' lengthy Cross-Motion and Opposition only dances around the conspicuous illegality at the core of the President's Rule and Proclamation. *See Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims*, 83 Fed. Reg. 55,934 (Nov. 9, 2018) (the "Rule"); Proclamation No. 9822, 83 Fed. Reg. 57,661 (Nov. 9, 2018) (the "Proclamation"); Proclamation No. 9842, 84 Fed. Reg. 3665 (Feb. 7, 2019) (extending initial Proclamation).  While the Immigration and Nationality Act ("INA") guarantees "[a]ny alien" the right to seek asylum "whether or not [she arrived] at a designated port of arrival," 8 U.S.C. § 1158(a)(1), the Rule and Proclamation make a person ineligible for asylum on the sole basis that she arrived outside a "port of arrival."  The conflict between the INA and Defendants' policy is blatant, as the Ninth Circuit has found.  And that is only the first of the manifold legal problems with the Rule and Proclamation: The Rule improperly delegates to the President the power to create eligibility bars to asylum seekers, even though the statute explicitly gives that power to the Attorney General alone.  Beyond that, the Rule contravenes the basic substantive and procedural requirements of the Administrative Procedure Act ("APA") and the Nation's international obligations.  Defendants' responses to these points have barely progressed since the policy was initially promulgated, and their token efforts to salvage the policy in their latest filing are not nearly enough to overcome the policy's patent illegality.

Most of Defendants' brief pivots to procedural issues, but none of their objections holds water.  Plaintiffs plainly have standing—the individual Plaintiffs are subject to the Rule and Proclamation, and Defendants' policy will impose substantial costs and hardships on the organizational Plaintiffs.  Defendants maintain that 8 U.S.C. § 1252(b)(9) strips this Court of federal-question jurisdiction, but Plaintiffs' claims do not "aris[e] from . . . action[s] taken or

1

proceeding[s] brought to remove" them.  8 U.S.C. § 1252(b)(9).  Indeed, their claims were filed *before* the Government had taken any action to remove them, and Plaintiffs challenge the validity of a general rule making them ineligible for asylum, not a decision to remove them. Defendants also contest the propriety of class certification.  But their arguments on class certification either repackage their flawed jurisdictional positions, fly in the face of binding precedent, or would eviscerate the very possibility of a Rule 23(b)(2) class.

This Court should therefore certify the proposed class and grant summary judgment to Plaintiffs.

**ARGUMENT**

## I.    THE COURT HAS JURISDICTION.

Defendants open by repeating, at length, their arguments for why this Court allegedly lacks jurisdiction.  The parties extensively litigated this issue in their briefing on Plaintiffs' request for a temporary restraining order ("TRO") and during oral argument before this Court, and Defendants' brief adds almost nothing new.  Their jurisdictional arguments continue to fail for the same reasons they did before:  Each of the Plaintiffs has standing, and Defendants' novel and sweeping construction of the jurisdiction-channeling provisions in 8 U.S.C. § 1252 lacks any basis in text or precedent.

### A.    Each Of The Plaintiffs Has Standing.

The organizational Plaintiffs have standing to challenge the Rule.  *See* S.M.S.R. Reply in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("S.M.S.R. TRO Reply") at 6-9, Dkt. 34.  As the undisputed facts establish, the Rule will impose substantial costs on RAICES and CAIR Coalition, substantially reduce the number of clients each organization can serve, and impair each organization's ability to fulfill its mission of assisting asylum-seekers.   Statement of

Undisputed Material Facts in Support of Pls.' Mot. for Summ. J. & Class Cert. ("SMF") ¶¶ 47-51, Dkt. 52-2.[1]  Defendants have not contested any of these facts, and they have made no effort to dispute that they are sufficient to confer organizational standing.  *See* Defs.' Cross-Mot. for Summ. J. & Opp. to Pls.' Mot. for Class Cert. ("Defs. Br.") at 26, Dkts. 65, 66.[2]

The individual Plaintiffs also have standing.  "[T]here is ordinarily little question" that a plaintiff has standing if he "is himself an object of the action . . . at issue."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-562 (1992).  Each of the individual Plaintiffs is an object of the challenged Rule:  Each one crossed the southern border outside a port of entry after November 9, 2018, and each will be barred from seeking asylum if the Rule is put into effect.  SMF ¶¶ 22-46.  Defendants argue that the Rule has "no effect" on A.J.A.C. because he is subject to reinstatement of a prior order of removal.  Defs. Br. 11 & n.4.  But A.J.A.C. is not a plaintiff in this action; he is a representative of his minor child, A.J.E.A.M., who unquestionably is subject to the asylum restrictions.  *See* Am. Compl. ¶¶ 1, 60-73, Dkt. 39; SMF ¶¶ 35-39.

---

[1] Unless otherwise noted, docket references are to documents filed in the consolidated case of *O.A., et al. v. Trump, et al.*, No. 1:18-cv-02718-RDM (D.D.C.) (the "Consolidated Case").

[2] Contrary to Defendants' suggestion, Plaintiffs may rely on facts outside the administrative record to establish standing and jurisdiction—particularly given that *Defendants themselves* have relied on extra-record documents in their effort to show that jurisdiction is lacking.  *See Russell-Murray Hospice, Inc. v. Sebelius*, 724 F. Supp. 2d 43, 54 n.12 (D.D.C. 2010) ("The Circuit . . . has clearly stated that when a party's standing to challenge an administrative action is not 'self-evident' from the administrative record, 'the petitioner must supplement the record to the extent necessary to explain and substantiate its entitlement to judicial relief.' " (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002))); D.C. Cir. R. 28(a)(7) ("When the appellant's or petitioner's standing is not apparent from the administrative record, the brief must include arguments *and evidence* establishing the claim of standing." (emphasis added)); *see also* Defs. Br. Exs. A, B (introducing extra-record evidence); Defs. Br. 10-11 (relying on such evidence). Moreover, because Defendants have made no attempt to dispute any of the facts asserted in Plaintiffs' SMF, the Court "may assume that [the] facts . . . are admitted."  Local Civ. R. 7(h)(1); *see* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

Defendants contend that it is "speculative" whether the Rule will injure the individual Plaintiffs, because they have not yet been denied asylum and because they are currently protected by the preliminary injunction issued in *East Bay Sanctuary Covenant, et al. v. Trump, et al.*, No. 3:18-cv-06810-JST (N.D. Cal. Dec. 19, 2018). Defs. Br. 24-26. These arguments are meritless. The Rule makes Plaintiffs categorically ineligible for asylum. It involves no "speculati[on]" to say that the categorical bar will be applied to them as a matter of course, and being subject to that bar is itself an injury. Further, the *East Bay* injunction does not eliminate Plaintiffs' injuries: It affords temporary rather than permanent relief, and Defendants are actively litigating to lift it. Furthermore, the President himself has confirmed by Proclamation that, "[s]hould the injunction be lifted," aliens currently protected by it will once again "be ineligible to be granted asylum." 84 Fed. Reg. at 3665.

### B.   Section 1252 Does Not Deprive The Court Of Jurisdiction.

Nothing in 8 U.S.C. § 1252 strips this Court of federal-question jurisdiction under 28 U.S.C. § 1331 over this case. As an initial matter, Defendants make no argument that Section 1252 deprives the Court of jurisdiction over RAICES's and CAIR Coalition's claims. Nor do Defendants argue that any of the S.M.S.R. Plaintiffs is subject to the limits of Section 1252(e)(3), since none of those Plaintiffs is currently in expedited removal proceedings or challenging an aspect of the expedited removal process. *See* Defs. Br. 12-15, 40 (recognizing that only one of the *O.A.* plaintiffs is in expedited removal proceedings). Defendants' only applicable jurisdictional argument, then, is that the *individual* S.M.S.R. Plaintiffs are subject to the limits of *Section 1252(b)(9)*.[3]

---

[3] Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review *of an order of removal*." 8 U.S.C. § 1252(a)(5) (emphasis added). That provision only pertains to review of final orders of

4

As Plaintiffs have extensively explained, that is incorrect.  *See* S.M.S.R. Mem. in Supp. of Pls.' Mot. for Summ. J. & Class Cert. ("Mem.") at 17-20, Dkt. 52-1; S.M.S.R. TRO Reply 2-6; TRO Hr'g Tr. 7:9-25:20 (Dec. 17, 2018).  Section 1252(b)(9) channels "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter."  8 U.S.C. § 1252(b)(9).  Plaintiffs' claims, however, do not "aris[e] from . . . action[s] taken or proceeding[s] brought to remove" them.  *Id.*  Plaintiffs filed their claims before the Government had taken any action to remove them or placed them in removal proceedings.  Moreover, Plaintiffs do not challenge a decision to remove them or any aspect of the removal process, but only the validity of a rule making them ineligible for the affirmative benefit of asylum.

Defendants claim that Plaintiffs were in removal proceedings when suit was filed because, even though their notices to appear "did not contain a date and/or time for an initial hearing," a hearing date was "later disseminated."  Defs. Br. 23.  That is not true of all of the Plaintiffs, several of whom never received hearing dates.[4]  Furthermore, the Supreme Court rejected a virtually indistinguishable argument in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).  There, the Court held that the Government cannot initiate removal proceedings by "serv[ing] a document labeled 'notice to appear' without listing the time and location of the hearing," and then "provide that information" at some point "down the line."  *Id.* at 2115; *see id.* at 2118-19.  Of course, once an alien has been "properly served with both a notice to appear *and* a subsequent notice of hearing," removal proceedings have begun *at that time*.  *In re Bermudez-Cota*, 27 I. &

---

removal, and unquestionably no such order has been issued here.  It is thus no obstacle to jurisdiction, and Defendants offer no meaningful argument to the contrary.

[4] Defendants provide no evidence that Plaintiffs L.V.C.R., C.S.C.C., R.G.G., and N.A.G.A. have received hearing dates or been placed in removal proceedings.  *See* Defs. Br. Ex. A, at 12-19 (defective notices lacking dates and times); Ex. B (not listing any pending immigration proceedings involving these Plaintiffs).

N. Dec. 441, 443 (BIA 2018) (emphasis in original); *see Karingithi v. Whitaker*, 913 F.3d 1158, 1158-59 (9th Cir. 2019) (holding that removal proceedings were initiated when the alien received a defective notice to appear and then, "[t]he same day, [the alien] was issued a notice of hearing, which provided the date and time of the hearing"). But none of the individual Plaintiffs here received a notice of hearing until after suit was filed—making it clear that their claims did not "aris[e] from" their later-initiated (or, in some cases, still-not-initiated) removal proceedings.[5]

Defendants also claim that Plaintiffs "confuse the standard" under Section 1252(b)(9), arguing that the provision precludes review not just of claims that actually "aris[e] from" removal proceedings, but of any claim that "*can* be brought inside removal proceedings." Defs. Br. 17 (emphases altered). It is Defendants who are confused. The plain text of the statute channels only those claims that "aris[e] from" removal actions or proceedings, not any claims that *could* arise in removal proceedings. 8 U.S.C. § 1252(b)(9). And none of the precedents Defendants cite holds or even suggests otherwise.

In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court rejected an "expansive interpretation of § 1252(b)(9)" similar to Defendants', holding that this provision "does not present a jurisdictional bar" where—as here—the plaintiffs "are not asking for review of an order of removal," "are not challenging the decision to detain them in the first place or to seek removal," and "are not even challenging any part of the process by which their removability will be determined." 138 S. Ct. at 840-841. In *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), the Ninth Circuit similarly held that Section 1252(b)(9) "excludes . . . any claim that does not

---

[5] Defendants suggest that if Plaintiffs were not in removal proceedings when suit was filed, that means that they "were still formally subject to their preexisting expedited removal orders." Defs. Br. 23. That is a baffling assertion. None of the Plaintiffs was ever subject to an expedited removal order. On the contrary, the Government was statutorily prohibited from issuing such an order as soon as plaintiffs "indicate[d] either an intention to apply for asylum under section 1158 of this title or a fear of persecution," as each Plaintiff here did. 8 U.S.C. § 1225(b)(1)(A)(i).

*arise from* removal proceedings," and found that the statute covered claims challenging the denial of counsel in removal proceedings because those claims were "bound up in and an inextricable part of the [removal] process." *Id.* at 1032-33 (emphasis added). Likewise, in *Aguilar v. U.S. Immigration and Customs Enforcement Division*, 510 F.3d 1 (1st Cir. 2007), the First Circuit emphasized the statute's "bounded" scope, and found that challenges to "action[s]" taken to remove the plaintiffs—including holding them in prolonged detention and denying them counsel—were subject to Section 1252(b)(9) because they had "a direct link to, and [were] inextricably intertwined with, the [removal] process." *Id.* at 7, 10-13; *see Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76-77 (D.D.C. 2018) (applying similar standard, and holding that a prisoner's claim about the absence of "adequate legal material[s] . . . to meaningfully contest removal charges" arose out of his removal proceedings).

Here, in contrast, Plaintiffs do not challenge any aspect of their removal process. And as the Supreme Court indicated in *Jennings*, the Government has taken no "action . . . to remove" aliens, like Plaintiffs, who are merely "detained under 8 U.S.C. § 1225(b)(1)(B)(ii) for consideration of their asylum applications." *Jennings*, 138 S. Ct. at 840 n.2. Defendants claim that reviewing Plaintiffs' claims would "necessarily entail reviewing the merits of Plaintiffs' claims for relief from removal" or "pretermit" the outcome of those proceedings. Defs. Br. 18, 21. That is wrong. Declaring the Rule invalid would simply remove a barrier to seeking asylum; it would not entail any determination of whether Plaintiffs are removable, nor determine whether they should receive asylum or any other relief from removal. *Cf. Delgado v. Quarantillo*, 643 F.3d 52, 53-54 (2d Cir. 2011) (per curiam) (plaintiff challenged denial of her application for "permission to reapply for admission after . . . removal"); *Qiao v. Lynch*, 672 F. App'x 134, 134 (2d Cir. 2017) (plaintiff "challeng[ed] the reopening of his removal proceedings"); *Martinez v.*

*Napolitano*, 704 F.3d 620, 622-623 (9th Cir. 2012) (plaintiff sought "judicial review of his removal order").

Indeed, "cramming" Plaintiffs' challenge into the administrative review scheme would serve no purpose but delay. *Jennings*, 138 S. Ct. at 840. Immigration judges have no special expertise in reviewing the legality of sweeping and categorical immigration policies. Moreover, Plaintiffs' claims require no factual development, as Defendants' failure to introduce or dispute any facts in the summary judgment record makes clear. Rather than increase judicial or administrative efficiency, requiring administrative review of Plaintiffs' challenges would compel piecemeal adjudication of hundreds or thousands of identical claims, wasting the scarce judicial and administrative resources that the Rule is supposedly intended to conserve. *See* 83 Fed. Reg. at 55,946-48 (justifying the Rule on the ground that "existing burdens [on immigration courts] suggest an unsustainably inefficient process," and that the Rule will result in "a decrease in the number of asylum hearings before immigration judges").

## II.   Class Certification Is Appropriate.

This Court should certify the proposed class, approve the named Plaintiffs as class representatives, and appoint the undersigned attorneys as counsel for the class. Defendants' arguments to the contrary rest largely on a reiteration of their claim that this Court lacks jurisdiction, and Defendants' mistaken belief that the class includes individuals who are not yet present in the United States. Once those untenable premises are swept away, Defendants' arguments against class certification crumble. Indeed, this and other Courts have repeatedly certified nationwide classes under Rule 23(b)(2) in similar challenges to immigration policies. *See* Mem. 8.

## A.     The Court Has Jurisdiction to Certify the Proposed Class.

Defendants offer several jurisdictional objections to class certification.  None has merit.

First, Defendants reprise their argument that the Court lacks jurisdiction under Section 1252(b)(9).  Defs. Br. 38.  For the reasons already explained, that is incorrect.  Defendant's citations to *J.E.F.M.* and *Aguilar* are thus irrelevant:  Those cases held that plaintiffs who *were* subject to Section 1252(b)(9) could not evade that provision by filing a class action.  *See J.E.F.M.*, 837 F.3d at 1038; *Aguilar*, 510 F.3d at 16.  But Plaintiffs' claims do not fall within Section 1252(b)(9), individually or collectively.

Second, Defendants claim that 8 U.S.C. § 1252(f) bars class certification.  Defs. Br. 39.  Section 1252(f), however, does not prohibit class actions.  It prohibits a particular form of *relief*: an order "enjoin[ing] or restrain[ing] the operation of the provisions of Part IV of this subchapter," or 8 U.S.C. §§ 1221-1231.  8 U.S.C. § 1252(f)(1); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-482 (1999).  Plaintiffs do not seek to enjoin any of those statutory provisions.  They seek to prevent enforcement of an immigration rule—one that was issued pursuant to 8 U.S.C. § 1158(b)(2)(C), not any provision of 8 U.S.C. §§ 1221-1231.  Furthermore, even if Section 1252(f) somehow applied to this suit, it would not "doom[ ] [Plaintiffs'] bid for class certification" at the outset.  Defs. Br. 39.  Where it applies, Section 1252(f) only bars *injunctive*, not declaratory relief.  *See Hamama v. Adducci*, 912 F.3d 869, 878 (6th Cir. 2018) ("[T]here is a big difference between barring the certification of a class under Rule 23 and barring all injunctive relief.  The former bars a *class action* regarding *anything*; the latter only bars *injunctive relief* for anyone other than *individuals*." (emphases in original)).

Third, Defendants contend that 8 U.S.C. § 1252(e)(3) provides "the sole avenue for suit challenging the Rule."  Defs. Br. 40.  But Plaintiffs are not subject to Section 1252(e) because

they are not challenging any "determination[ ] under section 1225(b)" or the "implementation" of the expedited removal system.  8 U.S.C. § 1252(e)(3)(A); *see* Defs. Br. 13-15.  Rather, Plaintiffs are challenging a substantive restriction on asylum eligibility that is applied outside the expedited removal process.[6]

Finally, Defendants offer a hodgepodge of policy objections to class certification.  They object that class actions "'foreclos[e] adjudication by a number of different courts and judges,'" and that "the D.C. Circuit lacks a body of case law governing petitions for review."  Defs. Br. 40-41 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).  These free-floating arguments, untethered to any legal authority, do not provide a lawful basis to deny class certification (let alone offer a reason this Court lacks jurisdiction).  They also fail on their own terms.  The very purpose of the class action vehicle is to increase judicial efficiency and obtain "indivisible" declaratory and injunctive relief nationwide.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  What is more, certification of this class plainly will not foreclose adjudication elsewhere, given that parallel litigation has already advanced to the Ninth Circuit and, briefly, to the Supreme Court.  This case also does not require the Court to scrutinize "petitions for review"; it involves an APA challenge to an agency rule, and falls well within the heartland of this Circuit's case law.[7]

---

[6] Of course, if Plaintiffs *are* subject to Section 1252(e), this Court would still have jurisdiction to determine whether the Rule and Proclamation are unconstitutional or "otherwise in violation of law."  8 U.S.C. § 1252(e)(3)(A).  And Plaintiffs would be entitled to vacatur of the Rule and nationwide equitable relief.  *See* S.M.S.R. TRO Mem. 43-45; S.M.S.R. TRO Reply 24-25.

[7] Because Defendants' jurisdictional arguments are meritless, their contention that class certification would violate the Rules Enabling Act fails, as well.  *See* Defs. Br. 41 (arguing that the Rules Enabling Act bars certification "[b]ecause Congress has explicitly provided that district courts have no jurisdiction").  Certifying a class to prosecute the claims under Rule 23 will "enable[] [the] court to adjudicate the claims of multiple parties at once, instead of in separate suits," while "leav[ing] the parties' legal rights and duties intact and the rules of decision unchanged."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

**B.     The Putative Class Meets All of the Requirements of Rule 23(a) and (b)(2).**

A plaintiff has a "categorical" right "to pursue his claim as a class action" where the requirements of Rule 23 are satisfied. *Shady Grove Orthopedic Assocs.*, 559 U.S. at 398. For the reasons set forth in their class certification memorandum, Plaintiffs have met their burden to "affirmatively demonstrate [their] compliance" with Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. *Wal-Mart*, 564 U.S. at 350. Plaintiffs also satisfy Rule 23(b)(2), given that the challenged Rule will "apply generally to the class" and "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 360. Defendants offer no convincing arguments to the contrary.

> *1.      Ascertainability is not a requirement for class certification under Rule 23(b)(2), and is satisfied here in any event.*

Defendants first argue that this Court should " 'graft[ ]' onto Rule 23 an 'implied' requirement" that the class be "ascertainable," and then find that Plaintiffs' class fails to satisfy that requirement because it would allegedly be impossible to identify which individuals are subject to the challenged Rule. Defs. Br. 42-44 (citation omitted). Defendants are wrong on both counts.

To start, this Court should decline Defendants' request to "graft" an unstated ascertainability requirement onto a Rule 23(b)(2) class action. *See* Mem. 17 n.7. The D.C. Circuit has never adopted such a requirement. *Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017); *see Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018) (finding it "far from clear that there exists in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification"). District courts in this Circuit have ruled on class certification under Rule 23(b)(2) without regard to ascertainability in several recent decisions. *See Little v. Wash. Metro. Area Transit Auth.*, 249 F.

Supp. 3d 394 (D.D.C. 2017); *Steele v. United States*, 159 F. Supp. 3d 73 (D.D.C. 2016).   And other circuits have disclaimed an ascertainability requirement in the Rule 23(b)(2) context.[8]

As many of these courts have observed, requiring proof of ascertainability makes little sense in the case of a Rule 23(b)(2) class.   "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).   Because class membership is mandatory and the injunctive relief requested is necessarily "indivisible," there is no practical need to ascertain the identity of each Rule 23(b)(2) class member *ex ante*.   Indeed, the principal case Defendants cite in support of an ascertainability requirement held that the requirement has little if any application in cases seeking certification of a Rule 23(b)(2) class, "because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class." *Brewer v. Lynch*, No. 08-1747-BJR, 2015 WL 13604257, at *6 (D.D.C. Sept. 30, 2015); *see also* Fed. R. Civ. P. 23, advisory committee's note to 1966 amend. (describing as "[i]llustrative" of Rule 23(b)(2) classes "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*" (emphasis added)).

---

[8] *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("[N]otice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited."); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("[A]scertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) (explaining that Rule 23(b)(2) is "well suited for cases where the composition of a class is not readily ascertainable").

In any event, even if the Court were to evaluate the ascertainability of the Rule 23(b)(2) class here, Plaintiffs' class definition is not overbroad or unascertainable. Courts that require ascertainability for a Rule 23(b)(2) class have held that plaintiffs must demonstrate that "'the general outlines of the members of the class are determinable at the outset of the litigation'" without regard to burdensome individualized determinations. *Brewer*, 2015 WL 13604257, at *5 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1790, at 118 (1986)). And they have emphasized that this test "is not designed to be . . . particularly stringent." *Id.*; *see also Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998). The putative class members here are easily determinable. The class is defined by clear and objective criteria as to where (through the southern border but outside ports of entry) and when (after November 9, 2018) asylum-seekers entered the United States. Ascertaining those facts does not require complicated individual investigations. Indeed, those criteria are exactly the same ones the Government would apply in enforcing the Rule. *Cf. Hoyte*, 325 F.R.D. at 493 (finding class including "any individual whose property was seized and was not provided with a prompt interim hearing" adequately defined and ascertainable, where Government was in possession of the names and addresses of owners of seized vehicles).

Defendants repeatedly complain that the class definition "potentially includes" aliens who are outside the United States. Defs. Br. 43, 44, 47, 49. That complaint reflects a basic misunderstanding of the proposed class definition. Aliens will only become members of the class *once* they enter the United States through the southern border without inspection; aliens who remain outside the United States and have not yet crossed the southern border are not yet members of the plaintiff class. Courts routinely approve Rule 23(b)(2) classes seeking injunctive relief on behalf of prospective members in similar circumstances. *See Ramirez*, 338 F. Supp. 3d

at 49-50 (rejecting ascertainability challenge to proposed class of "[a]ll former unaccompanied alien children who are detained or *will be detained* by ICE after being transferred by ORR" (emphasis added)); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 180 (D.D.C. 2015) (editing class definition to include individuals who "have been or *will be denied*" after being subjected to challenged custody determinations (emphasis added)); *see also Jennings*, 138 S. Ct. at 858 (finding that classwide injunctive relief "applies to future class members, including individuals who were not in custody when the injunction was issued").

### 2. *Certification comports with due process.*

Defendants also argue that certifying a Rule 23(b)(2) class would "hinder the[ ] due process rights" of class members by "[d]epriving [them] of their ability to challenge a determination through their petition for review when they cannot opt out of the class." Defs. Br. 45. The implications of this argument are sweeping:  If accepted, it would mean that every Rule 23(b)(2) class is unconstitutional. That is, of course, incorrect. As the Supreme Court explained in *Wal-Mart*, the underlying premise of Rule 23(b)(2) is that once a class is certified, "depriving people of their right to sue in [their individual capacities] complies with the Due Process Clause." 564 U.S. at 363. That is because "notice has no purpose when the class is mandatory," and such a class by definition challenges conduct that "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 360, 363 (citation omitted). Accordingly, class members need not "be given notice and opt-out rights" that might permit them to raise the same claims in parallel individual litigation. *Id.* at 363. This case is illustrative: All putative class members will benefit identically from the requested injunction removing an unlawful barrier to their eligibility for asylum, which is the same relief that they

could hope to obtain in any individual lawsuits.  Due process does not demand an opportunity for such duplicative claims.[9]

### 3. The proposed class satisfies Rule 23(a).

When Defendants finally get around to addressing the requirements of Rule 23(a), they have little to say.  Defendants do not dispute that the class satisfies Rule 23(a)'s numerosity requirement.  And their objections with regard to commonality, typicality, and adequacy all stem from the same basic confusion about the class definition and the requirements of Rule 23.

a.  As Defendants acknowledge, the commonality requirement is satisfied where "the class members have suffered the same injury."  Defs. Br. 46 (quoting *Wal-Mart*, 564 U.S. at 349).  That criterion is easily satisfied here:  Every member of the class suffers the same legal injury because every class member is subject to the challenged Rule.  Indeed, the scope of the class is coterminous with the scope of the Rule denying them eligibility for asylum.  *See R.I.L-R*, 80 F. Supp. 3d at 182 (finding commonality and typicality where "all (or nearly all) class members" were subject to challenged detention process); *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (finding commonality where a "uniform policy or practice that affects all class members" is challenged).

Defendants claim that the class "includes four distinct groups of aliens . . . who would be affected" differently by the Rule.  Defs. Br. 46.  Even if that were true, it would be irrelevant.  The legal injury that every member of the class suffers a result of the Rule—ineligibility for asylum—is identical.  The fact that different class members might be affected differently by that injury, or stand in slightly different procedural postures, does not mean their claims cease to

---

[9] The Government gains nothing by its lengthy recitation of decisions upholding dismissals of individual lawsuits subsequent to the certification of related Rule 23(b)(2) classes.  Defs. Br. 45. The court of appeals in each case appropriately dismissed redundant individual litigation where a parallel class action already raised the same claims for declaratory and injunctive relief, exactly as the Supreme Court envisioned in *Wal-Mart*.

share a common "question[ ] of law or fact."  Fed. R. Civ. P. 23(a)(2); *see DL*, 713 F.3d at 128

(explaining that "even a single common question" suffices to establish commonality); *Ramirez*,

338 F. Supp. 3d at 45-46 (rejecting argument that "differences in procedural postures and in the

authority under which individuals are detained" defeated commonality).

Furthermore, the four groups that the government identifies are either not materially

distinct or, in one instance, not part of the class at all.  The first two groups—aliens in expedited

and full removal proceedings—are subject to the Rule and are plainly injured by it.  Moreover,

the jurisdiction-channeling provisions of Section 1252 would not prevent individuals in either of

these groups from filing suit in this Court, *see supra* pp. 4-8, and Plaintiffs need not establish that

every unnamed class member could separately invoke the Court's jurisdiction in any event, *see* 1

William B. Rubenstein, Newberg on Class Actions § 2:3 (5th ed. Nov. 2018 update) ("the

proponent of the class suit need not demonstrate that each class member has standing").[10]

Members of the third group—aliens subject to a reinstated removal order—are also injured by

the Rule, which imposes a *new* basis for asylum ineligibility that the law does not authorize.  The

fact that these aliens (and others) might not receive asylum for other reasons does not mean that

the Government may impose an additional unlawful impediment to seeking such relief.  Finally,

the fourth group—aliens who have not yet entered the United States—is not part of the class at

all; individuals only become part of the class *after* they have crossed the border without

---

[10] Members of the S.M.S.R. class who are in expedited removal proceedings are not subject to
Section 1252(e), because this suit does not challenge the "implementation" of the expedited
removal process or any "determinations" made as part of that process.  8 U.S.C. § 1252(e)(3)(A).
But even if some class members were subject to that provision, they would be permitted to file
suit in this District, *id.*, as even Defendants concede, *see* Defs. Br. 46.

inspection. *See supra* p. 13. The extent of aliens' constitutional rights before they enter the country, *see* Defs. Br. 47-48, is thus irrelevant.[11]

Defendants are also wrong that "there is no single remedy that can be provided through an injunction." Defs. Br. 48. Every member of the Plaintiff class seeks the same remedy: a declaration that the Rule is unlawful and an injunction prohibiting its enforcement. *See* Am. Compl. at 68. Plaintiffs are not requesting that the Court affirmatively grant asylum to anybody, or that it shield any class member from removal. It therefore makes no difference for purposes of class certification that some class members ultimately may not succeed on their asylum claims or may be able to obtain some other relief from removal (although not relief carrying all of the benefits of asylum). In Defendants' own cases, Defs. Br. 49-50, courts repeatedly certified analogous classes in which plaintiffs challenged policies under which they were detained or denied benefits based on impermissible criteria.[12]

b. Defendants assert that, in light of their argument that all of the class members' "injuries are not the same," the named Plaintiffs "also cannot satisfy the requirement of typicality." Defs. Br. 46. For the reasons just given, that is wrong; every class members' legal injury is materially the same. Defendants offer no other argument against typicality. The class thus satisfies this requirement. *See* Mem. 12-13; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

---

[11] If the Court concluded that one of these four groups was distinct from the remainder of the class, the appropriate course would be to certify a subclass or to sever that group from the class, not to deny class certification.

[12] *See, e.g.*, *R.I.L-R*, 80 F. Supp. 3d at 180 (certifying Rule 23(b)(2) class challenging denial of release based on unlawful deterrence factor); *Huashan Zhang v. U.S. Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32, 66 (D.D.C. 2018) (certifying Rule 23(b)(2) class challenging denial of investor immigration petitions based on erroneous interpretation of regulatory investment requirements), *appeal filed*, No. 19-5021 (D.C. Cir. Jan. 29, 2019); *Ramirez*, 338 F. Supp. 3d at 49 (certifying Rule 23(b)(3) class where "Defendants fail to afford *any* members of this group with the consideration due under the statutory provision"); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 334 (D.D.C. 2018) (certifying Rule 23(b)(2) class challenging non-individualized method by which asylum applicants were denied parole).

157 n.13 (1982) (explaining that commonality and typicality considerations "tend to merge," as both requirements under Rule 23 "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

c.  Finally, the named Plaintiffs are also adequate class representatives.  As Defendants recognize, class representatives are adequate if they do not have "antagonistic or conflicting interests with the unnamed members of the class" and are "able to vigorously prosecute the interests of the class through qualified counsel."  Defs. Br. 49 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).  Defendants do not contend that the named Plaintiffs' interests conflict with those of absent class members, that Plaintiffs would not vigorously prosecute their claims, or that class counsel are unqualified.[13]  Defendants simply claim that the relief the named Plaintiffs might seek "in their individual [asylum] cases" could be different than the relief sought by other class members.  Defs. Br. 49.  It is not clear why Defendants think that; surely most if not all members of the plaintiff class would ultimately seek asylum.  In any event, every class member is seeking identical relief in *this* case:  The invalidation of a Rule rendering them ineligible for asylum.  *See Ramirez*, 338 F. Supp. 3d at 49 (certifying class where, "as a matter of course, Defendants fail to afford *any* members of this group with the consideration due under the statutory provision" at issue (emphasis in original)).  There is no inconsistency, let alone conflict, between their respective interests.

---

[13] Defendants have not briefed and do not appear to have any objection to Plaintiffs' request that the Court appoint as co-counsel for the proposed class the undersigned attorneys at Hogan Lovells US LLP, RAICES, and CAIR Coalition, as well as counsel for Plaintiffs in the Consolidated Case, pursuant to Rule 23(g).

4.     *The proposed class satisfies Rule 23(b)(2).*

For much the same reasons, the proposed class also satisfies Rule 23(b)(2).   The declaratory and injunctive relief Plaintiffs seek would "provide relief to each member of the class," by invalidating a Rule that renders each of them ineligible for asylum.   Defs. Br. 49 (quoting *Wal-Mart*, 564 U.S. at 360).   Defendants observe that this relief would not guarantee that every member of the class will be granted asylum or shielded from removal.   Defs. Br. 49. Once again, that is irrelevant; it is sufficient for purposes of Rule 23(b)(2) that the sought-after relief would remove a barrier to asylum that Defendants have unlawfully placed in front of every class member.   *See supra* pp. 15-17.   Indeed, Defendants themselves appear to concede that Rule 23(b)(2) certification is proper where "all proposed class members would receive the single relief of not being subject to a factor . . . that they had originally been subject to," or where the government has unlawfully "denied" class members an "opportunity."   Defs. Br. 50 (citing *R.I.L-R*, 80 F. Supp. 3d at 180; *Damus*, 313 F. Supp. 3d at 334).   That is exactly what Plaintiffs seek here:   The relief of not being subject to a single dispositive "factor"—unlawful entry on the southern border—as a basis for denying them asylum.

III.    **The Court Should Grant Summary Judgment To The Plaintiff Class.**

On the merits, Defendants make only token efforts to defend the legality of the Rule. None of their arguments justifies the brazen violation of the INA, the APA, and the Trafficking Victims Protection Reauthorization Act ("TVPRA").

A.      **The Rule Violates Section 1158(a)(1).**

As Plaintiffs and the Ninth Circuit have explained, the Rule flatly violates the statutory command that "[a]ny alien" may apply for asylum "whether or not [the alien arrived] at a designated port of arrival."   8 U.S.C. § 1158(a)(1).   Defendants' only response is to repeat their

assertion that they may circumvent this clear text by styling their Rule a restriction on "eligibility" rather than on "ability *to apply* for asylum." Defs. Br. 27 (emphasis in original). For all the reasons Judge Bybee and others have given, that paper-thin distinction is untenable. *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1247-48 (9th Cir. 2018).

Indeed, it is telling that, despite having three months to develop their argument, including in papers before the Supreme Court, Defendants have not attempted to respond to the numerous well-documented flaws in their argument. Defendants have not explained, for instance, why their interpretation does not render the right to apply "a dead letter." TRO Hr'g Tr. 90. Nor have they found any way to square their interpretation with the Refugee Protocol that Section 1158 was enacted to effectuate, which prohibits "penaliz[ing] anybody in the asylum process based on how they entered the United States." *Id.* at 103. That Defendants have still not tried to muster a meaningful defense of their Rule is testament enough that it is impossible to defend.

### B. The Rule Exceeds The Rulemaking Authority Granted By Section 1158(b)(2)(C).

The Rule also exceeds the limits on the Attorney General's rulemaking authority under Section 1158(b)(2)(C). Defendants do not respond to Plaintiffs' argument that the Rule imposes a restriction on asylum that is dramatically different than the statutory restrictions that Section 1158(b)(2)(C) is intended to supplement. S.M.S.R. Mem. of Points & Authorities in Supp. of Pls.' Mot. for TRO and Prelim. Inj. ("S.M.S.R. TRO Mem.") at 21-24, Dkt. 6-1; S.M.S.R. TRO Reply 14-15. And Defendants virtually concede that it constitutes a wholesale delegation of the Attorney General's rulemaking authority under Section 1158(b)(2)(C). S.M.S.R. TRO Mem. 20-21; S.M.S.R. TRO Reply 14. As Defendants admit, the President's power under 8 U.S.C. § 1182(f) is "limited to entry, and does not extend to [the power to] dictate the terms of admission of all aliens unlawfully present in the United States at all stages of their presence

here." Defs. Br. 30. Yet the Rule converts the President's 1182(f) power into just that, by indefinitely tying asylum eligibility to any "proclamation" the President issues under § 1182(f), subject to any "waiver[s]" or "exception[s]" the President chooses. 83 Fed. Reg. at 55952. The Rule thus permits the President to effectively wield the power Congress granted to the Attorney General in Section 1158(b)(2)(C).

Defendants cite *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155 (1993), but *Sale* hurts rather than helps their case. The *Sale* Court explained that a "reference to the Attorney General" in the INA "cannot reasonably be construed to describe . . . the President," and that if the President attempted to exercise power specifically assigned to the Attorney General, he would be "usurp[ing] authority that Congress had delegated to . . . the Attorney General alone." *Id.* at 172-173. The Court found that the interdiction program in that case did not implicate the Attorney General's responsibilities because it operated in a different sphere: The Attorney General's powers at issue were limited to "strictly domestic procedures," while the President's interdiction program operated "extraterritorial[ly]." *Id.* Here, in contrast, the President is exercising *precisely* the same power that Congress granted to the Attorney General; indeed, the Rule explicitly predicates the exercise of one power on the other. *See* 83 Fed. Reg. at 55,952.

Defendants also suggest that the President's ability to usurp the Attorney General's authority is not "unbounded" because it must be tied to "matters concerning entry." Defs. Br. 30. That is cold comfort. The President's power over entry is "sweeping" and "comprehensive," *Trump v. Hawaii*, 138 S. Ct. 2392, 2408, 2413 (2018), and an alien seeking asylum has always, by definition, entered the United States in some way, 8 U.S.C. § 1158(a). A motivated President could easily find some hook linking a desired asylum restriction with the entry power. In any

event, Congress gave *all* of the power to make rules governing asylum eligibility to the Attorney

General; it is no defense for Defendants to claim the President has only seized *most* of it.

C.      **The Rule Was Improperly Issued Without Notice-And-Comment Procedures.**

The Rule was also issued without complying with the APA's notice-and-comment

procedures. Defendants do not make any meaningful argument that the Rule falls within the

foreign-affairs exception. They simply give selective quotations stating the governing legal

standard, Defs. Br. 33, without addressing the reasons why the Rule fails to satisfy that

standard—namely, that it contains no finding that advance publication would "provoke definitely

undesirable international consequences." *Yassini v. Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir.

1980) (per curiam) (citing S. Rep. No. 79-752, at 13 (1945)); *see* S.M.S.R. TRO Mem. 33-36;

S.M.S.R. TRO Reply 18-19; *East Bay*, 909 F.3d at 1253.[14]

As for the good-cause exception, Defendants acknowledge that an agency has good cause

to dispense with notice and comment only when it "finds" that immediate implementation of a

rule is needed to address a "threat[ ] posing a possible imminent hazard to aircraft, persons, and

property within the United States." Defs. Br. 31 (quoting *Mack Trucks, Inc. v. EPA*, 682 F.3d

87, 93 (D.C. Cir. 2012)). As the D.C. Circuit has held, moreover, such a threat must be

substantiated by "factual findings" in "the [agency] record," not by "unsupported assertion[s]" or

"speculat[ion]." *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706-707 (D.C. Cir. 2014). But

the Rule contains no findings demonstrating that immediate issuance was necessary to prevent an

imminent threat to life or property. *See* S.M.S.R. TRO Mem. 30-33; S.M.S.R. TRO Reply 16-

18. On the contrary, it baldly admits that the agencies "are not in a position" to assess whether

---

[14] The Ninth Circuit held open the possibility that Defendants might be able to demonstrate the missing foreign-affairs link by "expand[ing] the record" and producing "affidavits" in the district court. *East Bay*, 909 F.3d at 1253. But that opportunity has come and gone, and Defendants have not introduced a scrap of evidence providing the link that is missing from the Rule itself.

the Rule would lead to any change in the number of illegal border crossings.  83 Fed. Reg. at

55,948.  Furthermore, the only plausible reason that publication of the Rule would have led to an

increase in crossings is because the agencies have prevented most asylum-seekers from entering

lawfully, by "metering" ports of entry—a self-inflicted problem that Defendants cannot rely on

as a basis for evading the APA's central procedural requirements.  *See Mack Trucks*, 682 F.3d at

94 (good cause cannot be invoked if the relevant party "could have avoided th[e] hardship had it

made different . . . choices").

Defendants do not offer any convincing argument to the contrary.  They compare the

number of "incidents of safety risk" on the border to the number of air fatalities in *Hawaii*

*Helicopter Operators Ass'n v. FAA*, 51 F.3d 212 (9th Cir. 1995).  Defs. Br. 32.  That is an

irrelevant comparison.  The question is not whether there is some risk present in the world, but

whether *immediate publication* of the rule is needed to *prevent* that risk.  *See Hawaii Helicopter*,

51 F.3d at 214 (relying on the agency's well-substantiated finding that "recent accidents . . .

indicate an urgent safety problem that cannot be adequately addressed solely by enforcement of

existing regulations" as a basis for imposing stringent new regulatory requirements on air-tour

operators).  Defendants also observe that Section 1225(b)(1)(A)(iii)(I) permits the Attorney

General to change "at any time" his designation of which recent-border crossers may be

subjected to expedited removal and credible-fear screenings.  Defs. Br. 32.  But the Rule does

not rest on that narrow grant of authority; if anything, the Attorney General has violated Section

1225(b) by denying vast swathes of aliens any right to a meaningful credible-fear screening.  *See*

O.A. Mem. of Points & Authorities in Supp. of Pls.' Mot. for TRO and Prelim. Inj. at 21-22, Dkt.

6; O.A. Reply in Supp. of Mot. for TRO & Prelim. Inj. at 9-10, Dkt. 23.  And as Plaintiffs have

already explained, this Rule is dissimilar to the sole prior immigration rule Defendants cite that invoked the good-cause exception. *See* S.M.S.R. TRO Reply 18.

Defendants' brief is also notable for what it is missing: any argument that the snippet from a newspaper article relied on by the *East Bay* district court provides evidence of good cause. Defendants claim (incorrectly) that the district court was permitted to consider this article, but they do not argue that this double-hearsay characterization of a statement by a human smuggler about a different policy actually "support[s] the reality of the threat." *Sorenson Commc'ns*, 755 F.3d at 706. Nor is there any suggestion that the agencies relied on the newspaper article for that purpose in the Rule itself. This evidence is "simply too scant," *id.* at 707, to alter Judge Bybee's well-reasoned conclusion that the government's claim of good cause is "only speculative." *East Bay*, 909 F.3d at 1253-54.

### D.    The Rule Is Arbitrary And Capricious.

For at least three reasons, the Rule also violates the APA's prohibition on arbitrary and capricious decisionmaking. *See* S.M.S.R. TRO Mem. 25-30; S.M.S.R. TRO Reply 19-22; TRO Hr'g Tr. 84:11-85:23. First, the substance of the asylum restrictions was impermissibly imposed by the President, rather than the agencies; as a result, the agencies have made no justification that the Court can defer to in support of the heart of the policy under challenge. Second, the Rule and the Proclamation together make asylum hinge on a characteristic wholly irrelevant to an alien's fitness for asylum; indeed, they place dispositive weight on a factor Congress expressly made irrelevant. And, third, the agencies have not demonstrated a rational connection between the restrictions imposed and the agencies' ostensible goals of improving efficiency and deterring unlawful entry.

The agencies offer little in response to these arguments but a series of unadorned quotations from the Rule itself.  Defs. Br. 33-35.  Defendants assert that the rule might "dissuad[e] individuals" from attempting to cross the border unlawfully.  *Id.* at 35.  But the Rule itself acknowledges that the agencies have no basis for concluding the Rule will have any effect on border-crossing rates, 83 Fed. Reg. at 55,948, and Defendants' post-hoc attempts to show otherwise are nearly self-refuting.  The fact that an overwhelming number of migrants are "victims of violence" while traveling to the southern border, Defs. Br. 35 (quoting AR 178), is exactly why so many asylum-seekers refuse to wait in dangerous and crime-ridden refugee camps for weeks or months on end until they are metered into ports of entry.  SMF ¶¶ 4-7.  Many asylum-seekers conclude that it is preferable to cross the southern border without authorization, make their presence known to immigration officials, and seek withholding of removal or relief under the Convention Against Torture.  *See* 83 Fed. Reg. 55,949 (acknowledging that aliens "who would assert a credible fear may also have to spend more time waiting for processing in Mexico," but "[s]uch nationals . . . could still obtain statutory withholding of removal or CAT protection if they crossed illegally, which would allow them a safeguard against persecution").  Nothing in the Rule or in Defendants' arguments provides a rational reason for concluding otherwise.

### E.      The Rule Violates The TVPRA.

The Rule also violates the TVPRA.  The Rule would effectively deny unaccompanied alien minors any meaningful interview with an asylum officer, and require that their claims for relief be reviewed in the first instance in adversarial proceedings before an immigration court.  S.M.S.R. TRO Mem. 24-25; S.M.S.R. TRO Reply 15-16.  Defendants assert that children will continue to have an asylum interview, Defs. Br. 36-37, but they do not dispute that the interview

would be rendered a meaningless formality by the fact that the minors' asylum claims would be categorically denied as a result of the Rule.  That is not the scheme Congress designed.  *See* 8 U.S.C. § 1158(b)(3)(C).

## IV.    Declaratory Relief And Injunctive Relief Are Proper.

The proper remedy for Defendants' legal violations is a declaration that the Rule is unlawful and an injunction prohibiting its enforcement against each member of the proposed class.   Mem. 22-24.   Defendants do not dispute that the requirements of the Declaratory Judgment Act are satisfied, nor that declaratory relief is appropriate under the circumstances. They argue, however, that an injunction would be inappropriate.  They are incorrect.

First, Defendants argue that Article III requires that the Court grant relief "no broader than necessary to redress the Plaintiffs' injuries."  Defs. Br. 50.  But it is well-established that when an agency rule is declared invalid, the rule is vacated in its entirety, not merely enjoined as to the individual plaintiff.  *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *see Sullivan v. Zebley*, 493 U.S. 521, 536 n.18 (1990); *Califano*, 442 U.S. at 702 ("the scope of injunctive relief is dictated by the extent of the violation established"); *see also* 5 U.S.C. § 706(2) (authorizing courts to "hold unlawful and set aside agency action[s] . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").   And a class composed of every individual subject to the rule—as this class would be—plainly requires a nationwide injunction to "redress [its] injuries."

Second, Defendants repeat their boilerplate objections to nationwide injunctions in general.   Defs. Br. 51.  As Plaintiffs have explained, those objections are misplaced.   *See* S.M.S.R. TRO Mem. 43-45.  But the Court need not wade into that thicket here.  Even the most ardent opponents of nationwide injunctions—including the Government itself—have previously

agreed that a class action is an appropriate vehicle for seeking injunctive relief that extends beyond the named plaintiffs.  *See* U.S. Br. at 75, *Hawaii*, 138 S. Ct. 2392 (No. 17-965) ("Permitting such global injunctions also undercuts the primary mechanism Congress has authorized to permit broader relief: class actions."); Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 475 (2017) ("Admittedly, there may be cases in which an injunction protecting only the plaintiff proves too narrow.  But in such cases there is an obvious answer: a class action.  Nothing about the analysis here precludes a Rule 23(b)(2) class action."); *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2090 (2017) (Thomas, J., concurring in part and dissenting in part) (objecting to issuance of a global injunction because "[n]o class has been certified").  Indeed, the express function of a Rule 23(b)(2) class is to enable numerous individuals suffering a similar injury to seek injunctive or declaratory relief in a single suit.  Only now, after Plaintiffs have followed the precise route the Government and the Federal Rule lay out, has the Government done an abrupt about-face, claiming that nationwide injunctions are inappropriate here, too.

Third, Defendants argue that Section 1252(e) bars issuance of an injunction.  Defs. Br. 51-52.  Again, that provision does not apply to the S.M.S.R. plaintiffs, who are not challenging the implementation of the expedited removal process or determinations made under that process. *See* 8 U.S.C. § 1252(e)(3)(A).  The Court has full jurisdiction to hear Plaintiffs' claims, certify their class, and enjoin the Government from putting into force this unlawful policy.

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' Memorandum in Support of Summary Judgment and Class Certification, Plaintiffs respectfully request that the Court certify the proposed class, appoint Plaintiffs as class representatives, and appoint the undersigned counsel,

together with counsel in the O.A. case, as attorneys for the class. Plaintiffs also respectfully request that the Court grant summary judgment in favor of Plaintiffs and against Defendants on Counts I, II, III, V, and VIII in Plaintiffs' Amended Complaint, and grant appropriate declaratory and injunctive relief.

Dated: March 18, 2019

Respectfully submitted,

**HOGAN LOVELLS US LLP**

By: /s/ Justin W. Bernick

Manoj Govindaiah
RAICES, INC.
1305 N. Flores Street
San Antonio, TX 78212
Telephone: (210) 222-0964
Facsimile: (210) 212-4856
manoj.govindaiah@raicestexas.org

*Counsel for Plaintiff Refugee and Immigrant Center for Education and Legal Services, Inc.*

Adina Appelbaum* (Bar No. 1026331)
CAPITAL AREA IMMIGRANTS'
RIGHTS COALITION
1612 K Street NW, Suite 204
Washington, DC 20006
Telephone: (202) 899-1412
Facsimile: (202) 331-3341
adina@caircoalition.com

*\*Admitted pro hac vice*

*Counsel for Plaintiff Capital Area Immigrants' Rights Coalition*

Neal K. Katyal (Bar No. 462071)
T. Clark Weymouth (Bar No. 391833)
Craig A. Hoover (Bar No. 386918)
Justin W. Bernick (Bar No. 988245)
Zachary W. H. Best (Bar No. 1003717)
Mitchell P. Reich (Bar No. 1044671)
Elizabeth Hagerty (Bar No. 1022774)
Kaitlin Welborn (Bar. No. 88187724)
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com
t.weymouth@hoganlovells.com
craig.hoover@hoganlovells.com
justin.bernick@hoganlovells.com
zachary.best@hoganlovells.com
mitchell.reich@hoganlovells.com
elizabeth.hagerty@hoganlovells.com
kaitlin.welborn@hoganlovells.com

Thomas P. Schmidt*
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-5547
Facsimile: (212) 918-3100
thomas.schmidt@hoganlovells.com

*\*Admitted pro hac vice*

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

S.M.S.R., *et al.*,

     Plaintiffs,

    v.

Donald J. Trump, *et al.*,

     Defendants.

Civil Action No. 18-2838-RDM

[Consolidated with Civil Action No. 18-2718-RDM]

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that, on March 18, 2019, I electronically filed Plaintiffs' Reply in Support of Summary Judgment and Class Certification, and Opposition to Defendants' Cross-Motion for Summary Judgment, with the Clerk of the Court for the U.S. District Court for the District of Columbia using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

Date: March 18, 2019

      /s/ Justin W. Bernick
      Justin W. Bernick (Bar No. 988245)
      HOGAN LOVELLS US LLP
      555 Thirteenth Street, NW
      Washington, DC 20004
      Telephone: (202) 637-5600
      Facsimile: (202) 637-5910
      justin.bernick@hoganlovells.com

      *Attorney for Plaintiffs*