**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| O.A., *et al.*, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Civil Action No. 1:18-cv-2718-RDM |
| v. | [Consolidated with Civil Action No. 18-cv-2838-RDM] |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
CLASS CERTIFICATION AND OPPOSITION
<u>TO CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

I.      The Rule is Unlawful. ...........................................................................................1

        A.      The Rule Flagrantly Defies the Will of Congress......................................1

        B.      The Rule Also Unlawfully Eliminates Important Statutory Procedural
                Protections..................................................................................................4

        C.      The Rule Was Improperly Issued Without Notice and Time for Comment. ...........6

II.     Plaintiffs' Claims Are Justiciable. .......................................................................7

        A.      This Court Has Jurisdiction to Hear Plaintiffs' Claims Under Either 28
                U.S.C. § 1331 or 8 U.S.C. § 1252(e)(3)....................................................7

        B.      Plaintiffs Have Article III Standing. .......................................................14

III.    The Court Should Certify the Proposed Class. ...................................................15

        A.      This Court Has Jurisdiction to Certify the Proposed Class......................16

        B.      Venue Is Proper in This Court. ................................................................17

        C.      The Proposed Class Satisfies the Rule 23(a) and 23(b)(2) Requirements
                for Class Certification. ............................................................................18

IV.     Plaintiffs Are Entitled to Summary Judgment and Nationwide Relief..............24

CONCLUSION...............................................................................................................26

## **TABLE OF AUTHORITIES**

### **CASES**

*ABA v. FTC*, 636 F.3d 641 (D.C. Cir. 2011)................................................................14

*Abdulla v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013).................................21

*Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*,
  510 F.3d 1 (1st Cir. 2007)....................................................................9, 10, 11, 16

*Akram v. Holder*, 721 F.3d 853 (7th Cir. 2013)............................................................2

*American Immigration Lawyers Association v. Reno (AILA)*, 199 F.3d 1352 (D.C.
  Cir. 2000) .............................................................................................................13

*Arizona v. United States*, 567 U.S. 387 (2012)...........................................................26

*Billeke-Tolosa v. Ashcroft*, 385 F.3d 708 (6th Cir. 2004)...........................................11

*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) ......................9

*Brewer v. Lynch*, 2015 WL 13604257 (D.D.C. Sept. 30, 2015)...................................20

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...............................................................18

*Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107 (S.D. Cal. 2018) .......................10

*Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018)..........................................23, 24

*Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011) (per curiam) ..........................8, 10

*E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018) ...........6

*E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018)................2, 3, 13

*Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317 (11th Cir. 2001) .................................3

*Grace v. Whitaker*, 2019 WL 329572 (D.D.C. Jan. 25, 2019) .........................6, 17, 25

*Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018).......................................... passim

*Hamama v. Aducci*, 912 F.3d 869 (6th Cir. 2018).......................................................17

*Harmon v. Thornburgh*, 878 F.2d 484, (D.C. Cir. 1989) ............................................25

*Hoyte v. District of Columbia*, 325 F.R.D. 486 (D.D.C. 2017) ...................................19

*INS v. St. Cyr*, 533 U.S. 289 (2001) ........................................................................................8

*J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016) ......................................................9, 10, 12, 16

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (opinion of Alito, J.) ..................................... passim

*Martinez v. Napolitano*, 704 F.3d 620 (9th Cir. 2012) ................................................................10

*Matter of G-*, 20 I. & N. Dec. 764 (BIA 1993) ............................................................................3

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1988) ...................25

*NLRB v. Express Pub. Co.*, 312 U.S. 426 (1941) .......................................................................14

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ..............................................................21

*Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1 (D.D.C. 2018) ...........19, 23, 24

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018) ........................................................................................................................8

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) .........................17

*Singh v. Gonzales*, 499 F.3d 969 (9th Cir.2007) .........................................................................8

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ................................................................................25

*Twelve John Does v. District of Columbia*, 117 F.3d 571 (D.C. Cir. 1997) ...............................22

*United States v. Mendoza*, 464 U.S. 154 (1984) ......................................................................18

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953) .............................................................14

*Vetcher v. Sessions*, 316 F. Supp. 3d 70 (D.D.C. 2018) ........................................................9, 10

*Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515 (1937) ..........................................................26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..............................................................24

*Zhang v. U.S. Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32 (D.D.C. 2018) ........................................................................................................................20, 22

## CONSTITUTIONAL PROVISIONS, STATUTES
## LEGISLATIVE MATERIALS, AND REGULATIONS

8 C.F.R. § 208.16(a)........................................................................................................4

5 U.S.C. § 553(b) .................................................................................................................6

5 U.S.C. § 553(b)(B) .............................................................................................................7

5 U.S.C. § 706 .....................................................................................................................18

8 U.S.C. § 1158 ...................................................................................................................17

8 U.S.C. § 1158(a)(1) .....................................................................................................1, 2, 20

8 U.S.C. § 1158(b)(2)(A) ......................................................................................................2

8 U.S.C. § 1158(b)(2)(C) ................................................................................................1, 2, 3

8 U.S.C. § 1158(b)(3)(C) ......................................................................................................4

8 U.S.C. § 1182(f) ............................................................................................................3, 4

8 U.S.C. § 1225(b)(1)(B)(i) ..................................................................................................5

8 U.S.C. § 1225(b)(1)(B)-(D) ..............................................................................................6

8 U.S.C. § 1252 ..................................................................................................................12

8 U.S.C. § 1252(a)(1) .......................................................................................................8, 9

8 U.S.C. § 1252(a)(5) .......................................................................................................7, 8

8 U.S.C. § 1252(e)(1) ..........................................................................................................16

8 U.S.C. § 1252(e)(3) ................................................................................................... passim

8 U.S.C. § 1252(b)(9) .................................................................................................. passim

8 U.S.C. § 1252(f) ...............................................................................................................17

28 U.S.C. § 1331 ........................................................................................................7, 16, 18

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ......................................................................................19

Federal Rule of Civil Procedure 23(a) .................................................................15, 16, 18, 21

Federal Rule of Civil Procedure 23(b)(2) ...................................................................... passim

## INTRODUCTION

The hastily promulgated Rule eviscerates the right of refugees to seek asylum in the United States irrespective of manner of entry—a right established by international law and enacted by Congress in the Immigration & Nationality Act ("INA").  There is no ambiguity on this point. None.  Pursuant to the INA, manner of entry cannot eliminate asylum eligibility.  The President and his Cabinet nonetheless promulgated a Rule that directly contravenes Congress's directive. Plaintiffs, all of whom are refugees to whom the Rule applies, face a categorical bar on asylum eligibility as a result.  There can be no other conclusion than that the Rule is unlawful, and that Plaintiffs are entitled to seek justice in this Court both on their own behalf and on behalf of others like them.

Opposing Plaintiffs' motion for summary judgment, the Government has again offered three arguments:  (1) the Rule is lawful; (2) even if the Rule is unlawful, Plaintiffs may not challenge it; and (3) even if Plaintiffs may challenge the unlawful Rule, they may obtain relief only for themselves, and the Government may then go on applying the unlawful rule to untold thousands of refugees.  Each argument is wrong.  The Court should certify Plaintiffs' proposed class, grant summary judgment in Plaintiffs' favor, and permanently enjoin the Rule.

## I.       The Rule is Unlawful.

### A.        The Rule Flagrantly Defies the Will of Congress.

The INA is clear:  noncitizens who enter into the United States are entitled to seek asylum regardless of their manner of entry.  8 U.S.C. § 1158(a)(1).  Conditions and limitations on asylum eligibility may be imposed, but only when they are consistent with the statute and implemented through formal administrative rulemaking.  *Id.* § 1158(b)(2)(C).  The Government contends that the Rule—which mandates automatic denial of asylum to certain refugees based solely on their manner of entry, and which conveys to the President the authority unilaterally to impose further

unspecified limitations on asylum eligibility in the future—is lawful.  The Government is wrong, and the Court should accordingly enter summary judgment for Plaintiffs.

*First*, the Government argues the Rule is consistent with § 1158(a)(1) because the statute prohibits only barring immigrants from *applying* for asylum based on their manner of entry, while saying nothing about the Government's right to bar them from *receiving* asylum on that basis.  *See* Gov't Cross-Mot. for Summ. J. (hereinafter "Opp.") 27.  But to turn the very criterion that Congress instructed may not be used to prohibit applying for asylum into a means of automatically denying it is to defy Congress's directive.  As the Ninth Circuit has recognized, "[i]t is the hollowest of rights that an alien must be allowed to apply for asylum regardless of whether she arrived through a port of entry if another rule makes her categorically ineligible for asylum based on precisely that fact."  *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1247 (9th Cir. 2018).

*Second*, according to the Government, the Rule passes muster because it resembles other broad ineligibility provisions established by Congress, making it an "additional limitation[] [or] condition[]" that is consistent with the INA under 8 U.S.C. § 1158(b)(2)(C).  *See* Opp. 27-28 ("The rule merely adds an additional bar that operates the same way [as others], as Congress expressly authorized.").  But the categorical bar enacted by the Rule does not actually resemble the eligibility provisions in the INA at all.  Those statutory bars do not purport categorically to eliminate asylum eligibility on a basis that Congress has expressly forbidden using as a ground for barring immigrants from applying for asylum.  *See* 8 U.S.C. § 1158(b)(2)(A).  The Rule, by contrast, impermissibly imposes a categorical bar on a basis that Congress explicitly identified as one that cannot determine an immigrant's right to seek asylum.  That asylum is discretionary, *see* Opp. 27, is no rejoinder.  The discretion afforded under the statute does not extend to creating rules that contradict the statute.  *See Akram v. Holder*, 721 F.3d 853, 865 (7th Cir. 2013) ("Congress vested

the Attorney General with the discretion to adjust an alien's status.  That discretion does not include the right to deny adjustment based on a rule that is contrary to the will of Congress." (citation omitted)).

*Third*, by directing that future categorical eligibility bars will apply to whomever the President chooses, the Rule overrides Congress's decision to require that additional limitations and conditions on asylum eligibility be established "by regulation."   8 U.S.C. § 1158(b)(2)(C). Section 1158(b)(2)(C) does not, as the Government suggests, bestow upon the Attorney General the right to abdicate rulemaking authority to the President to determine by executive fiat who will be eligible for asylum.  Rather, Congress has expressly required that new eligibility requirements be created by way of administrative rulemaking, which carries with it procedural safeguards such as notice and comment.

The Government spills substantial ink arguing that the Rule comports with the INA and legislative intent because the President has broad authority under § 1182(f) to deny entry into the United States to whomever he chooses.  *See* Opp. 29-30.  But, as Plaintiffs have explained in previous briefing, *see* Plaintiffs' Reply in Supp. of Mot. for TRO ("TRO Reply"), dkt. 23, 18, § 1182(f) only gives the President authority to restrict *entry*, an act that is accomplished the moment a person crosses the border.  *See E. Bay*, 909 F.3d at 1250 ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission and those who are within the United States after an entry, irrespective of its legality." (citations and quotation marks omitted)); *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1321-22 (11th Cir. 2001); *Matter of G-*, 20 I. & N. Dec. 764, 768-69 (BIA 1993).  It does not give the President the authority unilaterally to establish bars on asylum.  *See E. Bay*, 909 F.3d at 1249 (holding that the Rule "is not an exercise of the President's authority under § 1182(f) because it does not concern

3

the *suspension* of entry or otherwise 'impose on the entry of aliens . . . restrictions'" (quoting 8 U.S.C. § 1182(f))).

Congress expressed its intent through the plain text of the INA:  Limitations and conditions on asylum eligibility that are not written into the statute may be established only by regulation and must be consistent with the statute, including its clear instruction that an immigrant's manner of entering the United States cannot determine eligibility for asylum.  The Rule violates the law, and must therefore be set aside.

**B.      The Rule Also Unlawfully Eliminates Important Statutory Procedural Protections.**

**1.      The Rule Illegally Renders the TVPRA's Guarantee of an Interview With an Asylum Officer a Hollow Right.**

The Government continues to argue that the TVPRA's protections of unaccompanied minors are left intact by the Rule.  *See* Opp. 36-37.  Not so.  Under the TVPRA, unaccompanied minors are entitled to a non-adversarial interview with an Asylum Officer.  8 U.S.C. § 1158(b)(3)(C).  Prior to the Rule, such children could receive asylum as a result of those interviews regardless of how they arrived in the United States.  But the Rule strips Asylum Officers of their authority to grant relief to children who cross the southern border outside of ports of entry, changing the initial interview from a real opportunity to obtain asylum into a farce.  As the Government has never disputed, under the Rule, Asylum Officers can no longer grant unaccompanied minors like G.Z. asylum.[1]  The Government's insistence that this is the "same process" as was followed before the Rule, Opp. 37, flies in the face of this reality.[2]  This critical

---

[1] Notably, Asylum Officers cannot grant withholding of removal, *see* 8 C.F.R. § 208.16(a), so no other relief is available in these interviews.

[2] The Government's assertion that unaccompanied minors are still permitted to seek asylum from an Asylum Officer, *see* Opp. 37, also directly contradicts the Government's claim earlier in its

procedural protection specifically intended by Congress to protect vulnerable children, *see* Mot. for Summ. J. (hereinafter "Mot.") 15, has been rendered a hollow right.

> **2.      The Rule Illegally Strips Immigrants in Expedited Removal of Statutory Procedural Protections.**

The Government cannot and does not dispute that refugees who are subject to the Rule are categorically prohibited from passing credible fear interviews, which will prevent such immigrants in expedited removal proceedings from being moved into ordinary removal proceedings.  Opp. 28. Instead, the Government contends that creating such a categorical bar is permissible.  *Id.*  But this violates the procedural requirements of 8 U.S.C. § 1225(b)(1)(B)(i), which requires that immigrants in expedited removal be given credible fear interviews with Asylum Officers.  As with the TVPRA, the Government's argument is that a pro forma interview with no possibility of relief due to a categorical bar imposed by the executive branch meets the statutory requirement for an interview.  As Judge Sullivan has now—twice—held in *Grace v. Whitaker*, the Government's argument is wrong.

As Plaintiffs explained in their opening brief, Judge Sullivan held in December that the executive branch creating categorical bars that strip Asylum Officers of discretion to move immigrants into ordinary removal proceedings is contrary to the INA, which requires "credible fear determinations . . . be resolved based on the particular facts and circumstances of each case." *Grace v. Whitaker*, 344 F. Supp. 3d 96, 126 (D.D.C. 2018).  In denying the Government's motion for reconsideration and a stay pending appeal, Judge Sullivan further explained in January: "[a]gain, it is the will of Congress—not the whims of the executive—that determines the standard

---

brief that *none* of the Plaintiffs—including unaccompanied minor G.Z.—are permitted to "'affirmatively' apply for asylum outside [of removal] proceedings," Opp. 12.

for expedited removal." *Grace v. Whitaker*, 2019 WL 329572, at *3 (D.D.C. Jan. 25, 2019).  The logic of *Grace* applies equally here.[3]

### C.    The Rule Was Improperly Issued Without Notice and Time for Comment.

The parties have already briefed at length the issue of whether the Rule violates the APA's procedural requirements, and Plaintiffs will not reiterate in full the reasons why neither the good cause exception nor the foreign affairs exception applies here.  *See* Plaintiffs' of Mot. for TRO ("TRO Mot."), dkt. 6, 37-39; TRO Reply 18-23.  The Government's most recent filing adds one new element in support of their contention that notice and comment rulemaking could be done away with.  *See* Opp. 33.  As the Government points out, a news article led the Northern District of California to conclude—at the preliminary injunction stage—that the Government was likely to prevail on the good cause exception.  *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1115 (N.D. Cal. 2018).  But notwithstanding this ruling, there are serious flaws with the Government's argument.

First, as the *S.M.S.R.* Plaintiffs' summary judgment brief points out, dkt. 52-1 at 21 (citing 5 U.S.C. § 553(b)), the APA requires that findings that support invoking the good cause exception be incorporated into the Rule itself.  To be sure, the news article is in the administrative record.  But it was not incorporated into the Rule, as is required under the plain text of the statute:  "when the agency for good cause finds (*and incorporates the finding and a brief statement of reasons therefor in the rules issued*) that notice and public procedure thereon are impracticable,

---

[3] Access to a meaningful credible fear interview matters.  Under the Rule, refugees are subject to the higher burden applicable in a "reasonable fear" interview and may then seek withholding of removal only.  For anyone who cannot meet that higher standard, the opportunity to appear before a judge disappears entirely.  *See* 8 U.S.C. § 1225(b)(1)(B)-(D).

unnecessary, or contrary to the public interest," notice and hearing are not required (unless otherwise required by statute).  5 U.S.C. § 553(b)(B) (emphasis added).

Second, and more importantly, the news article does not support the Government's argument.  Rather, it asserts that some smugglers told "potential customers" to "hurry up" to cross the border with their families in case the Government resumed separating children from their parents.  AR 391.  This statement is, at best, weak evidence that the threat of a possible change in family separation practices—perhaps months or years in the future—might change migration patterns.  It does not support the proposition that the Rule would have immediately changed migrant behavior *during the brief notice and comment period* before the Rule became effective, triggering a race to the border to beat the regulatory clock.  And, as Plaintiffs argued in earlier briefing, *see* TRO Reply 18-23, there are good reasons to be skeptical of this proposition.  For one thing, the Rule is an entirely different sort of regulation.  While being detained separate from one's children with the threat of never recovering them might deter even the most desperate refugee and encourage crossing before such a policy change occurred, the Government has offered no evidence that eliminating asylum will have a similar deterrent effect, particularly when other (albeit more limited) forms of relief are still available, such as withholding of removal and relief under the Convention Against Torture.

## II.     Plaintiffs' Claims Are Justiciable.

### A.     This Court Has Jurisdiction to Hear Plaintiffs' Claims Under Either 28 U.S.C. § 1331 or 8 U.S.C. § 1252(e)(3).

#### 1.     This Court Has Jurisdiction Under 28 U.S.C. § 1331.

The Government does not dispute that Plaintiffs' claims present federal questions under 28 U.S.C. § 1331.  Instead, the Government argues that this Court lacks jurisdiction because of the jurisdictional channeling provisions of 8 U.S.C. §§ 1252(a)(5) and (b)(9).  In making this

argument, however, the Government fundamentally misconstrues the standard that those provisions impose.

As to Section 1252(a)(5):  This provision applies only to "judicial review of an order of removal."  The Government does not and could not contend that such an order has been issued in any Plaintiff's case.  Section 1252(a)(5) does not apply here by its plain terms.

As to Section 1252(b)(9):  The Supreme Court has made clear that § 1252(b)(9) "applies only '[w]ith respect to review of an order of removal under subsection [1252](a)(1).'"  *INS v. St. Cyr*, 533 U.S. 289, 313 (2001) (first alteration in original); *see also Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 n.19 (9th Cir. 2018) (explaining that channeling under § 1252(b)(9) "applies only to those claims seeking judicial review of orders of removal").  Plaintiffs' claims in this case do not challenge a removal order or a subsequent application for admission.  *See Delgado v. Quarantillo*, 643 F.3d 52, 54-55 (2d Cir. 2011) (per curiam) (challenge to subsequent application for admission).  Thus, Plaintiffs' claims are "independent of challenges to removal orders," *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) (emphasis omitted), and they are not barred by § 1252(b)(9).

The Government takes a different view.  It contends that § 1252(b)(9)'s reference to claims "arising from any action taken or proceeding brought to remove an alien" requires that if a claim could be brought in removal proceedings "it must be brought there, because it arises out of removal proceedings."  Opp. 21; *see also id.* ("Thus, the fact that a claim *could* be raised [in removal] is, in fact, determinative.").  That is not the law.  In fact, the Supreme Court rejected a similarly "extreme" interpretation of § 1252(b)(9) in *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018) (opinion of Alito, J.).  There, the Court considered whether § 1252(b)(9) deprived the Court of jurisdiction to consider a challenge filed by noncitizens to their detention pending removal

proceedings.  In the controlling plurality opinion, Justice Alito determined that the noncitizens'

claim did not "arise from" a removal proceeding despite the fact that "the aliens would not be in

custody at all" if actions to remove them had never been taken.  *Id.*  "The question," Justice Alito

explained, "is not whether *detention* is an action taken to remove an alien but whether *the legal*

*questions* in this case arise from such an action."  *Id.* at 841 n.3; *see also id.* at 876 (Breyer, J.,

dissenting) (concluding that jurisdiction was unaffected by § 1252(b)(9) because "by its terms

[§ 1252(b)(9)] applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1)]'"

(second and third alterations in original)).

Justice Alito emphasized that adopting the expansive interpretation of § 1252(b)(9) urged

by the Government there would lead to "staggering results," like requiring a detained noncitizen

who wished to challenge the conditions of her confinement under *Bivens v. Six Unknown Federal*

*Narcotics Agents*, 403 U.S. 388 (1971), or to file a state-law assault claim against a guard, first to

bring those claims in removal proceedings.  *Jennings*, 138 S. Ct. at 840 (opinion of Alito, J.).  "But

cramming judicial review of those questions into the review of final removal orders would be

absurd."  *Id.*  Likewise, here, there is no basis for finding that Plaintiffs are required to challenge

the underlying legality of the Rule within the confines of a removal proceeding.  The challenged

Rule bars affected individuals from obtaining asylum in *any* posture—regardless of whether those

individuals are in removal proceedings or not—based on conduct (crossing the border) that

likewise does not "arise from" removal proceedings or any order of removal.

The Government acknowledges *Jennings* only once in passing, choosing instead to quote

at length the decisions in *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), *Aguilar v. U.S.*

*Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1 (1st Cir. 2007), and

*Vetcher v. Sessions*, 316 F. Supp. 3d 70, 77 (D.D.C. 2018).  *See* Opp. 20-21.  To begin with,

*J.E.F.M.* and *Aguilar* both pre-date *Jennings* and its express rejection of the same "expansive" interpretation of § 1252(b)(9) that the Government is advocating here. *See Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107, 1114 (S.D. Cal. 2018) (concluding, on motion for reconsideration, that *J.E.F.M.* "may treat Section 1252(b)(9) too broadly" in light of *Jennings* and finding jurisdiction over non-citizen's Fifth Amendment claim). Moreover, those cases do not support the Government's position. In each of the cases Defendants cite, the plaintiffs sought to challenge either a removal order or aspects of the fairness of their removal proceedings. The plaintiffs in *J.E.F.M.*, for example, were in removal proceedings and asserted that they had been denied the right to counsel in those proceedings; the court concluded that the plaintiffs' claim was not independent of removal proceedings because "[r]ight-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals." *J.E.F.M.*, 837 F.3d at 1033. The claims in the other cases cited by the Government are also significantly different from the ones presented here, which seek to challenge a change to asylum law that did not arise from removal proceedings and does not relate either to the procedural protections available in removal proceedings or to the ultimate merits of any Plaintiff's asylum claim. *See Aguilar*, 510 F.3d at 13 (asserting right-to-counsel claim); *Delgado*, 643 F.3d at 54 (attempting to challenge an order of removal via mandamus proceedings); *Martinez v. Napolitano*, 704 F.3d 620, 622-23 (9th Cir. 2012) (same); *Vetcher*, 316 F. Supp. 3d at 75 (pro se litigant seeking access to an adequate law library to defend against removal).

Indeed, the decision in *Aguilar* supports Plaintiffs' claim in many respects. *Aguilar* recognized that Congress did not mean to apply § 1252(b)(9) to claims "independent of removal" (like those at issue here), and further noted that such exceptions to the limits on § 1252(b)(9) need not be limited "to those related to detention." *Aguilar*, 510 F. 3d at 11 (citing H.R. Rep. No. 109-

72, at 175 (2005)).  *Aguilar* further recognized that claims that "cannot be raised efficaciously within the administrative proceedings delineated in the INA" are not subject to § 1252(b)(9).  *Id.* That rationale should guide this Court.  Immigration judges and the Board of Immigration Appeals have no authority to issue decisions that are in contravention of the regulations that bind the Agency, even where those regulations are invalid.  *See, e.g.*, *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004) ("[I]t is an elemental principal of administrative law that agencies are bound to follow their own regulations.").  Even under *Aguilar*, the Plaintiffs in this case are properly before this Court because they cannot effectively challenge the Rule via administrative proceedings.

The Government further argues that any decision by the Court in this case "would necessarily entail reviewing the merits of Plaintiffs' claims for relief from removal," and thus Plaintiffs' claims are "inextricably intertwined" with removal proceedings.  Opp. 18.  Not so. Plaintiffs are not putting the merits of their asylum claims before the Court—the Court is not being asked to decide whether the Plaintiffs' asylum claims should be granted or to wade into the underlying facts of those claims.  Rather, Plaintiffs ask the Court to invalidate a systemic change to asylum eligibility that applies to all refugees seeking asylum, whether as an affirmative claim, in ordinary removal proceedings, or in expedited removal.[4]  Thus, Plaintiffs' claims regarding the Rule's lawfulness can and do exist independently of whether any removal proceedings against them have been initiated.  Again, *Jennings* is instructive.  Justice Alito cautioned that "when confronted with capacious phrases like arising from," the Court has "eschewed uncritical literalism leading to results that no sensible person could have intended."  *Jennings*, 138 S. Ct. at 840

---

[4] Indeed, unaccompanied minor Plaintiff G.Z.'s asylum claim is being pursued via an interview with an Asylum Officer pursuant to the TVPRA.  Similarly, Plaintiff A.V.'s claim will initially be raised via an interview with an Asylum Officer as part of the expedited removal process.

(opinion of Alito, J.).  Similarly, even if the "inextricably intertwined" standard from *J.E.F.M.* were to apply in this case—and it does not, for reasons explained above—adopting the sweeping version of that test advocated by the Government would produce unreasonable and unjust results. The Court should decline the Government's invitation to error.

### 2.    This Court Has Jurisdiction Under 8 U.S.C. § 1252(e)(3).

Even if the Court questioned whether the jurisdiction channeling provisions of § 1252 might apply here, the Court in any event has jurisdiction over Plaintiff A.V.'s claims under 8 U.S.C. § 1252(e)(3).[5]  That section provides for judicial review in this Court of "determinations under [the expedited removal statute] and its implementation," where the plaintiff challenges "(i) whether such section, or any regulation issued to implement such section, is constitutional," or "(ii) whether such a regulation . . . is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."  8 U.S.C. § 1252(e)(3).  Whether the Rule is "consistent with applicable provisions" of the INA "or is otherwise in violation of the law" is precisely one of the questions Plaintiffs have asked this Court to answer, and thus falls directly within the plain language of this jurisdictional provision.

Plaintiff A.V. is in expedited removal and the Court can hear her claims under § 1252(e)(3). As Plaintiffs explained in their opening brief, Mot. 11, the Government has conceded that A.V. is in expedited removal proceedings and so "is subject to 8 U.S.C. § 1252(e)(3)," dkt. 36 at 1.  The Government now argues that its concession "did not suggest that jurisdiction is proper under section 1252(e)(3)" and instead merely acknowledged that A.V.'s "only possible avenue to *seek* judicial review in this Court is under section 1252(e)(3).  Whether she may *obtain* review under

---

[5] While Plaintiffs do not agree that any aspect of § 1252 applies as their claims challenge a global change to asylum eligibility rather than challenging removal determinations, if the Government were correct that the case falls within the scope of § 1252, § 1252(e)(3) would clearly apply.

that Section is a separate question."  Opp. 13.  The statutory language provides no basis for this sort of formalistic distinction between seeking and obtaining relief, and what the Government is really arguing, then, is that § 1252(e)(3) deliberately offers Plaintiffs like A.V. only the hollowest of rights.  *Cf. E. Bay*, 909 F.3d at 1247 (rejecting the suggestion that a statute would offer hollow rights).

Indeed, the Government offers no response to the fundamental problem posed by its view of § 1252(e)(3):  that a Plaintiff like A.V., who is in expedited removal proceedings but who does not yet face application of the Rule due to the pendency of a criminal proceeding, could *never* bring the sort of challenge at issue here, because the 60-day clock for bringing such claims would expire before the Rule results in the denial of her asylum claim.  *See* Opp. 15 (arguing that § 1252(e)(3) "does not supply jurisdiction in this case because the only Plaintiff with an expedited removal order . . . has not had that rule applied to her" (emphasis omitted)).[6]

This outcome would be the consequence of the Government's unsupported argument that § 1252(e)(3) can only supply jurisdiction once the challenged Rule has "been applied" to a Plaintiff.  Opp. 14.  There is no support in the statute or the case law for this proposition.  The case that the Governments cites, *American Immigration Lawyers Association v. Reno (AILA)*, 199 F.3d 1352 (D.C. Cir. 2000), has nothing to do with how far along in an expedited removal proceeding a person must be to invoke § 1252(e)(3).  The issue in *AILA* was whether claims under § 1252(e)(3) may be brought by third parties on behalf of persons who are subject to expedited removal*, see id.* at 1363-64, and simply does not address the issue presented here.

---

[6] Even in the absence of a criminal proceeding, the Government could simply run out the clock by delaying resolution of a plaintiff or potential plaintiff's expedited removal proceedings.

**B.**       **Plaintiffs Have Article III Standing.**

The portion of the Government's brief devoted to standing largely reprises the same arguments the Government made in opposing Plaintiffs' motion for a temporary restraining order. Repetition has not improved them.  As Plaintiffs previously explained, the fact that a preliminary injunction was issued in the *East Bay* litigation does not mean that Plaintiffs cannot seek redress to protect their own interests.  *See* TRO Reply 4-6.  To carry their "heavy" burden of establishing that Plaintiffs' claims have been mooted by the *East Bay* injunction, *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953), the Government must show that "there is no reasonable expectation . . . that the alleged violation will recur" and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *ABA v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011).  They have not come close.  The Government's brief not only leaves open the possibility that its unlawful Rule will be enforced against Plaintiffs if the *East Bay* injunction were to be dissolved, it offers a full-throated defense of the Rule on the merits.  Opp. 26-37.  That all but guarantees that, left to its own devices, the Government will enforce the Rule in a way that harms Plaintiffs and asylum seekers like them.  There is accordingly a substantial public interest in ensuring that the legality of the Government's conduct is adjudicated now.  *See NLRB v. Express Pub. Co.*, 312 U.S. 426, 435 (1941) ("A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from defendant's conduct in the past.").

The Government's additional argument that Plaintiffs' claims are not ripe is nothing more than the same old standing argument dressed in new clothes:  the Government contends that Plaintiffs cannot demonstrate imminent injury because "each of the Plaintiffs may be denied asylum on bases other than the Rule and Proclamation, or may be granted asylum or other

protection from removal, as appropriate." Opp. 25.  But Plaintiffs' claims are ripe for the same reason that their claims are not moot—the Government fully intends to apply the Rule to each Plaintiff if given the opportunity, and thus to deprive Plaintiffs of their statutory right to pursue an asylum claim.

### III.     The Court Should Certify the Proposed Class.

The *O.A.* and *S.M.S.R.* Plaintiffs both seek to certify a nationwide class defined as "[a]ll noncitizen asylum-seekers who have entered or will enter the United States through the southern border but outside ports of entry after November 9, 2018." Mot. 15.  After repeating its flawed jurisdictional arguments, Opp. 38, the Government contends venue is improper in the District of Columbia because Plaintiffs' immigration proceedings will not occur here, Opp. 39-40.   But Plaintiffs are not challenging final orders of removal; thus, the Court has jurisdiction and the venue provisions the Government invokes do not apply.  The Government then argues that Plaintiffs' proposed class is not ascertainable because the phrase "asylum-seekers who . . . will enter the United States" includes individuals currently outside the United States.    Opp. 42-44. Ascertainability is not required, but in any event, as membership in the class occurs only *after* an immigrant enters the United States, the class's contours are easy to ascertain.  Mot. 15.  The Government further contends that the proposed class does not satisfy the commonality, typicality, and adequacy requirements of Rule 23(a) and 23(b)(2) because the class members have varying likelihoods of obtaining asylum, so a nationwide injunction will not result in a grant of asylum for every class member.  Opp. 45-49.  But that mischaracterizes the relief sought, which is not classwide asylum, but removing an illegal obstacle to asylum that applies uniformly to all class

members.  In sum, the Government's arguments against class certification are without merit and the Court should certify the proposed class.[7]

### A.  This Court Has Jurisdiction to Certify the Proposed Class.

According to the Government, the jurisdictional provisions of the INA make certifying a nationwide class improper.  *See* Opp. 38-39.  As Plaintiffs have already explained at length, this Court has jurisdiction to hear Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and the APA.  *See supra* 7-12; Mot. 9-15.  The Government attempts to reframe its jurisdictional argument as an argument against class certification, contending § 1252(b)(9) and § 1252(e)(1) strip this Court of jurisdiction to certify Plaintiffs' proposed class.  Opp. 38.  But the Government's argument is as off-base here as it has always been.  Section 1252(b)(9) confines *challenges to final removal orders* to petitions for review, and § 1252(e)(1) prohibits class actions involving such challenges.  This lawsuit, however, does not challenge final orders of removal.  *See Jennings*, 138 S. Ct. at 840 (opinion of Alito, J.).[8]  Rather, this lawsuit challenges an illegal Rule that bars asylum eligibility to all of the named Plaintiffs and the class members they seek to represent, whether those individuals are in the removal process or not.  *See supra* 8-10; *see also* TRO Reply 2-3; Mot. 12-13.  Because § 1252(b)(9) does not apply, § 1252(e)(1) does not strip this Court of jurisdiction to certify a class.

---

[7]  The Government challenges neither Plaintiffs' satisfaction of Rule 23(a)'s numerosity requirement nor the adequacy of proposed class counsel.

[8]  *J.E.F.M.* and *Aguilar*—the two cases upon which the Government relies—are not to the contrary. Opp. 38 (citing *J.E.F.M.*, 837 F.3d at 1043, and *Aguilar*, 510 F.3d at 16).  Those cases do not create standalone jurisdictional limitations on immigration-related class actions; rather, they hold that where § 1252(b)(9) applies, filing a class action does not permit a plaintiff to get around its jurisdictional limitations.  But here, § 1252(b)(9) does not apply in the first instance.

Nor does § 1252(f).  Citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), and *Hamama v. Aducci*, 912 F.3d 869 (6th Cir. 2018), the Government argues that § 1252(f) broadly revokes jurisdiction to grant classwide injunctive relief and places the exclusive authority to do so in the hands of the Supreme Court.  But this argument misreads both the statute and the case law.  Section 1252(f) has nothing at all to do with this case.  It prohibits classwide injunctions "against the operation of §§ 1221-1231," and nothing else.  *Reno*, 525 U.S. at 481; *see Hamama*, 912 F.3d at 877; *Grace*, 344 F. Supp. 3d at 143-44; *Grace*, 2019 WL 329572 at *4.  Section 1252(f) does not bar courts from evaluating the legality of broadly applicable regulations implementing *other* immigration statutes (such as 8 U.S.C. § 1158) and enjoining such regulations if they are contrary to law.[9]  Nothing in *Reno* or *Hamama* suggests otherwise.

**B.      Venue Is Proper in This Court.**

The Government further contends that this Court would overstep its authority if it set aside a regulation that affects people who are subject to removal under the INA because "the proper venue for a petition for review from removal proceedings" is in the circuit court "where the immigration proceedings were held."  Opp. 40.  The Government is correct that if the named Plaintiffs (other than A.V.) were to challenge final orders of removal, they would be required to do so in the court of appeals in the circuit in which they had their immigration hearing.  Opp. 39-40.  But the proper channeling of appeal of a final order of removal is irrelevant—Plaintiffs do not challenge final orders of removal.  Rather, Plaintiffs seek to set aside a rule that applies equally outside the context of removal.  *See supra* 7-10.

---

[9] And as another court in this district recently held, even as to §§ 1221-1231, § 1252(f) "only applies when a party is challenging the legality of a statute, and not when a party argues that the defendant's actions violate the statute."  *Grace*, 2019 WL 329572 at *4.

The Government goes on to suggest that allowing a nationwide class action is not appropriate because it prevents other courts from weighing in on the same issue.  Opp. 40.  But the cases the Government cites in support of this proposition do not, in fact, support it.  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), *upheld* certification of a nationwide class, noting "[n]othing in Rule 23 . . . limits the geographical scope of a class action that is brought in conformity with that Rule."  And *United States v. Mendoza*, 464 U.S. 154, 160 (1984), is not a class action case at all.  Rather, that case addressed "nonmutual collateral estoppel against the Government."  *Id.*

At the end of its venue argument, the Government implies that this Court is insufficiently expert in immigration law to wade into these issues because there are no immigration courts in the District of Columbia.  Opp. 40-41.  This argument too falls flat.  In addition to the general authority granted to this Court under 28 U.S.C. § 1331 and 5 U.S.C. § 706 to review federal questions and final agency actions, Congress has expressly vested this Court with the responsibility to hear challenges to the expedited removal system under 8 U.S.C. § 1252(e)(3).  There can be no doubt that this Court is equally well equipped and properly situated to consider other legal challenges to regulations implementing the INA.

**C.     The Proposed Class Satisfies the Rule 23(a) and 23(b)(2) Requirements for Class Certification.**

The Government offers three arguments against class certification.  First, the Government contends that Plaintiffs' class cannot be certified because it is "overbroad and not ascertainable."  Opp. 42-44.  Second, the Government contends that the class cannot be certified because variations between the class members' and named Plaintiffs' individual likelihoods of obtaining asylum (and the status of their immigration proceedings) undermine the commonality of the issues of fact and law in dispute, the typicality of the named Plaintiffs' claims, and the adequacy of Plaintiffs as class

18

representatives.   Opp. 45-48.   Third, the Government contends that the class fails the single-injunction requirement of Rule 23(b)(2) because not every member of the proposed class will ultimately be granted asylum.   Opp. 48-50.

These arguments misconstrue the class definition and the requirements of Rule 23. Plaintiffs have proposed a class of asylum-seekers who, by definition, are not members of the class until they have entered the United States, and who are uniformly subject to a categorical bar on asylum eligibility established by the Rule.   The merits of their individual asylum claims and their likelihood to be granted asylum by an asylum officer or immigration judge are irrelevant—every named Plaintiff and every class member has suffered this same consequence of the Rule, and striking it down would remove a barrier to obtaining asylum for all of them.   The Plaintiffs' proposed class satisfies Rule 23, and should be certified.

### 1.   Ascertainability Is Not Required and In Any Event Is Easily Satisfied Here.

The Government begins by claiming that Plaintiffs' proposed class is "overbroad and not ascertainable."   Opp. 42.   Applying an ascertainability requirement here, contends the Government, would bar certification because the class encompasses persons who are not in the United States and therefore have not been injured by the Government's actions.   Opp. 42-44.   But this Circuit has never held that ascertainability is a prerequisite to class certification under Rule 23(b)(2).   *See Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1 (D.D.C. 2018) (observing that "it is far from clear that there exists in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification").   Indeed, as another court in this district has noted, ascertainability has been recently disavowed by four federal appellate courts.   *Hoyte v. District of Columbia*, 325 F.R.D. 486, 489 n.3 (D.D.C. 2017) (collecting cases from the Sixth, Seventh, Eighth, and Ninth Circuits).

Even if ascertainability were a prerequisite to certification, the proposed class would easily satisfy it. Ascertainability, after all, "is not designed to be a particularly stringent test." *Brewer v. Lynch*, 2015 WL 13604257, at *5 (D.D.C. Sept. 30, 2015), and is met whenever plaintiffs can establish the general outlines of the class's membership, *see Zhang v. U.S. Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32, 61 (D.D.C. 2018). Plaintiffs have done just that: the proposed class includes all persons who are subject to the illegal Rule's categorical prohibition on asylum eligibility. The proposed class does not, as the Government claims, include a universe of unknown and unidentifiable people who lack any cause of action because they have never set foot on American soil. To the contrary, the class includes only "asylum seekers" who are subject to the Rule, Mot. 15, and such asylum seekers are in the United States, *see* 8 U.S.C. § 1158(a)(1). These objective criteria make it easy to determine who is a member of the proposed class: if an asylum-seeker crosses the southern border outside of a port of entry after November 9, 2018, he or she is a member. This is more than enough to clear the especially low bar of satisfying ascertainability in a Rule 23(b)(2) class action. *See Brewer*, 2015 WL 13604257 at *6 (observing that where Plaintiffs seek certification of a class under Rule 23(b)(2), "actual membership of the class need not be precisely delimited because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class").[10]

---

[10] The Government argues class certification presents due process problems because class members may not re-litigate issues resolved in a class action. Opp. 44-45. But taking the Government's argument to its logical conclusion, no class should ever be certified under Rule 23(b)(2) because it does not allow for opt-outs. That Rule 23(b)(2) exists at all rebuts this argument. Moreover, the many cases Plaintiffs have cited granting certification of immigrant classes reflects that such generalized concerns are no reason to refrain from certifying the proposed class. Mot. 17-20.

2.      **The Proposed Class Satisfies the Commonality, Typicality, and Adequacy Requirements of Rule 23(a).**

The Plaintiffs' proposed class readily satisfies the commonality, typicality, and adequacy requirements of Rule 23(a).  The Rule erects an illegal obstacle to asylum eligibility that uniformly applies to every named Plaintiff and proposed class member, and an injunction against the Rule would remove this obstacle for every member of the class.  Arguing otherwise, the Government observes that every immigrant's asylum case is different and that some asylum seekers will not ultimately be granted asylum even if the Rule is set aside.  Opp. 46-48.  This is true as far as it goes, but it is entirely beside the point.

Commonality "does not . . . mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single *significant* question of law or fact."  *Abdulla v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).  The class's common issue is not whether each of its members should be granted asylum, but rather whether class members should be categorically excluded from eligibility on the basis of their manner of entry.  *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182 (D.D.C. 2015) ("That the exact role [that an] allegedly impermissible factor played in any specific determination is unknowable does not destroy the fact that all (or nearly all) class members were subjected to a determination that included it.").  Named Plaintiffs and class members alike—regardless of the stage of their immigration proceedings and the procedural mechanism through which they are seeking asylum—universally and uniformly face a categorical bar to asylum eligibility that did not exist prior to the Rule's promulgation.[11]  Thus, both commonality and typicality are established.  *See id.*

---

[11] The Government also argues that class members who face the prospect of expedited removal have entirely different claims than class members who will be subject to ordinary removal.  *See* Opp. 46-47.  But Plaintiffs have not sought class certification on A.V.'s challenge under 8 U.S.C.

As to adequacy, the Government contends that the Plaintiffs' claims are fact-specific and that neither the named Plaintiffs nor the class members can receive full relief from this Court. Opp. 48-50.  The Government has not identified any interest of the Plaintiffs which is antagonistic to the class, nor has the Government suggested any reason that the Plaintiffs are unable to vigorously prosecute the interests of the class through qualified counsel.  Opp. 49 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).   Instead, the Government's argument relies on the same flawed premise as its typicality and commonality arguments:  that removing a uniform barrier to asylum that affects all class members cannot be the proper subject of a class action.  That a class action will not resolve the class members' underlying claims for asylum does not mean that the Plaintiffs are inadequate class representatives; they share the same common injury with all class members of being categorically barred from receiving asylum by the illegal Rule.  *See Zhang*, 344 F. Supp. 3d at 64 (finding that plaintiffs met the adequacy requirement because the class members all suffered or would suffer the same injury irrespective of the factual variations that existed between plaintiffs).

### 3.       The Proposed Class Satisfies Rule 23(b)(2).

In its last argument against class certification, the Government contends that the named Plaintiffs and other class members would need "discrete injunctive remedies" based on their individual immigration situations.  Opp. at 49.  This too relies on the mistaken premise that undergirds the Government's entire class certification argument:  that a class action cannot go forward because it will not resolve the class members' asylum claims.  But there is nothing wrong with a class action that seeks to force the Government to follow the law in adjudicating such claims.

---

§ 1252(e)(3), and in any event, the Government offers no explanation for why it believes people in different removal regimes who are subject to the same categorical rule have divergent claims.

The Government has raised the same argument in the immigration context before and repeatedly been rebuffed by other courts in this district.

For example, in *Ramirez*, which challenged the automatic transfer of unaccompanied minors to adult detention facilities upon reaching their eighteenth birthday in violation of a statutory requirement mandating the Government make an individualized custody determination, the Government contended class certification was inappropriate because it would not resolve the ultimate issue of whether the transfer was appropriate as to any class member.  *Ramirez*, 338 F. Supp. 3d at 48.  Judge Contreras rejected the argument, holding that the fact "[t]hat individualized determinations must be made under the statute does not preclude class certification."  *Id.*  Just as in this case, the Plaintiffs in *Ramirez* sought the opportunity to have their claims individually adjudicated in compliance with a statute rather than unlawfully decided based on a classwide, uniform basis, and Judge Contreras certified that class.  *See id.* at 66.

Similarly, in *Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018), the Government argued a putative class of immigrants challenging the Government's refusal to make individualized parole determinations could not be certified because the relief sought would not address the ultimate issue of whether any class member should receive parole.  Judge Boasberg rejected this argument, because the plaintiffs were "not asking for this Court to remedy discrete errors in their parole determinations or to interfere with ICE's discretionary decisionmaking," but instead to "address an alleged systematic harm" that resulted from ICE's failure to comply with a regulation.  *Id.* at 334.  Like the Plaintiffs here, the plaintiffs in *Damus* sought to have a uniform barrier to their claims removed so that they could go on to pursue individual relief, and Judge Boasberg provisionally certified the class as part of a preliminary injunction.  *See id.* at 343.

Like the classes in *Ramirez* and *Damus,* Plaintiffs' proposed class falls well within the requirements of Rule 23(b)(2) because "in one stroke," the remedy Plaintiffs seek—an order declaring the Rule unlawful and permanently enjoining it—will "provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

## IV.   Plaintiffs Are Entitled to Summary Judgment and Nationwide Relief.

The Government contends that if the Court rules for Plaintiffs on the merits, it should deny Plaintiffs' requested injunctive relief and limit any relief to individuals currently subject to expedited removal.  Opp. 50.  In making this argument, however, the Government relies on the same incorrect and overbroad interpretation of § 1252(e)'s jurisdictional provisions discussed above.  *See supra* 7-12.  The Government also insists that under § 1252(e) the Court is limited to making a "determination[]" as to whether the Rule "is not consistent with applicable provisions" of the INA, and cannot issue injunctive relief to enforce that determination because such relief is not "specifically authorized" by the statute.  Opp. 51 (quoting 8 U.S.C. § 1252(e)(3)(C)).  Judge Sullivan recently rejected the same strained reading of § 1252(e) in *Grace*.  As Judge Sullivan explained, "[t]he more natural reading of the provision . . . is that these forms of relief are prohibited except when a plaintiff brings 'any action . . . specifically authorized in a subsequent paragraph.'"  *Grace*, 344 F. Supp. 3d at 142 (second alteration in original) (quoting § 1252(e)(1)(a)).  That includes an action under § 1252(e)(3).  *Id.*  Judge Sullivan noted that under the contrary interpretation advocated by the Government, "there could be no remedy for a successful claim under paragraph 1252(e)(3) because that paragraph does not specifically authorize any remedy.  However, it does not follow that Congress would have explicitly authorized a plaintiff to bring a suit in the United States District Court for the District of Columbia and provided this Court with exclusive jurisdiction to determine the legality of the challenged agency action, but deprived the Court of any authority to provide *any remedy* (because none are

specifically authorized), effectively allowing the unlawful agency action to continue." *Id.* This Court should adopt Judge Sullivan's well-reasoned analysis and conclude that § 1252(e) does not bar the injunctive relief Plaintiffs seek.[12]

Citing Justice Thomas's concurring opinion in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Government further argues that "nationwide" relief barring the Government from enforcing the Rule against any individuals, not just Plaintiffs, would be inappropriate as a matter of jurisprudence. *See* Opp. 51. But there is nothing unusual about a court issuing an injunction that provides Plaintiffs complete relief and also prevents the Government from harming other similarly situated individuals. To the contrary, as the D.C. Circuit has explained, "when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated— not that their application to the individual petitioners is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1988) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)). That approach is consistent with the even longer-

---

[12] The Government also argues that in the event the Court finds § 1252(e) ambiguous, it should adopt the Government's proposed interpretation because it is more consistent with "the overall statutory scheme." Opp. 51-52. There is no ambiguity, for the reasons Judge Sullivan explained in *Grace*. And in any event, the Government over-reads the legislative history on which its "statutory scheme" argument rests. Those statements indicate that courts may not enjoin, other than as to Plaintiffs, "new removal procedures" that are "established by Congress." The challenged procedures in this case were established by the Executive Branch, not Congress. *See Grace*, 2019 WL 329572 at *3 (rejecting same argument and stating that "it is the will of Congress—not the whims of the executive—that determines the standard for expedited removal. And when there is an inconsistency, the latter must accede to the former.").

standing principle that courts **"**may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937).

A broad injunction prohibiting any application of the Rule is particularly appropriate in this case because it concerns the nation's immigration system.  Immigration laws and policies affect the nation's foreign policy and international relations, and both Congress and the courts have accordingly emphasized that immigration law should be interpreted uniformly.  *See, e.g.*, Pub. L. No. 99-603, § 115(1) (instructing that "the immigration laws of the United States should be enforced vigorously and uniformly"); *Arizona v. United States*, 567 U.S. 387, 401 (2012) (immigration law creates "a comprehensive and unified system").  Immigration policies should also be comprehensible to the noncitizens who must follow them.  The limited injunction the Government advocates would undermine these goals and invariably introduce confusion into an area of the law that requires special clarity.

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated:  March 18, 2019                      Respectfully submitted,


                                            /s/Thomas G. Hentoff
                                            Thomas G. Hentoff (D.C. Bar No. 438394)
                                            Ana C. Reyes (D.C. Bar No. 477354)
                                            Ellen E. Oberwetter (D.C. Bar No. 480431)
                                            Mary Beth Hickcox-Howard (D.C. Bar No. 1001313)
                                            Charles L. McCloud[*]
                                            Matthew D. Heins[*]
                                            Vanessa O. Omoroghomwan[*][†]
                                            WILLIAMS & CONNOLLY LLP

---

[*] Pursuant to LCvR 83.2(g).

[†] Practice supervised by D.C. Bar members pursuant to D.C. Court of Appeals Rule 49(c)(8).

725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

Hardy Vieux (D.C. Bar No. 474762)
HUMAN RIGHTS FIRST
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 547-5692
Fax: (202) 553-5999

Eleni Rebecca Bakst[*]
Anwen Hughes[*]
HUMAN RIGHTS FIRST
75 Broad Street, 31st Floor
New York, New York 10004
Tel: (212) 845-5200
Fax: (212) 845-5299

Charles George Roth[*]
Keren Hart Zwick (D.D.C. Bar No. IL0055)
Gianna Borroto[*]
Ruben Loyo[*]
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: (312) 660-1370
Fax: (312) 660-1505

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 18, 2019, I caused to be electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.  Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/Thomas G. Hentoff
Thomas G. Hentoff (D.C. Bar No. 438394)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

O.A., *et al.*, on behalf of themselves and all
others similarly situated,

                     *Plaintiffs*,

    v.

DONALD J. TRUMP, *et al.*,

                    *Defendants*.

Civil Action No. 1:18-cv-2718-RDM

[Consolidated with Civil Action
No. 18-cv-2838-RDM]

## PLAINTIFFS' REPLY CONCERNING STATEMENT OF MATERIAL FACTS

When Plaintiffs submitted their motion for summary judgment, the Government had not yet filed the administrative record in this case. It had, however, made myriad representations to the Court about the status of each individual Plaintiff's immigration proceedings, and offered corresponding arguments as to why the Government believes each Plaintiff's immigration case deprives the Court of jurisdiction, undermines Plaintiffs' standing, or otherwise bars Plaintiffs from seeking judicial recourse against the illegal Rule. *See, e.g.*, Gov't Resp. to Mot. for TRO, dkt. 22, at 11-12, 15 (discussing status of Plaintiffs' immigration cases); Gov't Notice of Filing, dkt. 36 (attaching documents from Plaintiffs' immigration proceedings and raising standing arguments referencing those documents). Given that the Government itself placed before the Court evidence about the Plaintiffs that is not in the administrative record, it can hardly complain about Plaintiffs' Statement of Undisputed Material Facts submitted in conjunction with their motion for summary judgment.

With its cross-motion, the Government has filed a "Response to Plaintiffs' Statement of Material Facts." *See* dkt. 51-1; dkt 66-1. In it, the Government makes no claim that Plaintiffs

have misstated or misrepresented the material facts about the Rule or about each Plaintiff.  Instead, the Government argues that Plaintiffs should not have submitted a Statement of Undisputed Material Facts in the first place, and therefore urges the Court to decline to consider it.  The Government goes further, too:  it asks the Court to consider only the Administrative Record and nothing else when adjudicating the parties' cross-motions for summary judgment and fashioning any resulting remedy.

The problem with the Government's position, of course, is that it ignores the fact that the Government itself has taken positions as to justiciability, class certification, and remedy that rely on facts outside of the Administrative Record.  The Government has argued that many of the Plaintiffs cannot invoke the jurisdiction of this Court because they are in ordinary removal proceedings and must challenge the Rule through a petition for review of a final order of removal; it has argued—inconsistently—that A.V. is in expedited removal but also not in expedited removal and therefore both can and cannot seek relief in this Court; it has argued that variations in Plaintiffs' immigration cases makes them ill-suited to represent the proposed class; and it has argued that broad injunctive relief will not uniformly redress Plaintiffs' injuries based on the unique facts of each of their immigration cases.  The information the Government draws upon to level these challenges exists entirely outside of the Administrative Record.

Local Rule 7(h) provides that no Statement of Material Facts is necessary in "cases in which judicial review is based *solely* on the administrative record."  LCvR 7(h)(2) (emphasis added).  This is not such a case:  Plaintiffs' Statement of Undisputed Material Facts summarizes the relevant facts not included in the Administrative Record, and it does so because those facts are key to resolving the parties' dispute as to justiciability, class certification, and remedy.  The Government does not have any quibble with the facts as described in the Statement of Undisputed

Material Facts, likely because it couldn't—the evidence supporting them is contained in affidavits and official government documents that both parties have submitted and utilized throughout this litigation.  This is reason enough to permit the Court to consider Plaintiffs' contentions about the extra-record facts and the undisputed evidence.  *See Grace v. Whitaker*, 344 F. Supp. 3d 96, 114 (D.D.C. 2018) (finding that extra-record evidence, including plaintiff declarations, could appropriately be considered in an APA case to determine whether immigrants challenging their expedited removal were entitled to injunctive relief).

To the extent the Government argues that the Administrative Record contains everything the Court needs to draw a conclusion about the lawfulness of the Rule, Plaintiffs do not disagree: the Administrative Record speaks for itself and provides all of the information necessary for the Court to find the Rule unlawful and permanently enjoin its operation.  But it is disingenuous to demand that the Court ignore extra-record evidence after relying on that evidence to argue both here and elsewhere that the identities and circumstances of those who challenge the Rule have a significant role to play in determining whether the Rule may be challenged and set aside.  *See, e.g.*, Gov't Resp. to Mot. for TRO, dkt. 22, at 11-12, 15; Gov't Cross-Mot. for Summ. J., dkt. 51 & 66, 4-5 (describing nationality and entry date of each individual Plaintiff); *id.* 9-11 (arguing that posture and status of individual Plaintiffs' immigration cases deprive the Court of jurisdiction); *id.* 48-49 (arguing that Plaintiffs' various particular immigration situations make them improper class representatives); *id.* at 49-51 (claiming that these same variations make injunctive relief inappropriate); *cf. E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1243 (9th Cir. 2018)

(relying on plaintiff declarations in rejecting the Government's argument that organizational plaintiffs lacked standing to bring APA claims challenging the Rule).

Plaintiffs therefore respectfully request that the Court accept their Statement of Undisputed Material Facts, and deny the Government's demand that it be discarded.


Dated:  March 18, 2019                         Respectfully submitted,


/s/Thomas G. Hentoff
Thomas G. Hentoff (D.C. Bar No. 438394)
Ana C. Reyes (D.C. Bar No. 477354)
Ellen E. Oberwetter (D.C. Bar No. 480431)
Mary Beth Hickcox-Howard (D.C. Bar No. 1001313)
Charles L. McCloud[*]
Matthew D. Heins[*]
Vanessa O. Omoroghomwan[*]
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

Hardy Vieux (D.C. Bar No. 474762)
HUMAN RIGHTS FIRST
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 547-5692
Fax: (202) 553-5999

Eleni Rebecca Bakst[*]
Anwen Hughes[*]
HUMAN RIGHTS FIRST
75 Broad Street, 31st Floor
New York, New York 10004
Tel: (212) 845-5200
Fax: (212) 845-5299

Charles George Roth[*]
Keren Hart Zwick (D.D.C. Bar No. IL0055)

---

[*] Pursuant to LCvR 83.2(g).

Gianna Borroto[*]
Ruben Loyo[*]
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: (312) 660-1370
Fax: (312) 660-1505

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2019, I caused to be electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.  Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/Thomas G. Hentoff
Thomas G. Hentoff (D.C. Bar No. 438394)