JOSEPH H. HUNT
*Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
AUGUST E. FLENTJE
*Special Counsel*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
FRANCESCA GENOVA
KATHRYNE M. GRAY
BENTON YORK
Office of Immigration  Litigation
U.S. Department of Justice, Civil  Division
P.O. Box 868, Ben Franklin  Station
Washington,  D.C. 20044
Tel: (202) 598-6073
Email:  thomas.b.york@usdoj.gov
*Trial Attorneys*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O.A., *et al.*,<br><br>        Plaintiffs,  and,<br><br>S.M.S.R., et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>Donald J. Trump,  President of the United States, *et al.*,<br><br>        Defendants. | Civil  Action Nos. 18-cv-2718,  18-cv-2838 |

**Defendants' Reply in Support of Their Cross-Motion for Summary  Judgment**

## INTRODUCTION

This Court should grant summary judgment to Defendants. Nothing in Plaintiffs' reply briefs overcomes the flaws in their claims.

To start, as the government has explained, Plaintiffs' claims are not justiciable. Gov. Br. 9-26. Every individual Plaintiff but A.V. is presently in ongoing removal proceedings under 8 U.S.C. § 1229a and therefore must raise any challenge to the rule in those proceedings. *See* 8 U.S.C. § 1252(b)(9). A.V.'s claims are unripe because the rule has not been and may never be applied to A.V. None of the organizational plaintiffs has a cognizable cause of action, as they are outside the zone of interests of the Immigration and Nationality Act. And all Plaintiffs lack Article III standing because the rule is presently enjoined and Plaintiffs can only speculate whether the rule will ever be applied to any of them.

In response, Plaintiffs assert that the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (Feb. 27, 2018) interprets § 1252(b)(9) to provide this Court jurisdiction. O.A. Br. 7-13; S.M.S.R. Br. 4-8. But the controlling decision in *Jennings* in fact holds that § 1252(b)(9) forecloses district court jurisdiction over, among other things, challenges to "any part of the process by which [an alien's] removability will be determined," *Jennings*, S. Ct. at 841, which is precisely what a challenge to the "process by which" an alien's relief from removal in the form of asylum is. Plaintiffs also assert that § 1252(b)(9) only applies if a final order of removal exists, O.A. Br. 8-12, but only the *Jennings* dissent adopted that view. 138 S. Ct. at 836 (Breyer, J. dissenting). And as the factual record demonstrates, Plaintiffs' rehashed argument that every Plaintiff but A.V. is not in ongoing removal proceedings so that § 1252(b)(9) cannot apply, O.A. Rule 56.1 statement & S.M.S.R. Br. at 5, is simply factually incorrect.

Nor have Plaintiffs demonstrated any basis to grant them summary judgment on any of their claims. Gov. Br. 26-26; PI Br.16-38. The rule is consistent with 8 U.S.C. § 1158(a)(1), which provides a general rule that aliens may *apply* for asylum if on U.S. soil, a separate issue from whether "[t]he Secretary of Homeland Security or the Attorney General may grant asylum to an alien," which is governed by § 1158(b) and authorizes the agencies to establish the rule here. The rule is also consistent with the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) and the statutory provision governing expedited removal, 8 U.S.C. § 1225(b), Gov. Br. 26-29, 36-37, and is not arbitrary and capricious. Gov. Br. 26-37. And, as the District Court for the Northern District of California has already held, the agencies properly promulgated the rule without notice and comment under the APA. *See East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1115 (N.D. Cal. 2018). Plaintiffs offer no new rebuttal to these points, other than to suggest that § 1225(b) by its terms expressly prohibits the government from applying categorical asylum bars in credible fear proceedings. O.A. Br. 5-6. But nothing in the statute—which articulates the standard for demonstrating a credible fear of persecution—says any such thing. *See* 8 U.S.C. § 1225(b)(1)(B)(V).

Finally, Plaintiffs repeat their argument that nationwide relief is appropriate in an APA case and in particular in an immigration case because the law should be applied uniformly across the nation. O.A. Br. 24-25, S.M.S.R. Br. 26-27. But, because Congress has channeled all Plaintiffs' claims through (in the case of all Plaintiffs but A.V.) full removal proceedings or (in the case of A.V.) through § 1252(e)(3), the Court may not issue nationwide injunctive relief. And even if any relief were appropriate, it must be narrowly tailored to remedy the injuries suffered by Plaintiffs over which the Court actually has jurisdiction, and no broader. Even if some aspect of the rule is contrary to the APA, the Court may not issue relief that reaches non-parties not before the Court.

An APA remedy, like any remedy, must be tailored to the harm that creates Article III standing and no broader.

## I.      Section 1252(b)(9) Deprives the Court of Jurisdiction.

As the government has explained, because all but one Plaintiff is in full removal proceedings, this Court lacks jurisdiction over their claims: the statutory review scheme channels their claims, which all relate to removal-related activity, to the administrative immigration courts and ultimately to the federal courts of appeals—district courts lack jurisdiction over those claims. Gov. Br. 15-24. Plaintiffs make two main arguments in response: (1) that a final removal order is required for the jurisdiction-channeling statute to apply, and because no Plaintiff has a final removal order this suit can be maintained in this Court; and (2) that the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), which concerns the content of a Notice to Appear in immigration proceedings, establishes that certain Plaintiffs are not in removal proceedings and so can raise their claims in this Court.[1] O.A. Br. 7-13; S.M.S.R. Br. 4-8. Each argument falls short.

*First*, relying on *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), Plaintiffs argue that § 1252(b)(9) limits judicial review only when an alien is challenging a final removal order, and thus that the provision has no application here because no Plaintiff has been issued a final removal order. O.A. Br. 8-12. They are incorrect. As Judge Boasberg has explained, in a decision issued after *Jennings*, which addressed this statute, §§ 1252(a)(5) and (b)(9) "streamline *all issues* arising from removal proceedings into a petition for review" to be filed with the appropriate court of appeals. *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76 (D.D.C. 2018) (citing *J.E.F.M. v. Lynch*, 837

___

[1] The S.M.S.R. Plaintiffs incorrectly assert that the government failed to argue that section 1252 deprives the Court of jurisdiction over the organizational Plaintiffs' claims. S.M.S.R. Br. 2-3. The government explicitly stated that the Court lacks jurisdiction over *all* Plaintiffs' claims. Gov. Br. 10. It further noted that, as was extensively briefed in prior filings, RAICES and CAIR Coalition are outside of the statute's zone of interests and have failed to establish standing. *Id.* (citing ECF 22 at 15; ECF 31 at 15-20).

F.3d 1026, 1033 (9th Cir. 2016)); *id.* ("[C]onsolidating all claims [arising from removal proceedings] in courts of appeals after a final order of removal is precisely what Congress intended."). Plaintiffs' interpretation of § 1252—under which a final order must be issued *before* they are precluded from raising their claims in district court—would eviscerate that section and would defy its language precluding district-court jurisdiction over any claim "arising from *any action taken* or proceeding brought to remove an alien." 8 U.S.C. § 1252(b)(9) (emphasis added); *see* O.A. Br. 16; S.M.S.R. Br. 4 n.3.

Plaintiffs also misread *Jennings*, which concerns reviewability of prolonged detention, to stand for the proposition that "there is no basis for finding that Plaintiffs are required to challenge the underlying legality of the Rule within the confines of a removal proceeding." O.A. Br. 9. Five Justices in *Jennings* concluded that the type of challenge brought here—a challenge to the standard that would apply in determining the alien's removability—would fall squarely within Section 1252(b)(9). The plurality explained that § 1252(b)(9) applies to challenges to "an order of removal" or "part of the process by which removability will be determined," *id.* at 841, both of which encompass the challenge here asserting that plaintiffs must be entitled to seek asylum free from the bar in their removal proceedings. And Justice Thomas viewed § 1252(b)(9) as sweeping even more broadly. Indeed, even the dissent in *Jennings* likely would agree, distinguishing between challenges that would implicate "an order of removal" from the challenge there to "detention without bail," which has nothing to do with the validity of the removal order. *Jennings*, 138 S. Ct. at 876 (Breyer, J. dissenting). A legal issue that forms the core of the determination of whether someone is subject to removal from the United States is exactly what Congress was addressing in the review-channeling provision of § 1252(b)(9).

As the Supreme Court has explained, where there is no single controlling opinion on an issue and "no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Justice Thomas's concurrence was far broader than Justice Alito's on the scope of § 1252(b)(9). Accordingly, under *Marks*, Justice Alito's plurality decision that § 1252(b)(9) at the very least precludes district-court jurisdiction over claims other than those seeking "review of an order of removal," including, for instance, "challeng[es to] the decision to detain them in the first place or to seek removal," or "challeng[es to] any part of the process by [] removability will be determined," *id.* at 841, controls here. Justice Alito's concern about an "extreme" interpretation, which Plaintiffs cite, O.A. Br. 8-9 & S.M.S.R. Br. 6-8, is one that would consider challenges to prolonged detention and similar challenges under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), to be part of the final order of removal. *Jennings*, 138 S. Ct. at 840. Those actions "would have already taken place" months or years before any judicial review if channeled through § 1252(b)(9), and thus would "depriv[e] that detainee of any meaningful chance for judicial review." *Jennings*, 138 S. Ct. at 840. Here, by contrast, in the words of the *Jennings* plurality, Plaintiffs' challenge "part of the process by which their removability will be determined," *i.e.*, whether they are eligible for relief from removal by virtue of a grant of asylum and how that determination is to be processed by the immigration courts, *see id.*, a quintessential claim raised in removal proceedings. *See, e.g.*, *Tchitchui v. Holder*, 657 F.3d 132 (2d Cir. 2011); *Salazar v. Ashcroft*, 359 F.3d 45 (1st Cir. 2004).

Although a final order is necessary in order to seek review in a court of appeals, *see* 8 U.S.C. § 1252(a), the "judicial review of a final order" language in § 1252(b)(9) is a mechanism

for controlling the *timing* of an action for judicial review, not the *subject* of review. In other words, an alien cannot seek judicial review of "questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" (the subject of review) until he or she has received a "final order" (the mechanism to seek review). *See, e.g.*, *Xiao v. Barr*, 979 F.2d 151, 153 (9th Cir. 1992) ("[E]ven when an alien is not, strictly speaking, seeking to attack a final order of exclusion, judicial review is precluded if the alien has failed to avail himself of all administrative remedies, one of which is the exclusion hearing itself."); *J.E.F.M.*, 837 F.3d at 1034 ("'[R]eview of a final removal order is the only *mechanism* for reviewing any issue raised in a removal proceeding.'") (quoting H.R. Rep. No. 109-72, at 173) (emphasis added). Thus, while § 1252 requires that a petition for review in a court of appeals be *filed* only after a final order of removal is issued, it does not limit the issues subject to the channeling provisions to only those *arising from* the final determination of removability itself. *See Vetcher*, 316 F. Supp. 3d at 76 (noting that "these two subsections streamline *all issues* arising from removal proceedings into a petition for review" and that such issues encompass claims such as right to counsel) (citing *J.E.F.M.*, 837 F.3d at 1033).

*J.E.F.M.*, *Aguilar*, and *Vetcher* all make clear that Plaintiffs' challenges to the rule's asylum-eligibility bar present legal questions that are not "independent" or "ancillary" to their removal proceedings: "Rather these claims are bound up in and an inextricable part of the administrative process," are therefore subject to § 1252's exhaustion and limited judicial-review provisions, and are precluded from district-court review here. *J.E.F.M.*, 837 F.3d at 1033. Deciding Plaintiffs' challenge to the rule's possible effect on their asylum eligibility—which the individual Plaintiffs must concede would be their only avenue for standing in this action—while Plaintiffs' removal proceedings are ongoing would result in this Court ruling on an issue that will be pending

in immigration court before the required administrative process has a chance to play out. In other words, Plaintiffs' claims in this Court are "inextricably linked" with their removal proceedings such that deciding them here would pretermit those proceedings. *J.E.F.M.*, 837 F.3d at 1033; *Aguilar*, 510 F.3d at 13.

Plaintiffs effectively ask this Court to reject the "inextricably linked" standard adopted by both the Ninth and First Circuits in *J.E.F.M.* and *Aguilar* because the government's reading would supposedly produce "unreasonable and unjust results." O.A. Br. 12. But no court, including the Supreme Court in *Jennings*, has rejected or overruled either decision or their alleged "broad" reading of § 1252. *J.E.F.M.*, 837 F.3d at 1030; *cf.* O.A. Br. 9-10 (suggesting that *Jennings*, because it post-dates *Aguilar* and *J.E.F.M.*, implicitly rejected the broad interpretation enunciated by the First and Ninth Circuits). Moreover, Plaintiffs' position would create the "unreasonable and unjust result" of this Court prejudging simultaneous administrative proceedings before any decision issued from them and overriding the petition-for-review scheme Congress set up for these decisions to be addressed by a court of appeals in the jurisdiction where the alien is located. As explained below, that is precisely what Congress, in multiple amendments broadening the scope of § 1252, sought to avoid. And there is nothing unjust in channeling claims to a certain path of judicial review.

O.A. Plaintiffs also rely on *INS v. St. Cyr*, 533 U.S. 289, 313 (2001), and *Regents of the Univ. of California v. DHS*, 908 F.3d 476, 504 n.19 (9th Cir. 2018), to argue that § 1252 precludes district-court review only of final removal orders. O.A. Br. 8. That reliance is misplaced. To the extent that *dicta* in a footnote in *Regents*, 908 F.3d at 504 n.19, stands for the proposition that § 1252 precludes review only when an alien has a final order, it is inconsistent with *Jennings* and fails to acknowledge the Ninth Circuit's prior holding otherwise in *J.E.F.M. See Jennings*, 138 S.

Ct. at 841 (Alito, J.) (§ 1252(b)(9) precludes review of the "decision to detain [aliens] in the first place or to seek removal" or "any part of the process by which their removability will be determined"); *id.* at 852 (Thomas, J. concurring) (through § 1252(b)(9), "Congress has prohibited courts from reviewing aliens' claims related to their removal"); *see also J.E.F.M.*, 908 F.3d 1157 (Mem.) (9th Cir. 2018) (denying petition for rehearing, from which only five judges—one of whom was the author of *Regents*—dissented and adopted the view that a final order is required). And reliance on *St. Cyr* is similarly unavailing because the Court there dealt with the *prior* version of § 1252—before the 2005 amendments broadening its scope—and addressed the separate question whether § 1252(b)(9) precluded habeas review under the general habeas statute. *See St. Cyr*, 533 U.S. at 313 (analyzing the 1994 version of § 1252(b)(9)).

Indeed, Plaintiffs err in presuming that programmatic challenges to "the underlying legality" of a categorical rule or policy or a "systemic change to asylum eligibility" are necessarily an exception to the review-channeling provisions of § 1252. O.A. Br. 9 & 11; S.M.S.R. Br. 8. But § 1252 prohibits "policies-and-practices challenges" just the same as other challenges if they target policies or practices that are "bound up in and an inextricable part of the administrative process." *J.E.F.M.*, 837 F.3d at 1032-35. Plaintiffs can challenge the rule or any denial of asylum based on the rule in removal proceedings just like any other aliens subject to a statutory or regulatory bar may challenge that bar in their proceedings. *See, e.g.*, *Tchitchui*, 657 F.3d at 134; *Diallo v. Ashcroft*, 381 F.3d 687, 692 (7th Cir. 2004); *Salazar*, 359 F.3d at 47; *Komarenko v. INS*, 35 F.3d 432, 436 (9th Cir. 1994); *Yang v. INS*, 79 F.3d 932, 933 (9th Cir. 1996). As with any other asylum denial, challenges may be raised in a petition for review before a court of appeals. *See Aguilar*, 510 F.3d at 13 ("The frequency with which right-to-counsel claims arise in removal proceedings refutes any notion that such claims are sufficiently separate from removal proceedings to be

considered either 'independent' or 'collateral.' Challenges to removal orders premised on the government's putative violation of an alien's right to counsel are commonplace, and such claims are often featured in petitions for judicial review of removal orders."); *J.E.F.M.*, 837 F.3d at 1033 (noting that claims at issue there, which were barred by § 1252(b)(9), "are routinely raised in petitions for review filed with a federal court of appeals"); *cf.* O.A. Br. 10 (suggesting that unlike the claims in *J.E.F.M.*, claims relating to eligibility for asylum under the rule are not "routinely raised" in petitions for review).

Plaintiffs also maintain that it "is not the law" that § 1252 requires the channeling of claims that could be brought in removal proceedings. O.A. Br. 8. But the background behind the current statute shows the expansive scope of § 1252's channeling provisions and makes clear that Congress meant those provisions to preclude jurisdiction for programmatic challenges to a rule's "systemic change to asylum eligibility." O.A. Br. 9 & 11; S.M.S.R. Br. 8. Section 1252(b)(9) was revised by the REAL ID Act of 2005. Prior to that revision, the Supreme Court in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), explained that Congress could use specific language to have "limited review provisions . . . encompass challenges to INS procedures and practices," noting two such examples: language channeling (1) "all causes . . . arising under any of the provisions" of the program, or (2) "all questions of law and fact" arising from the program. *Id.* at 494; *see J.E.F.M.*, 837 F.3d at 1034 (discussing *McNary*). Congress added that language to the INA through § 1252(b)(9): "Judicial review of *all questions of law and fact*, including interpretation and application of constitutional and statutory provisions, arising from *any* action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added); *see* H.R. Rep. No. 109-72, at 173-75; *see also United States v. Wells*, 519 U.S.

482, 495 (1997) ("[W]e presume that Congress expects its statutes to be read in conformity with [the Supreme Court's] precedents. . . ."); *J.E.F.M.*, 837 F.3d at 1035 ("[Section] 1252(b)(9) neatly tracks the policy and practice jurisdiction-channeling language suggested in *McNary* . . . . Thus, the legislative history and chronology of amendments to § 1252(b)(9) confirm the plain meaning of the statute. We conclude that §§ 1252(a)(5) and 1252(b)(9) channel review of all claims, *including policies-and-practices challenges* . . . .") (quoting 8 U.S.C. § 1252(b)(9)) (emphasis added). Under Plaintiffs' theory, an alien even could challenge a B.I.A. decision like *Pula* separate from the removal process regardless of the channeling scheme. That interpretation fails.

Indeed, Congress was explicitly responding to the *St. Cyr* decision, on which O.A. Plaintiffs rely, to eliminate any confusion that all issues were to be channeled to the courts of appeals. *St. Cyr* held that criminal aliens subject to § 1252(a)(2)(C) could still challenge aspects of their removal proceedings in habeas proceedings in district court. 533 U.S. at 299-300, 310-11. The anomaly *St. Cyr* created by providing criminal aliens with more judicial review than non-criminal aliens "created confusion in the federal courts as to what immigration issues can be reviewed, and which courts can review them." H.R. Rep. No. 109-72, at 174. To eliminate this confusion, Congress, through the REAL ID Act, made clear that *all* aliens could seek review of issues arising in their removal proceedings in one, uniform proceeding in courts of appeals. *Id.* And through § 1252(a)(2)(D), all aliens could "raise constitutional and legal challenges in the courts of appeals." *Id.* In short, Congress sought to ensure that "review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding." *Id.* at 173.

Plaintiffs also contend that this Court should assume jurisdiction because their challenges allegedly cannot be raised "efficaciously" in administrative proceedings because immigration courts "have no authority to issue decisions that are in contravention of the regulations that bind

the Agency, even where those regulations are invalid." O.A. Br. 11. However, the process that Congress designed does not conclude with the Board, but includes a specific petition-for-review process in the court of appeals that is fully capable of considering this legal challenge. Thus, the Supreme Court rejected that argument in *Elgin v. Dep't of the Treasury*. 132 S. Ct. 2126, 2132 (2012); *see also J.E.F.M.*, 837 F.3d at 1038. In *Elgin*, the Supreme Court held that, even though an "administrative body could not decide the constitutionality of a federal law," meaningful review exists when an Article III court, like the courts of appeals here, could review those claims. *Elgin*, 132 S. Ct. at 2136. It noted that the agency could address "threshold questions that may accompany a constitutional claim and to which the [agency] can apply its expertise." *Id.* at 2139. Hence in *J.E.F.M.*, the Ninth Circuit noted that although it was true that neither the immigration judge nor the Board of Immigration Appeals had authority to conclude the INA's provision governing the right to counsel was unconstitutional or to order the relief plaintiffs sought, the appointment of government-funded counsel, "the question at hand [was] a legal one involving constitutional rights," and, thus, even if not effectively raised in administrative proceedings, "the court of appeals has authority to consider the issue." *Id.* To the extent that Plaintiffs view the immigration courts as unable to effectively adjudicate their challenges, *Elgin*'s and *J.E.F.M.*'s reasoning applies with equal force here.

Plaintiffs cite *Aguilar* for their contrary theory, O.A. Br. 11, but that case is unavailing. There, citing *dicta* in *McNary*, 498 U.S. at 496, the First Circuit noted that "[w]hile legal and factual issues relating to [the] question [at issue] can be raised in removal proceedings and eventually brought to the court of appeals for judicial review, certain claims, by reason of the nature of the right asserted, cannot be raised efficaciously within the administrative proceedings delineated in the INA." *Aguilar*, 510 F.3d at 11. The court reasoned that "[r]equiring the exhaustion

of those claims would foreclose them from any meaningful judicial review. Given Congress's clear intention to channel, rather than bar, judicial review through the mechanism of section 1252(b)(9), reading 'arising from' as used in that statute to encompass those claims would be perverse." *Id.* But to the extent this scenario existed in *McNary* (it did not in *Aguilar*), in that case, *all* forms of meaningful review were foreclosed because, among many other things, the administrative procedures did not allow applicants to assemble adequate records for review, making it virtually impossible for a court of appeals to review the agency's determinations. *McNary*, 498 U.S. at 496-97. That is not the case here.

Plaintiffs also argue that because asylum, as a general matter, can be sought affirmatively before an Asylum Officer, outside of the removal process, their challenge to the rule does not "aris[e] from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9). *See* S.M.S.R. Br. 5; O.A. Br. 11. This is flawed for two main reasons. First, at no point were Plaintiffs eligible to affirmatively seek asylum, *i.e.*, to seek it outside of removal proceedings.[2] *See* Gov. Br. 11-12, 17-18; *see* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (2)(A), 1229a(a)(1), (3). Second, that some other alien who is not in removal proceedings may request asylum outside of proceedings in no way affects the fact that Plaintiffs, who are in removal proceedings, must exhaust their remedies in those proceedings and only then seek review in a court of appeals. *See, e.g.*, *Xiao*, 979 F.2d at 153.

*Second*, the S.M.S.R. Plaintiffs argue that because their notices to appear in removal proceedings were allegedly defective under *Pereira*, the recent Supreme Court case involving the requirements for those notices in the context of a request for cancellation of removal, Plaintiffs

---

[2] And even if that were not so, such claims are not reviewable because they are not final agency action, so even if they could affirmatively apply, this Court would still lack jurisdiction. *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018) ("Where, as [in the case of affirmative asylum determinations by USCIS], the actions of the agency are not made reviewable by a specific statute, the APA allows judicial review of the actions by federal agencies only over final agency action for which there is no other adequate remedy in a court." (quotation marks omitted)).

were not in removal proceedings when the suit was filed and thus § 1252 does not preclude district-court jurisdiction. S.M.S.R. Br. at 5. As the government has explained, however, a notice to appear vests the immigration court with jurisdiction so long as the date and time of the hearing is ultimately provided, and *Pereira* does not dictate that Plaintiffs subject to those notices are not lawfully subject to removal proceedings under 8 U.S.C. § 1229a. Gov. Br. 23-24. Plaintiffs do not respond to these points. *See* O.A. Br. 5-6; S.M.S.R. Br. 5. Moreover, Plaintiffs' position would eviscerate § 1252(b)(9), which precludes district-court jurisdiction of not only a "proceeding brought to remove" them, but also "*any* action taken" related to their removal. 8 U.S.C. § 1252(b)(9). And regardless of when they enter removal proceedings, once they do, the Court lacks jurisdiction under §§ 1252(b)(9) and (a)(5). Courts are obligated to ensure that jurisdiction exists throughout proceedings, and must dismiss a case even on appeal if circumstances have destroyed its jurisdiction. *See Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012). In any event, each Plaintiff who was issued an NTA also received a notice of a hearing date, so Plaintiffs' claims to the contrary are without merit. S.M.S.R. Br. 5.[3]

## II.    Although Section 1252(e)(3) May Confer Jurisdiction, A.V.'s Claim is not Ripe.

As noted, the only Plaintiff with a "determination[] under section 1225(b)," is A.V., but that claim is not ripe because the asylum rule has not been "applied" to A.V. *See Am. Immigration Lawyers Ass'n ("AILA") v. Reno*, 199 F.3d 1352, 1360 (D.C. Cir. 2000). Instead, she is currently

---

[3] On February 25, 2019, Defendants submitted a Cross-Motion for Summary Judgment and Opposition to Class Certification, ECF No. 65. That memorandum incorrectly suggested that all Plaintiffs who have received Notices to Appear (NTAs) did so after receiving expedited removal orders followed by positive findings of credible fear. ECF No. 65 at 4, 10, 18, 19, 25. That is incorrect—Plaintiffs G.Z., Y.A.L.P., D.S., C.A., O.A., and K.S. were served with NTAs and placed directly into removal proceedings under 8 U.S.C. § 1229a following apprehension and inspection without first undergoing credible fear proceedings 8 U.S.C. § 1225(b)(2)(A). *See also* 8 U.S.C. § 1232(a)(5)(D)(i) (providing that unaccompanied alien children are placed into removal proceedings if their removal is sought). Contrary to Plaintiffs' contentions, S.M.S.R. Br. 5, all Plaintiffs other than A.V., including L.V.C.R., C.S.C.C., R.G.G. and N.A.G.A., have been served with NTAs with hearing dates and times as well. *See* Ex. A, NTAs for L.V.C.R. & C.S.C.C.; Ex. B, NTAs for R.G.G. & N.A.G.A.; Ex. C, Defs.' Response to Plaintiffs' Reply to Defs.' Response to Plaintiffs' Statement of Material Facts.

facing criminal prosecution, and her expedited removal proceedings are awaiting the conclusion of that process. And § 1252(e)(3) is A.V.'s sole potential means for review.

Plaintiffs contend that the government has made a "formalistic distinction." O.A. Br. 13. Not so. Section 1252(e)(3) could potentially supply A.V. with jurisdiction exclusively in this court for review of her challenges if and when the asylum rule is applied to her. *See Nat'l Park Hospitality Ass'n v. U.S. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003) (explaining that the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," which are distinct from Article III standing or statutory subject matter jurisdiction).

Moreover, contrary to Plaintiffs' claims, A.V.'s unripe claim does not mean that § 1252(e)(3)'s 60-day clock will run. Because she sued within the requisite time period, it would be appropriate to relate a future challenge back to that time of filing for purposes of the deadline— the statutory filing deadline does not justify a court evaluating a legal issue where the rule might never be applied or be relevant to the outcome of her expedited removal process and there is accordingly no ripe case or controversy between the parties. Under D.C. Circuit precedent, only those aliens who can show an actual application of the regulation implementing the expedited removal statute they challenge may pursue a claim under § 1252(e)(3). *See AILA*, 199 F.3d at 1360. The D.C. Circuit's holding controls regardless of whether the plaintiffs are aliens without an application of the challenged rule or "third parties on behalf of persons who are subject to expedited removal." O.A. Br. 13.

### III.     Plaintiffs Lack Article III Standing.

As the government has explained, no Plaintiff in this case has standing. Gov. Br. 9-12. In reply, Plaintiffs do not offer any meritorious defense to their lack of standing. O.A. Br. 14-15;

S.M.S.R. Br. 2-3. No Plaintiff—individual or organization—can establish any injury attributable to the rule they challenge because it has not been applied to any of them and application is not "imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs do not deny that the rule was not applied to any Plaintiff. Instead, they suggest that "each will be barred from seeking asylum *if* the Rule is put into effect," although the *East Bay* injunction remains in place. S.M.S.R. at 3 (emphasis added). The hypothetical future vacation of the injunction is inadequate to establish that the rule causes an "imminent," "concrete[,] and particularized" injury, *Lujan*, 504 U.S. at 560-61, that is "legally and judicially cognizable," *Raines v. Byrd*, 521 U.S. 811, 819 (1997), sufficient to confer standing. To the contrary, with the exception of A.V. who is subject to criminal proceedings, 12 individual plaintiffs received *positive credible fear* findings and will have the opportunity to seek asylum in their full removal proceedings, and the remaining 6 plaintiffs bypassed the credible-fear process under the TVPRA and will have the same opportunity to seek asylum in their full proceedings.

Plaintiffs claim that "the categorical bar will be applied to them as a matter of course, and being subject to that bar is itself an injury." S.M.S.R. at 4. Not so. There is nothing to suggest that the rule will be applied to Plaintiffs "as a matter of course," particularly where the rule is currently enjoined. *Texas v. United States*, 523 U.S. 296, 300 (1998) (asserted injuries are not ripe when they assume "contingent future events that . . . may not occur at all"). As the government has established, Plaintiffs do not have standing to challenge the rule or proclamation in this case "apart from any concrete application that threatens imminent harm," which they fail to demonstrate. *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009).

As the government extensively briefed, the organizational Plaintiffs also lack standing and are clearly outside the zone of interests of the statute, and Plaintiffs have failed to demonstrate

otherwise. Gov. Br. 26 (incorporating prior arguments made in ECF 31 at 16-19). The organizations offer nothing new in their reply that supports their standing to challenge the rule. Only individual aliens may raise programmatic challenges to the procedures that will govern their expedited or full removal proceedings. *See, e.g.*, *AILA*, 199 F.3d at 1359; *J.E.F.M.*, 837 F.3d at 1035. The organizational Plaintiffs also lack a legally protected interest in the rule's application to third parties. A person "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 804-07 (D.C. Cir. 1987) (applying principle to immigration context). An organization similarly has "no judicially cognizable interest in procuring enforcement of the immigration laws" against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984). And a person generally lacks standing to challenge the government's provision (or denial) of benefits to a third party. *E.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342-46 (2006); *cf. O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 788 (1980) (discussing "[t]he simple distinction between government action that directly affects a citizen's legal rights" and "action that is directed against a third party and affects the citizen only indirectly or incidentally").

## IV. Plaintiffs' Opposition Fails on the Merits.

Even if the Plaintiffs could establish justiciability, their arguments on the merits would likewise fail. As made clear in the government's prior briefing, the rule constitutes an appropriate exercise of statutory authority delegated to the Executive, is consistent with the INA, and was lawfully issued without notice and comment. Gov. Br. 26-36.

A.  The rule is consistent with § 1158(a)(1).

The rule is consistent with § 1158(a)(1), which provides a general rule that aliens may *apply* for asylum if on U.S. soil, a matter separate from whether "[t]he Secretary of Homeland Security or the Attorney General may grant asylum to an alien," which is governed by § 1158(b).

Plaintiffs repeat their arguments that the rule renders "a dead letter" § 1158(a)(1)'s establishment of an alien's right to apply for asylum. OA Br. 2-4; SMSR Br. 19-20. As explained, these arguments lack merit because the rule is consistent with the statutory scheme. Gov. Br. 19-26. Section 1158(a)(1) states that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ) irrespective of such alien's status, may apply for asylum in accordance with this section." 8 U.S.C. § 1158(a). The modifying phrase "in accordance with this section" makes clear that an individual's ability to apply is always subject to the discretion afforded to the Attorney General and the Secretary of Homeland Security[4] to determine asylum eligibility as codified in § 1158(b). If Congress had intended to exclude manner of entry as the only criterion that cannot be considered for asylum eligibility, it would have said so expressly and in the specific context of the provisions defining the scope of the Attorney General's broad statutory discretion. Congress did not, however, and Plaintiffs' opposition fails to overcome this fact.

B.  The rule is consistent with § 1158(b)(2)(c).

As the government has explained, the rule is consistent with the Attorney General's rulemaking authority under § 1158(b)(2)(C). Gov. Br. 27-29. The broad delegation of authority in § 1158(b)(2)(C) requires only that regulatory asylum-eligibility bars established under that provision be "consistent with" § 1158. *Id.* § 1158(b)(2)(C). That describes the rule here: Nothing

---

[4] Although this authority is shared by the Attorney General and the Secretary, this brief refers exclusively to the Attorney General's authority for ease of reference.

in § 1158 confers a right to a grant of asylum for aliens who enter in violation of a specific Presidential proclamation governing a specific border for a specific time in response to a specific crisis, and thus the rule is "consistent with" the discretion conferred by that section to impose an asylum-eligibility bar tailored to these circumstances. *See* 8 U.S.C. §§ 1158(b)(1)(A), (b)(2)(A), (C).

Plaintiffs' response is to assert that the rule exceeds the Attorney General's rulemaking authority because it "imposes a restriction on asylum that is dramatically different than the statutory restriction that section 1158(b)(2)(C) is intended to supplement," and that the government "virtually concede[s] that [the rule] constitutes a wholesale delegation of the Attorney General's rulemaking authority." SMSR Br. 20. Yet Plaintiffs also assert that "Congress gave *all* the power to make rules governing asylum eligibility to the Attorney General." *Id*. at 21-22 (emphasis in original). That latter concession is warranted, as the statute confirms that the Attorney General's discretion to impose additional restrictions on asylum eligibility is broad enough to encompass this rule. And as the government explained, the President has the broad authority to suspend and restrict entry into the United States; the Attorney General and Secretary can exercise their lawful authority to impose a bar on those subject to that suspension. Gov. Br. 29-30. Again, all that § 1158(b)(2)(C) requires is that an asylum bar be "consistent" with § 1158, and no more.

Plaintiffs' contention that the President has usurped the Attorney General's statutory authority suffers from the same flaw. On the one hand, Plaintiffs claim the rule—undisputedly issued by the Attorney General and Secretary of Homeland Security—is an exercise of power by the President. SMSR Br. at 21. But, on the other hand, they admit the "President's power over entry is 'sweeping' and 'comprehensive.'" *Id*. (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2408, 2413 (2018)). The rule here fits right within that framework: the President's proclamation

concerned restriction of entry, and the rule—issued by the Attorney General and Secretary—governed eligibility for asylum. Accordingly, Plaintiffs still fail to show that the rule was issued in violation of § 1158(b)(2)(C).

C.   The rule is consistent with the TVPRA.

As the government has argued, the rule is consistent with the TVPRA because the rule does not alter the rights guaranteed under that Act. Gov. Br. 36-37.

Plaintiffs repeat their assertion that the rule runs counter to the TVPRA. OA Br. 4-5; SMSR Br. 25-26. Plaintiffs concede that unaccompanied alien children retain the procedural guarantees under the TVPRA, OA Br. 4, but contend that those rights have been rendered "hollow" under the rule. *Id.* at 5. The government has addressed this argument and reincorporates its prior arguments. Gov. Br. 36-37. The procedural rights guaranteed under the TVPRA are not disturbed by the rule, and accordingly it does not violate the TVPRA.

D.   The rule is consistent with § 1225(b).

As the government has explained, the rule is consistent with § 1225(b), which places no limits on categorical bars in credible-fear proceedings. Gov. Br. 26-29.

Plaintiffs argue that the rule, through 8 C.F.R. § 208.30(e)(5), violates what they believe is a procedural requirement under § 1225(b)(1)(B)(i) that aliens in credible fear proceedings cannot be subjected to a mandatory bar on asylum eligibility. OA Br. 5-6. In Plaintiffs' view, even if a mandatory bar can be applied to an alien in full removal proceedings, such bars cannot apply in expedited removal proceedings because the statute requires that each individual alien's credible fear claim be resolved on a case-by-case basis. *Id.* But the bar here would be applied in a case-by-case basis—to aliens who entered in violation of a Presidential proclamation—this argument has no merit.

Section 1225(b)(1)(B) states: "For purposes of this subparagraph, the term 'credible fear of persecution' means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title." The provision nowhere says or implies that categorical rules may not be applied as part of the credible fear screening process. Indeed, the text cuts against such a reading: it provides that aliens must demonstrate a "significant possibility" of "establish[ing ultimate] eligibility for asylum." *Id.* An alien who is categorically barred from receiving asylum can in no real sense assert *any* possibility, let alone a significant possibility, of establishing any ultimate claim for asylum. Thus, just based on the statutory text alone, the Court should reject Plaintiffs' claim.

To be sure, prior to the rule, 8 C.F.R. § 208.30(e)(5) provided that even "if an alien is able to establish a credible fear of persecution or torture but appears to be subject to one or more of the mandatory bars to applying for, or being granted, asylum contained in section 208(a)(2) and 208(b)(2) of the Act," they should be placed in full removal proceedings. But that *regulatory* provision is not required by statute, and nothing prevents the agencies from amending the regulation as they have here to require asylum officers to apply mandatory bars during credible fear proceedings.

And although the statute is clear that there is no express requirement that a mandatory bar to asylum cannot be applied to an alien in expedited removal proceedings, even were the text ambiguous, the agencies' reading is entitled to *Chevron* deference. *See, e.g.*, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) ("In [the] process of filling any gap left, implicitly or explicitly, by Congress, the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program."). As the agencies explained,

"[a]n alien who is subject to a relevant proclamation and nonetheless has entered the United States after the effective date of such a proclamation in contravention of that proclamation would be ineligible for asylum and would thus not be able to establish a 'significant possibility . . . [of] eligibility for asylum under section 1158.'" 83 Fed. Reg. at 55,943 (quoting 8 U.S.C. 1225(b)(1)(B)(v)). Moreover, "[a]s current USCIS guidance explains, under the credible fear standard, '[a] claim that has no possibility, or only a minimal or mere possibility, of success, would not meet the 'significant possibility' standard." *Id.* (quoting USCIS, Office of Refugee, Asylum, & Int'l Operations, Asylum Div., Asylum Officer Basic Training Course, Lesson Plan on Credible Fear at 15 (Feb. 13, 2017)); *see also* H.R. Rep. No. 104–69, at 158 ("The credible-fear standard [wa]s designed to weed out nonmeritorious cases so that only applicants with a likelihood of success will proceed to the regular asylum process"). Thus, even were the statute ambiguous— which it is not—the agencies' reading as articulated in the rule and 8 C.F.R. § 208.30(e)(6) is entitled to deference.

Plaintiffs fail to acknowledge, let alone address these points. Instead, they point to *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), which held, among other things, that the INA does not permit preventing aliens in expedited removal proceedings from receiving a credible fear determination when asserting asylum claims premised on a particular social group based on gang or domestic violence. *Id.* at 126. Plaintiffs invoke *Grace* to argue that categorical rules may not be applied in credible fear proceedings because the INA "requires 'credible fear determinations . . . be resolved based on the particular facts and circumstances of each case.'" OA Br at 5-6. But *Grace* addressed the much different question whether the Attorney General could establish a blanket rule governing adjudication of "membership in a particular social group"-based asylum claims premised on domestic or gang-related violence. 344 F.Supp.3d at 126. *Grace* says nothing

about whether as a general matter the agency can implement categorical bars to asylum to be applied in each individual credible fear interview, or 8 C.F.R. § 208.30(e)(5)'s previous requirement that aliens in credible fear be referred to full removal proceedings even if they are subject to a mandatory bar, if they otherwise qualify for credible fear. And even if *Grace* could be read as Plaintiffs ask this Court to, that holding would be contrary to the clear text of § 1225(b)(1)(B) and controlling principles of deference.

E.   The rule does not violate the APA's notice-and-comment provisions.

As Defendants have argued, and the court in *East Bay* has agreed with respect to the good-cause exception, the rule does not violate the APA's provisions regarding notice-and-comment rulemaking because it was validly promulgated under the good-cause and foreign-affairs exceptions. Gov. Br. 30-33.

As Plaintiffs note, the notice-and-comment issue has been briefed extensively by the parties. OA Br. 6. Here, Plaintiffs essentially re-invoke their prior statements, but attempt to distinguish Judge Tigar's ruling in favor of the government on the likelihood of success for the good-cause exception. *Id*. (referencing *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1115 (N.D. Cal. 2018) (explaining that the record demonstrated that the government likely had good cause to forego notice and comment)). Plaintiffs admit that the article referenced by the district court in *East Bay* was indeed part of the administrative record, but now take issue with whether the article was incorporated into the rule itself. OA Br. 6. But there is no requirement under the APA that an agency invoking good cause to forego notice and comment must explicitly cite every portion of the administrative record on which it relies for purposes of demonstrating good cause. All that is required is that the record support the decision made, *see, e.g., Coalition*

*for Parity, Inc. v. Sibelius*, 709 F. Supp. 2d 10, 16-17 (D.D.C. 2010), and as the Court in *East Bay* found, that is the case here.

Plaintiffs also disagree with the rule's conclusions based on the article in the administrative record. *Id*. They may disagree, but they fail to demonstrate that the Attorney General and Secretary were arbitrary and capricious in concluding immediate enforcement is required to address the influx of unauthorized border crossings. *See, e.g.*, *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (policy disagreement is not enough to hold that a rule is arbitrary and capricious). Plaintiffs predict that migrant behavior would not have changed during a notice-and-comment period, SMSR Br. 22-23, but they have no support beyond their own conjecture, which is insufficient to overrule the Attorney General's and Secretary's judgment.

F.  The rule is not arbitrary and capricious.

The rule is not arbitrary and capricious—it is lawful for the reasons described above and in the government's motion. Gov. Br. 26-37.

Plaintiffs restate their arguments that the rule runs afoul of *Chevron* because: (1) "the substance of the asylum restrictions was impermissibly imposed by the President"; (2) the Proclamation and the Rule together base asylum on characteristics irrelevant to asylum; and (3) there has not been a rational connection shown between the rule and the goals. SMSR Br. 24. All three arguments essentially restate Plaintiffs' other merits arguments, and all three fail to render the rule "arbitrary and capricious." As previously stated, *see* Gov. Br. 30, the rule was not issued by the President. Instead, the President issued a proclamation for which he had clear statutory authority, and the rule was issued pursuant to express authority by the agency heads. The remaining two contentions merely state Plaintiffs' policy disagreement and fail to show that the agency heads' conclusions were arbitrary and capricious. *See, e.g.*, *Envtl. Def. Fund, Inc.*, 657 F.2d at 283

(policy disagreement is not enough to hold that a rule is arbitrary and capricious). Accordingly, these arguments also fail.

## V.        The Court Lacks Authority to Issue a Nationwide Injunction.

As the government has explained, Gov. Br. 50-52, contrary to Plaintiffs' arguments, O.A. Br. 24-25, S.M.S.R. Br. 26-27, a nationwide injunction is inappropriate in this case where the vast majority of named plaintiffs—other than A.V.—must seek and can receive potentially complete relief in their removal proceedings and § 1252(e)(3) limits the availability of injunctive relief.

Plaintiffs assert that a nationwide injunction is warranted by the need for the uniform application of immigration law and because courts have in the past issued broad injunctions. O.A. Br. 25; S.M.S.R. Br. 26. But these points stand counter to Article III's requirements that a court remedy specific and particularized harm. In particular, the O.A. Plaintiffs fail to acknowledge that complete relief is available in removal proceedings for all but A.V.; instead, they maintain that "there is nothing unusual about a court issuing an injunction that provides Plaintiffs complete relief and also prevents the government from harming other similarly situated individuals." O.A. Br. 25. But that courts have in the past erroneously issued sweeping injunctions that depart from Article III limits cannot provide a basis for a court to act beyond its authority. Further, as described in Defendants' prior briefs, this court has authority to issue only declaratory relief under § 1252(e)(3). *See* Gov. Br. 51. That provision explicitly states that the sole remedy is a determination that the policy is invalid, and equitable relief is expressly precluded.

The statutory framework is clear that both class-wide and broad injunctive relief is unavailable before this Court. Gov. Br. 10-24, 38-40, 50-52. Plaintiffs' citation of *Grace v. Whitaker* is unavailing. The district court in that case acknowledged that it lacked authority to certify a class action under § 1252(e)(1)(A), but nevertheless disregarded D.C. Circuit precedent

and issued prospective relief even broader than class-wide relief, without any of the critical considerations or analysis that comes with evaluating a claim for class relief, enjoining the government from applying certain portions of a decision by the Attorney General to any alien in credible fear proceedings. *Grace*, 344 F. Supp. at 144 n.31. That decision misreads the plain text of the statutes. Section 1252(e)(1)(B) explicitly provides that, "[w]ithout regard to the nature of the action or claim . . . no court may . . . certify a class under Rule 23 . . . in any action for which judicial review is authorized under a subsequent paragraph of this subsection," which includes the present suit. 8 U.S.C. § 1252(e)(1)(B). Congress would not have enacted that provision while envisioning courts entering orders like the one in *Grace*.

Section 1252(f) separately provides that—"[r]egardless of the nature of the action or claim . . . , no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation" of the expedited-removal system "other than with respect to the application of such provisions to an individual against whom proceedings under such part have been initiated." *Id*. § 1252(f). That language is clear on its face: it prohibits class-wide and broad injunctive relief, and intends that the expedited removal system be implemented without such broad judicial intervention absent the ruling of a higher court. The *Grace* court erred in reading those provisions otherwise. That reading is especially unwarranted because Congress adopted § 1252(f)(1) in direct response to a series of class-wide injunctions sought by aliens and deliberately intended to eliminate judicial interference with certain statutes through class-wide injunctions. See H.R. Rep. No. 104-469, pt. 1, at 161 (1996) ("[C]ourts may issue injunctive relief pertaining to the case of an individual alien, and thus protect against any immediate violation of [individual] rights. But single district courts or courts of appeals do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S."). No policy argument—

whether based on supposed public interest or judicial economy—can overcome § 1252(f)(1)'s straightforward application to the class-wide relief sought in this case. *See Nielsen v. Preap*, --- S. Ct. ---, 2019 WL 1245517, at *16 (2019) (Thomas, J., concurring) (reasoning that theory that § 1252(f) permits a court to "enjoin conduct . . . not authorized by the statutes" is "circular and unpersuasive" and here the "text clearly bars jurisdiction to enter an injunction '[r]egardless of the nature of the action or claim'"). Moreover, here Plaintiffs "are arguing for a version of the statute that Congress simply did not write," and ask the Court to implement extra-statutory requirements with respect to credible fear interviews, and such relief would enjoin operation of § 1225(b)(1) as written. *See Hamama v. Adducci*, 912 F.3d 869, 878-80 (6th Cir. 2018) (order "creat[ing] out of thin air a requirement . . . that does not exist in the [challenged] statute" and "adopt[ing] new standards that the government must meet" violates § 1252(f)).[5]

Contrary to the *Grace* court's reading, there is a remedy for suits brought under § 1252(e)(3): individual declaratory relief. Even if A.V. has standing, that single plaintiff is foreclosed from receiving the broad relief that is provided through the channels, like class actions, that Congress specifically barred. *See AILA*, 199 F.3d at 1358, 1360, 1364 (explaining that "[w]e cannot see anything in these provisions allowing litigants—whether individuals or organizations— to raise claims on behalf of those not party to the lawsuit," and that "in the face of a statute barring even class actions that comply with the rules of procedure, it would be inconsistent, indeed almost contradictory," if § 1252(e)(3) were read to permit relief that functions as "essentially unbounded

---

[5] The fact that Plaintiffs might seek declaratory relief as a *class* is irrelevant. *See Hamama*, 912 F.3d at 880 n.8. While "declaratory relief will not always be the functional equivalent of injunctive relief," *Alli v. Decker*, 650 F.3d 1007, 1014 (3d Cir. 2011), in this case, it is the functional equivalent. "The practical effect of a grant of declaratory relief as to [Plaintiffs'] [claims] would be a class-wide injunction against the [expedited removal] provisions, which is barred by § 1252(f)(1)." *Hamama*, 912 F.3d at 880 n.8. Even if the Plaintiffs in removal could receive class certification, they would be foreclosed from getting the class-wide injunctive relief sought here under the statute.

class lawsuits" and holding that § 1252(e) and (f) foreclose "relief for a large and diffuse group of individuals, none of whom are parties to the lawsuit.").

Finally, even if the court could grant relief to Plaintiffs other than A.V., the Court could not issue a nationwide injunction where the organizational plaintiffs lack any cause of action. In any event, because Article III standing requires a remedy that is tailored to a particular injury, *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994), any relief as to Plaintiffs other than A.V., if provided at all, should be limited to remedying the harm that they, and they alone, may have suffered. *See, e.g.*, *AILA*, 199 F.3d at 1358, 1360, 1364 (relief may not premised on harm to parties not before the court); *East Bay*, 909 F.3d at 1240-41 (same, in context of challenge to the same rule being challenged in this case). Here, if the Court were to exercise jurisdiction, an injunction limited to the individual Plaintiffs will be sufficient to "provide complete relief to them." *California v. Azar*, 911 F.3d 558 (9th Cir. 2018). And that is true even in an APA case: a remedy must be tailored to the harm that creates Article III standing and no broader. *See id.* (limiting, in a case involving interim final rule, a nationwide injunction when a narrower one could provide complete relief to parties); *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) (vacating a nationwide injunction of an executive order when a more limited one sufficed to remedy injuries); *L.A. Haven Hospice, Inc. v. Sibelius*, 638 F.3d 644, 664 (9th Cir. 2011) (similar, facially invalid regulation).

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor on all counts and deny Plaintiffs' motions for summary judgment and class certification.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*s/ T. Benton York*
T. BENTON YORK
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: thomas.b.york@usdoj.gov
FRANCESCA GENOVA
KATHRYNE M. GRAY
Trial Attorneys

Dated: March 29, 2019                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ T. Benton York*
T. BENTON YORK
Trial Attorney
United States Department of Justice
Civil Division

# Exhibit A

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
180 TED TURNER DR SW, STE. 241
ATLANTA, GA  30303

LEAD FILE: 
RE:

                                        DATE:  Mar 28, 2019
TO:

     Please take notice that the above captioned case has been scheduled for a
MASTER hearing before the Immigration Court on Apr 23, 2019 at 08:30 A.M. at:
          401 W PEACHTREE ST, STE 2600
          ATLANTA, GA  30308
     You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court.  Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative.  If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed.  You can request an
earlier hearing in writing.
     Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions:  (1) You may be taken into
custody by the Department of Homeland Security and held for further
action. OR (2) Your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act.  An order of removal will be entered
against you if the Department of Homeland Security established by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.
     IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT ATLANTA, GA  THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33.  ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS."  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.
     A list of free legal service providers has been given to you.  For
information regarding the status of your case, call toll free 1-800-898-7180
or 240-314-1500.
                         CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVICED BY:  MAIL (M)      PERSONAL SERVICE  (P)
TO:  [M] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [P] DHS
DATE:  _____03/28/2019_____  BY:  COURT STAFF _____LN_____

Attachments:  [ ] EOIR-33  [ ] EOIR-26  [ ] Legal Services List  [ ] Other T3

# Exhibit B

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
333 SOUTH MIAMI AVE., STE.700
MIAMI, FL  33130



RE: G███-G███, R███
FILE:                                            DATE:  Mar 28, 2019

TO: G███ G███, R███

     Please take notice that the above captioned case has been scheduled for a
**MASTER hearing before the Immigration Court on Apr 30, 2019 at 09:00 A.M. at:**
               **333 SOUTH MIAMI AVE., COURTROOM 12, 5TH FLOOR, IJ: TMC**
               **MIAMI, FL  33130**
     You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court.  Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative.  If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed.  You can request an
earlier hearing in writing.
     Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions: (1) You may be taken into
custody by the Department of Homeland Security and held for further
action; OR (2) Your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act.  An order of removal will be entered
against you if the Department of Homeland Security establishes by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.
     IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT MIAMI, FL, THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33.  ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS."  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.
     A list of free legal service providers has been given to you.  For
information regarding the status of your case, call toll free 1-800-898-7180 or
240-314-1500.
                         CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL ( )     PERSONAL SERVICE ( )
TO:  [M] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] DHS
DATE:   03/28/2019      BY:  COURT STAFF

Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other  T1

DEPARTMENT OF HOMELAND SECURITY



## NOTICE TO APPEAR

In removal proceedings under section 240 of the Immigration and Nationality Act:

File No. _____

In the Matter of:

Respondent:   G_____-G_____, R_____ _____ currently residing at:

_____

(Number, street, city and ZIP code)

_____

(Area code and phone number)

☐ You are an arriving alien.
☒ You are an alien present in the United States who has not been admitted or paroled. You are an applicant for admission.
☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States.

2) You are a native of GUATEMALA and a citizen of GUATEMALA;

3) You entered the United States at an unknown location on or about 11/17/2018; ,

4) You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;

5) You were not then admitted or paroled after inspection by an immigration officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Section 212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to: ☒ 8CFR 208.30  ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

San Antonio EOIR 800 Dolorosa Street, Suite 300 San Antonio, TX 78207

(Complete Address of Immigration Court, including Room Number, if any)

on ___TBD___ at ___TBD___ to show why you should not be removed from the United States based on the
(Date)          (Time)

_____ charge(s) set forth above.

SUPERVISORY ASYLUM OFFICER

(Signature and Title of Issuing Officer)

Date  December 7, 2018           Karnes City, TX

(City and State)

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903.

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
*(Signature of Respondent)*

_____                              Date: _____
*(Signature and Title of Immigration Officer)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on __12/07/18__, in the following manner and in compliance with section 239(a)(1) of the Act.

☑ In person      ☐ by certified mail, returned receipt # _____ requested      ☐ by regular mail
☑ Attached is a credible fear worksheet.
☑ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____Spanish_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

X ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬                ▬▬▬▬▬▬▬▬▬▬▬▬
*(Signature of Respondent if Personally Served)*       *(Signature and Title of Officer)*

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

FAMU
2018

## NOTICE TO EOIR: ALIEN ADDRESS

Date: _12/08/2018_

To: Enter Name of BIA or Immigration Court I-830 *Executive Office for Immigration Review*

Enter BIA or Immigration Court Three Letter Code@usdoj.gov _____ *MIA*

From: Enter Name of ICE Office

Enter Street Address of ICE Office

Enter City, State and Zip Code of ICE Office

Respondent: Enter Respondent's Name _G_ ▢ -G ▢ , R ▢

Alien File No: Enter Respondent's Alien Number

---

This is to notify you that this respondent is:

☐ Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

Enter Name of Institution where Respondent is being detained

Enter Street Address of Institution where Respondent is being detained

Enter City, State and Zip code of Institution where Respondent is being detained

**Enter Respondent's Inmate Number**

His/her anticipated release date is Enter Respondent's Anticipated Release Date.

☐ Detained by ICE on **Enter Date Respondent was Detained by ICE** at:

Enter Name of ICE Detention Facility where Respondent is being detained

Enter Street Address of ICE Detention Facility where Respondent is being detained

Enter City, State and Zip Code of ICE Detention Facility where Respondent is being detained

---

☐ Detained by ICE and transferred on **Enter Date Respondent was transferred** to:

Enter Name of ICE Detention Facility where Respondent has been transferred

Enter Street Address of ICE Detention Facility where Respondent has been transferred

Enter City, State and Zip Code of ICE Detention Facility where Respondent has been transferred

---

☒ Released from ICE custody on the following condition(s):
  ☒ Order of Supervision or Own Recognizance (Form I-220A)
  ☐ Bond in the amount of Enter Dollar Amount of Respondent's Bond
  ☐ Removed, Deported, or Excluded
  ☐ Other   *AWC / ATD*

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:
Enter Respondent's Street Address

Enter Respondent's City, State and Zip Code

Enter Respondent's Telephone Number (including area code)

☒ I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: Enter Your First, Last Name and Title _____ / *Deportation Officer*

ICE Form I-830E (9/09)                                                                 Page 1 of 1



**U.S. Department of Homeland Security**
Immigration and Customs Enforcement

NEW COURT LOCATION

Date: 12/08/2018

To: G███-G█████, R███    File No: ██████████

From: Immigration and Customs Enforcement
409 FM 1144
Karnes City, Texas 78118

This notice is to advise you that the Notice to Appear, Form I-862, issued to you will be filed with the Office of the Immigration Judge with jurisdiction over the residential address you provided to ICE upon your release. You are reminded that you are required to provide written notice within five (5) days of any change in your address or telephone number to the Office of the Immigration Judge.

Esta noticia sirve para avisarle que el aviso para comparecerse expedido a usted sera sometido en La Oficina del Juez de Inmigracion que tendra jurisdicción legal sobre el domicilio residencial que usted proveo a el Servicio de Aduanas e Inmigracion (ICE). Se le ruega acordarse que tiene la obligacion de notificar por escrito dentro de cinco (5) dias, referente a cualquier cambio de domicilio o de telefono a La Oficina del Juez de Inmigracion.

## PROOF OF SERVICE

On _____12/08/2018_____, this Form I-831 was personally served on the above named respondent at the Karnes County Residential Center, Texas.

Signature: ███████████    Deportation Officer
Title: Deportation Officer    Date: 12/08/2018

Respondent's Signature: X ███████████████    Date: 12/08/2018

FORM I-831

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
333 SOUTH MIAMI AVE., STE.700
MIAMI, FL   33130

RE: G█████-A████, N█
FILE: ██████████                          DATE:  Mar 28, 2019

TO:   G█████-A████, N█
      ████████████████████
      █████████████

      Please take notice that the above captioned case has been scheduled for a
**MASTER hearing before the Immigration Court on Apr 30, 2019 at 09:00 A.M. at:**
              333 SOUTH MIAMI AVE., COURTROOM 12, 5TH FLOOR, IJ: TMC
              MIAMI, FL   33130
      You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court.  Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative.  If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed.  You can request an
earlier hearing in writing.
      Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions:  (1) You may be taken into
custody by the Department of Homeland Security and held for further
action; OR (2) Your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act.  An order of removal will be entered
against you if the Department of Homeland Security establishes by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.
      IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT MIAMI, FL, THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33.  ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS."  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.
      A list of free legal service providers has been given to you.  For
information regarding the status of your case, call toll free 1-800-898-7180 or
240-314-1500.
                    CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL (M)        PERSONAL SERVICE (P)
TO: [M] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [P] DHS
DATE: __03/28/2019__   BY:  COURT STAFF  _____

Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other   T1



DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR

In removal proceedings under section 240 of the Immigration and Nationality Act:

File No. ███████████

In the Matter of:

Respondent: G███-A███, N███ _____ currently residing at:

███████████

(Number, street, city and ZIP code)

(Area code and phone number)

☐ You are an arriving alien.
☒ You are an alien present in the United States who has not been admitted or paroled. You are an applicant for admission.
☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States.

2) You are a native of GUATEMALA and a citizen of GUATEMALA;

3) You entered the United States at an unknown location on or about 11/17/2018;

4) You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;

5) You were not then admitted or paroled after inspection by an immigration officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Section 212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to: ☒ 8CFR 208.30  ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

San Antonio EOIR 800 Dolorosa Street, Suite 300 San Antonio, TX 78207

*(Complete Address of Immigration Court, including Room Number, if any)*

on ___TBD___ at ___TBD___ to show why you should not be removed from the United States based on the
*(Date)*        *(Time)*

charge(s) set forth above.

███████████      SUPERVISORY ASYLUM OFFICER

*(Signature and Title of Issuing Officer)*

Date ___December 7, 2018___

Karnes City, TX

*(City and State)*

DHS Form I-862 (5/17)      **See reverse for important information**      Page 1 of 2

### Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

---

### Certificate of Service

This Notice To Appear was served on the respondent by me on __12_/_07_/_18__, in the following manner and in compliance with section 239(a)(1) of the Act.

☑ In person   ☐ by certified mail, returned receipt # _____ requested   ☐ by regular mail
☑ Attached is a credible fear worksheet.
☑ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____Spanish_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          _____
*(Signature of Respondent if Personally Served)*          *(Signature and Title of Officer)*



DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE TO EOIR: ALIEN ADDRESS

Date: _12/08/2018_

To: Enter Name of BIA or Immigration Court I-830 *Executive Office for Immigration Review*

Enter BIA or Immigration Court Three Letter Code@usdoj.gov _____ *MIA*

From: Enter Name of ICE Office ▇▇▇▇▇▇▇▇▇▇

Enter Street Address of ICE Office ▇▇▇▇▇▇

Enter City, State and Zip Code of ICE Office ▇▇▇▇▇▇▇

Respondent: Enter Respondent's Name _G▇▇ A▇ N▇_

Alien File No: Enter Respondent's Alien Number ▇▇▇▇

---

This is to notify you that this respondent is:

☐ Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

Enter Name of Institution where Respondent is being detained _____

Enter Street Address of Institution where Respondent is being detained _____

Enter City, State and Zip code of Institution where Respondent is being detained _____

**Enter Respondent's Inmate Number** _____

His/her anticipated release date is Enter Respondent's Anticipated Release Date. _____

☐ Detained by ICE on **Enter Date Respondent was Detained by ICE** at: _____

Enter Name of ICE Detention Facility where Respondent is being detained _____

Enter Street Address of ICE Detention Facility where Respondent is being detained _____

Enter City, State and Zip Code of ICE Detention Facility where Respondent is being detained _____

☐ Detained by ICE and transferred on **Enter Date Respondent was transferred** to: _____

Enter Name of ICE Detention Facility where Respondent has been transferred _____

Enter Street Address of ICE Detention Facility where Respondent has been transferred _____

Enter City, State and Zip Code of ICE Detention Facility where Respondent has been transferred _____

☒ Released from ICE custody on the following condition(s):
  ☒ Order of Supervision or Own Recognizance (Form I-220A)
  ☐ Bond in the amount of Enter Dollar Amount of Respondent's Bond
  ☐ Removed, Deported, or Excluded
  ☐ Other _AWC / ATD_

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:
Enter Respondent's Street Address ▇▇▇▇▇▇

Enter Respondent's City, State and Zip Code ▇▇▇▇▇▇

Enter Respondent's Telephone Number (including area code) ▇▇▇▇▇

☒ I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: Enter Your First, Last Name and Title _____ ▇▇ / *Deportation Offi*▇▇▇

ICE Form I-830E (9/09)                                                                                          Page 1 of 1



**U.S. Department of Homeland Security**
Immigration and Customs Enforcement

NEW COURT LOCATION

Date:   12/08/2018

To:  G███████-A████ N████                          File No: ████████████

From:   Immigration and Customs Enforcement
        409 FM 1144
        Karnes City, Texas 78118

This notice is to advise you that the Notice to Appear, Form I-862, issued to you will be filed with the Office of the Immigration Judge with jurisdiction over the residential address you provided to ICE upon your release.  You are reminded that you are required to provide written notice within five (5) days of any change in your address or telephone number to the Office of the Immigration Judge.

Esta noticia sirve para avisarle que el aviso para comparecerse expedido a usted sera sometido en La Oficina del Juez de Inmigracion que tendra jurisdicción legal sobre el domicilio residencial que usted proveo a el Servicio de Aduanas e Inmigracion (ICE).  Se le ruega acordarse que tiene la obligacion de notificar por escrito dentro de cinco (5) dias, referente a cualquier cambio de domicilio o de telefono a La Oficina del Juez de Inmigracion.

## PROOF OF SERVICE

On _____12/08/2018_____, this Form I-831 was personally served on the above named respondent at the Karnes County Residential Center, Texas.

Signature: ████████████        Title: Deportation Officer  Date: 12/08/2018

Respondent's Signature: X ████████████████        Date: 12/08/2018

FORM I-831

# Exhibit C

JOSEPH H. HUNT
*Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
AUGUST E. FLENTJE
*Special Counsel*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
FRANCESCA GENOVA
KATHRYNE M. GRAY
BENTON YORK
Office of Immigration  Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin  Station
Washington,  D.C. 20044
Tel: (202) 598-6073
Email:  thomas.b.york@usdoj.gov
*Trial Attorneys*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| O.A., *et al.*, | ) | |
| | ) | |
| Plaintiffs,  and, | ) | |
| | ) | |
| S.M.S.R., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil  Action Nos. 18-cv-2718,  18-cv-2838 |
| | ) | |
| Donald J. Trump, President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### Defendants' Response to Plaintiffs' Reply Concerning Statement of Material Facts

Defendants hereby file this response to Plaintiffs' Reply Concerning  Statement of Material

Facts (ECF 73-1). As Defendants describe in their Response to Plaintiffs'  Statement of Material

Facts (ECF 66-1), this is an APA case that mandates record review. *See* ECF 66-1 at 1-2. Defendants provide extra-record evidence to establish lack of jurisdiction, and the record-review rule does not apply in that limited instance. *See, e.g.*, *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*, 78 F. Supp. 3d 208, 217 (D.D.C. 2015) (discussing that extra-record evidence is permissible to determine standing when it is not evident on the face of the administrative record). Thus, the Court may consider that evidence for that limited purpose.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*s/ T. Benton York*
T. BENTON YORK
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: thomas.b.york@usdoj.gov
FRANCESCA GENOVA
KATHRYNE M. GRAY
Trial Attorneys

Dated: March 29, 2019                    *Attorneys for Defendants*