**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| O.A., *et al.*, | ) |
| and | ) |
| S.M.S.R., *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action Nos. 1:18-2718, 1:18-2838 |
| DONALD J. TRUMP, in his official capacity, *et al.*, | ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Defendants provide the following in response to the Court's request at the May 29, 2019 hearing for supplemental briefing. As explained below, because Plaintiffs amended their complaints, jurisdiction is normally determined as of the date of amendment. But post-complaint actions—like the issuance of a notice to appear—can abrogate subject-matter jurisdiction that previously existed. And, because ongoing agency action is pending, Plaintiffs lack any cause of action under the Administrative Procedure Act (APA) at this time. Finally, G.Z.'s and A.V.'s statuses do not alter the fact that this Court lacks jurisdiction over any of Plaintiffs' claims.

As an initial matter, "[w]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, [] courts look to the amended complaint to determine jurisdiction." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 18 (D.C. Cir. 2015). As of December 18, 2018—the date Plaintiffs amended their complaints—every Plaintiff but A.V. was subject to removal proceedings under 8 U.S.C. § 1229a because each Plaintiff was issued a Notice to Appear (NTA) or found to have a credible fear of persecution by that date. *See* 8 U.S.C. § 1229(a); 8 C.F.R. §§ 208.30(f), 1003.14(a), 1239.1(a). D.S., C.A., G.Z., O.A., K.S., G.R., S.M.S.R., R.S.P.S., L.V.C.R., C.S.C.C., R.G.G., N.A.G.A., K.P.P.V., R.D.P.V., A.J.E.A.M., and Y.A.L.P. were all issued NTAs on or before December 18. Defs. Statement of Material Facts ("Defs. Statement"). As for D.R. and P.R., although they initially may have been subject to expedited removal proceedings, they were each found to have a credible fear of persecution prior to December 18, such that they ceased to be subject to expedited removal proceedings by operation of law and were then subject to removal proceedings under § 1229a. *See* 8 C.F.R. § 208.30(f).[1] Thus, as of December 18, only A.V. arguably was not yet subject to § 1229a proceedings, such that this Court's jurisdiction would not have been barred by 8 U.S.C. § 1252(b)(9). For the reasons addressed immediately below, this Court nonetheless lacks jurisdiction over her claims.

I. Post-Amended-Complaint Events Deprive the Court of Jurisdiction

A. The Court Lacks Jurisdiction over Any Claim Arising under Section 1252(e)(3)

The fact that A.V. was not issued an NTA until after the date Plaintiffs filed their amended complaints on December 18 does not mean that the Court has jurisdiction under 8 U.S.C. § 1252(e). It

---

[1] D.R.'s and P.R.'s NTAs were issued on December 19, 2018, and January 15, 2019, respectively. *See* Defs. Statement. This does not change the fact that as of December 17, 2018, upon receiving positive credible fear determinations, they were no longer subject to expedited removal orders or proceedings.

1

is well-settled that "[c]haracterizing a rule as a limit on subject-matter jurisdiction 'renders it unique in our adversarial system' …. Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant *at any point in the litigation*, and courts must consider them *sua sponte*." *Fort Bend County, Tex. v. Davis*, -- S. Ct. --, 2019 WL 2331306, at *4 (June 3, 2019) (emphasis added). Thus, where events post-dating the operative complaint render what was once a live case or controversy moot, a party must "bring to the federal tribunal's attention, *without delay*, facts that may raise a question of mootness," and thus divest the court of jurisdiction over claims it may once have had jurisdiction over. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997) (emphasis in original). A.V. was issued an NTA on May 24, 2019. *See* Defs. Statement; *see also* Ex. 2 (A.V. May 28 Notice of Hearing). She is thus no longer subject to expedited removal proceedings. *See* 8 C.F.R. § 208.30(f). Accordingly, A.V. may not invoke § 1252(e)(3) as a basis for jurisdiction, because the "determination" that may have provided this with Court jurisdiction under § 1252(e)(3)—an order of expedited removal—does not exist. *See Dugdale v. Lynch*, 672 F. App'x 35, 36 (D.C. Cir. 2016) (because the order has been "vacated," "challenges to the expedited removal order are moot").

    B.  The Court Lacks Jurisdiction and Plaintiffs Lack a Cognizable APA Claim in Any Event

Because no individual Plaintiff has claims under § 1252(e)(3) that are justiciable, this Court has jurisdiction over individual Plaintiffs' claims only if 8 U.S.C. § 1252(b)(9) does not preclude jurisdiction. For the reasons Defendants have explained, ECF 66 at 15-24, § 1252(b)(9)'s channeling provisions foreclose judicial review in this Court because Plaintiffs' claims relating to the possible application of the rule to them in their § 1229a removal proceedings arise from those proceedings and therefore must be raised exclusively in those proceedings. "When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the ultimate order of removal, it is prohibited by section 1252(a)(5)." *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012); *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-32 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the PFR process."). Here, Plaintiffs challenge a rule that governs whether they may secure relief from removal in the form of the discretionary grant of asylum. That rule plainly governs the "procedure and substance of an agency

2

determination that is inextricably linked to the ultimate order of removal." *Martinez*, 704 F.3d at 623; *see Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality) (suggesting § 1252(b)(9) would bar claims "challenging any part of the process by which [aliens'] removability will be determined").

It makes no difference that NTAs were not yet "filed" with the immigration courts, such that proceedings had not yet technically "commenced" by December 18 for D.R., P.R., G.R., L.V.C.R., C.S.C.C., R.G.G., N.A.G.A., A.J.E.A.M., K.P.P.V., R.D.P.V., and Y.A.L.P.[2] 8 C.F.R. § 1239.1(a). Section 1252(b)(9) applies equally to "any action taken" as it does to a "proceeding brought" "to remove an alien," 8 U.S.C. § 1252(b)(9), including "actions occur[ing] prior to the institution of any formal removal proceedings." *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007). "Reading the statute to limit the exhaustion requirement to claims that arise from ongoing removal proceedings would put an undue premium on which party rushed to the courthouse first. More importantly, such a reading would render the word "action" superfluous and effectively excise it from the statute." *Id.* Accordingly, once NTAs issued, the sole and exclusive forum for each Plaintiff's claims was their removal proceedings. *Accord Bal v. Sessions*, 292 F. Supp. 3d 604, 606-08 & n.35 (E.D. Penn. 2017) (service of NTA, after APA challenge to asylum decision was filed with the district court and summary judgment motions were pending, deprived the court of jurisdiction because a final agency action no longer existed).

Nor does it matter that the NTAs for A.V., D.R., and P.R. issued after Plaintiffs filed their amended complaints—issuance of the NTAs still precludes review. First, "[r]egardless of the fact that Defendants issued the NTA charging [some Plaintiffs] with removability after the commencement of this action, the pendency of removal proceedings now means that [those Plaintiffs'] claims are not ripe for this Court's review." *Ansaldo v. United States*, No. 16-cv-328-CMA, 2018 WL 1084144, at *2-3 (D. Colo. Feb. 28, 2018) (collecting cases); *see also Randall v. Meese*, 854 F.2d 472, 477-78, 481-82 (D.C. Cir. 1988) (deportation proceedings initiated after lawsuit filed meant further agency proceedings were ongoing and initial agency action was not ripe for judicial review).[3] Indeed, it is well-settled that

---

[2] The NTAs issued to O.A., K.S., D.S., C.A., G.Z., S.M.S.R., and R.S.P.S. were all filed with the immigration courts before December 18, 2018. *See* Defs. Statement.

[3] *See Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010) (rejecting "argument that jurisdiction vested with the filing of [the] original complaint ..., notwithstanding the subsequent initiation of removal proceedings" because "although jurisdiction is normally determined from the filing of the

3

where, as here, agency action remains pending, notwithstanding parallel federal district court proceedings, those federal proceedings are not ripe for adjudication, and should be dismissed without prejudice pending resolution of the administrative procedures. *See Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 59 (1993) ("[T]he promulgation of the challenged regulations did not itself give each CSS and LULAC class member a ripe claim; a class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him."); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990) (controversy concerning regulation not ripe for APA review until regulation is applied to plaintiff by concrete action). Second, even where proceedings might otherwise be ripe, once their NTAs issued, 8 U.S.C. § 1252(d) required Plaintiffs to raise their claims in their removal proceedings. That provision provides that an alien subject to § 1229a removal proceedings must "exhaust[] all administrative remedies available to the alien as of right," 8 U.S.C. § 1252(d), which includes the removal proceeding itself. *See Xiao v. Barr*, 979 F.2d 151, 153 (9th Cir. 1992) ("[E]ven when an alien is not, strictly speaking, seeking to attack a final order of exclusion, judicial review is precluded if the alien has failed to avail himself of all administrative remedies, one of which is the exclusion hearing itself."); *Howell v. INS*, 72 F.3d 288, 290, 293 (2d Cir. 1995) (service of document initiating deportation proceedings after plaintiff filed suit in district court, notwithstanding that the document was only *filed* with immigration court after district court dismissed the case, required that alien exhaust administrative remedies). And § 1252(d) is a *jurisdictional* provision, meaning that once removal proceedings are initiated, an alien's failure to raise his claims in those proceedings cannot be excused. *See Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) ("§ 1252(d)(1) mandates exhaustion" and is "jurisdiction[al]") (collecting cases). Because Congress has clearly implemented a system of review whereby claims must be exhausted first in removal proceedings, and only then in federal court, and has made that exhaustion requirement jurisdictional, the usual rule that jurisdiction is determined as of the time the operative complaint is filed does not apply. *See, e.g.*, *Ansaldo*, 2018 WL 1084144, at *2-3.

Finally, even if the Court otherwise had jurisdiction, the fact that removal proceedings are ongoing for *all* named Plaintiffs means that Plaintiffs lack a cognizable cause of action under the APA.

---

[amended] complaint, after-arising events can defeat jurisdiction by negating the ripeness of a claim").

Under the APA, Plaintiff must "allege that [their] injury stems from a final agency action for which there is no other adequate remedy in court." *Jama v. DHS*, 760 F.3d 490, 495 (6th Cir. 2014) (citations omitted) (applying final-agency-action test to plaintiffs in removal proceedings); 5 U.S.C. § 704. "The core question for determining finality [is] whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Dalton v. Specter*, 511 U.S. 462, 470 (1994) (citation omitted). An agency action is not final and is thus unreviewable under the APA if it "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939). Even if jurisdiction vested with the Court as to A.V. on December 18, because A.V. and all Plaintiffs must raise their claims through ongoing agency action—their removal proceedings—they lack a cause of action under the APA, and the Court must dismiss their claims. *See Jama*, 760 F.3d at 496 ("[Plaintiff's] removal proceedings are presently ongoing; the IJ has not yet considered his application for asylum ... If [his] application is granted, he will be permitted to remain lawfully in the United States notwithstanding USCIS's decision to terminate his refugee status or the IJ's decision regarding removability."); *Dhakal v. Sessions*, 895 F.3d 532, 539-40 (7th Cir. 2018) ("Once the Department seeks removal and asylum is asserted as a defense, the immigration court 'develops the more extensive factual record' for review by the Board and, where appropriate, our ultimate review .... The process recognizes that immigration judges and the Board possess expertise in these matters and thus should be given the first chance, before the federal courts, to apply that expertise."); *Canal A Media Holding, LLC v. USCIS*, 369 F. Supp. 3d 1312, 1319 (S.D. Fla. 2019) (similar, collecting cases); *see generally Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006). In short, because Plaintiffs all have ongoing removal proceedings pending in which they may raise challenges to the application of the asylum rule to them and to their removal, there is no final agency action for the Court to review at this time.[4] Thus, the Court must dismiss this case separate and apart from the jurisdictional defects because Plaintiffs lack an APA cause of action. *See Canal A Media*, 369 F. Supp. 3d at 1321 ("dismissing the [] Complaint

---

[4] For the same reason, Plaintiffs have an "adequate other remedy," precluding APA review. 5 U.S.C. § 704. As explained, they may challenge any denial of asylum, if and when that occurs, and the legality of the rule, if it is ever applied to them, in removal proceedings and ultimately in the courts of appeals.

5

due to the absence of final agency action, 'is consistent with Congress' clear intent to streamline the review process by consolidat[ing] and channel[ing] review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals.'") (quoting *Jama*, 760 F.3d at 496).[5]

## II. Plaintiffs' Supplemental Arguments Lack Merit

Plaintiffs first argue in their Supplemental Brief that the Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' challenges to the rule are primarily to the changes to 8 C.F.R. § 208.13, which does not involve removal proceedings, and which impacts certain other aliens' ability to apply for asylum outside of removal proceedings. ECF 80 at 1. But, as Plaintiffs must concede, they would have standing to challenge the rule only as it applies to these Plaintiffs, not any non-party to whom the rule could be applied. And all Plaintiffs are subject to full removal proceedings where any asylum claim *must* be made, *see supra*. Although Plaintiffs assert that "asylum, as a concept, is not inherently intertwined with removal proceedings," for those aliens who are in removal proceedings, including *all* of the Plaintiffs here, asylum is unquestionably inherently intertwined with removal proceedings. Plaintiffs plainly do not have standing to challenge the rule based on its speculative application to *any non-party alien* outside of removal proceedings. Plaintiffs' attempt to invoke jurisdiction under 28 U.S.C. § 1331 on the basis that they are challenging the rule's application to individuals outside of removal proceedings who may affirmatively apply for asylum must be rejected.

Plaintiffs appear to now assert that they have standing to challenge the rule's changes to 8 C.F.R. § 208.13 because G.Z. "is seeking asylum affirmatively" and because G.R., who was granted asylum in removal proceedings "may" have § 208.13 invoked against her to "strip her of that status or

---

[5] Plaintiffs lack an APA claim for the *additional* reason that none of them has been "adversely affect[ed]" by any agency action because the rule they challenge has not been applied to them. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985) (finality requirement requires "definitive position on the issue that inflicts an *actual, concrete* injury" (emphasis added)). Plaintiffs' ongoing removal proceedings, where it is speculative if the rule will ever be applied to them, makes their challenge one to agency action that "only affects [their] rights adversely on the contingency of future administrative action." *Rochester Tel. Corp.*, 307 U.S. at 130. Thus, the pendency of their removal proceedings, where Plaintiffs may make a formal application for asylum (and where, here, in fact, every Plaintiff has expressed an intent to seek asylum or relief from removal or has been granted asylum), means that there is no final agency action for this Court to review.

6

prevent her from adjusting her immigration status." ECF 80 at 2. This is misplaced.[6] G.Z. is seeking asylum as a defense against removal, and, although he has submitted an application to USCIS as an unaccompanied alien child (UAC), he is not applying for asylum independent of being placed in removal proceedings. While the TVPRA provides initial jurisdiction to USCIS, it does not take a UAC out of already initiated removal proceedings, like those already initiated against G.Z. Thus, because G.Z. was placed in removal proceedings, his asylum application is not "affirmative" because it is asserted as a defense to removal.[7] Accordingly, G.Z.'s application for asylum does not provide Plaintiffs with an avenue to avoid the jurisdictional channeling provisions in § 1252 and this Court does not have jurisdiction under 28 U.S.C. § 1331.

Second, Plaintiffs argue that G.Z.'s and G.R.'s procedural postures show the inapplicability of § 1252. ECF 80 at 3-6. But, for the reasons addressed immediately above, G.Z.'s asylum application was not made in an "affirmative" posture outside of removal proceedings and thus he is subject to § 1252, which requires him to raise his challenges in removal proceedings and permits him to appeal any decision to the BIA and then to the courts of appeals. Plaintiffs' arguments as to G.R. are also without merit.[8] Plaintiffs claim that this Court has jurisdiction to review their APA claims because the rule "may" one day be retroactively applied to G.R. to strip her of her grant of asylum in her removal proceedings, if the injunction preventing its implementation is ever lifted. ECF 80 at 4-6.[9] But the process for terminating asylum is established by regulation. *See* 8 C.F.R. § 1208.24. It is speculative whether that regulatory process would ever be triggered. Even then, were DHS to pursue any termination of asylum in any hypothetical case, case law requires DHS to look to the law in effect at

---

[6] Plaintiffs' claims relating to G.R. are addressed in the third point below.

[7] Specifically, "[a]n asylum officer … shall have initial jurisdiction over any asylum application filed by [a UAC]." 8 U.S.C. § 1158(b)(3)(C). UACs may file an application with USCIS, even if they are in removal proceedings, and their asylum claims are thus asserted as a defense to removal.

[8] Despite having been granted asylum, G.R. remains in ongoing removal proceedings due to the pending appeal of her bond determination. *See* Defs. Statement.

[9] Plaintiffs argue that while the Government said that once individuals are placed into full proceedings Defendants will not revisit that decision no matter the rule's future, the Government nonetheless "declined to make any such representation as to other potential future applications of the rule." ECF 80 at 4. But all Plaintiffs are in removal proceedings. And Plaintiffs lack standing to challenge what they concede are "other *potential future* applications of the rule" to non-plaintiffs. *Id.* (emphasis added).

the time that an individual was granted asylum. *See Patel v. Gonzalez*, 432 F.3d 685, 691 (6th Cir. 2005) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994)). Moreover, because all Plaintiffs are in ongoing removal proceedings, challenging a possible future application of a rule that is currently not in force and which is speculative is not a challenge to final agency action that is reviewable under the APA, for the reasons discussed. *See Dhakal*, 895 F.3d at 540 ("[I]f [plaintiff] is denied asylum at the conclusion of this process by the immigration courts, only the decision of the Board, which speaks with final authority for the executive branch, forms the basis for our review."). And even if any Plaintiff's asylum grant were terminated, he or she could seek relief in the reopened removal proceedings that would be required for termination of asylum. *See* 8 C.F.R. § 1208.24(e), (f); 8 U.S.C. § 1158(c)(2). That hypothetical Plaintiff's avenue to then challenge any future application of the rule would proceed through § 1252's channeling process, *see supra*.

Finally, Plaintiffs argue that to the extent that § 1252 applies because their claims "arise from removal," the Court has jurisdiction under "§ 1252(e)(3) over the claims commenced in expedited removal." ECF 80 at 6. Plaintiffs make three arguments in support of this theory. First, according to Plaintiffs, they (except the UACs) "were *eligible* for expedited removal as soon as they were apprehended ... even though the Government chose to initiate such proceedings only as to A.V." and when the O.A. Plaintiffs initially filed suit, "none of them were in ordinary removal proceedings." *Id.* (emphasis added).[10] But, as explained, the date that Plaintiffs initially filed suit is irrelevant because they filed amended complaints on December 18, 2018—the date by which jurisdiction is initially analyzed. As of December 18, no Plaintiff was subject to expedited removal except A.V., whose claims

---

[10] Plaintiffs suggest that the lack of a hearing date on G.Z.'s NTA meant that issuance of the NTA only "purport[ed] to initiate ordinary removal proceedings," citing *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). ECF 80 at 6. But *Pereira* is confined to the cancellation of removal context and "had nothing to say about when an immigration judge obtains jurisdiction over an alien's removal proceedings." *Ali v. Barr*, -- F.3d --, 2019 WL 2147246, at *1-2 (8th Cir. May 17, 2019). Thus, any NTA lacking a date or time here—particularly given that all Plaintiffs received Notices with dates and times—did not divest the immigration courts of jurisdiction over Plaintiffs' removal proceedings. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018); *Ortiz-Santiago v. Barr*, -- F.3d --, 2019 WL 2171368, at *5 (7th Cir. May 20, 2019); *Banegas Gomez v. Barr*, -- F.3d --, 2019 WL 1768914, *6-8 (2d Cir. Apr. 23, 2019); *Santos-Santos v. Barr*, 917 F.3d 486, 489-91 (6th Cir. 2019); *Matter of Pena-Mejia*, 27 I. & N. Dec. 546 (BIA 2019). This cursory suggestion by Plaintiffs is therefore a red herring. As of the date of the amended complaints, all but one Plaintiff was subject to full removal proceedings.

8

are now moot because she was issued an NTA and placed into full proceedings on May 24, 2019—*see* Defs. Statement (NTA issued and filed on May 24)—after she requested a credible fear interview. *See* Ex. 1 (letter requesting referral); Ex. 2 (notice of removal proceedings on June 26, 2019, at 1:00 p.m.).

And Plaintiffs' claim that they were all "eligible" for expedited removal when they first arrived in the country, allegedly giving them a claim under § 1252(e), ECF 80 at 6, is both wrong and immaterial. An alien is not subject to expedited removal until DHS "determines" she is. 8 U.S.C. § 1225(b)(1)(A)(i). Upon apprehension of an applicant for admission, "DHS has discretion to put aliens in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i)." *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). If the former option is chosen, DHS issues an NTA. If the latter option is elected, DHS issues an order of expedited removal. *See Innovation Law Lab v. McAleenan*, 924 F.3d 503, 506-07 (9th Cir. 2019) ("Simply put, an applicant is eligible for expedited removal only if the immigration officer determines that the individual is inadmissible."). Therefore, an alien is not automatically "eligible" and thus somehow subject to expedited removal proceedings, as Plaintiffs suggest (ECF 80 at 6), *unless* DHS "determines" to put her in those proceedings. *Innovation Law Lab*, 924 F.3d at 507. And if an alien is found to have a credible fear, she is by operation of law no longer subject to expedited removal. *See* 8 C.F.R. § 208.30(f). Here, as explained, at the time of the amended complaints, all Plaintiffs had been issued NTAs or were found to have credible fear and therefore were not subject to expedited removal proceedings, with the exception of A.V. And A.V. has since been issued an NTA and is no longer subject to expedited removal proceedings. As a result, this Court lacks jurisdiction to review any possible § 1252(e) claim by Plaintiffs, none of whom is subject to expedited removal or, in the case of A.V., has any live claims concerning expedited removal. *See Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) ("Even where litigation poses a live controversy when filed, ... [this] court [must] refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'").

Second, Plaintiffs persist in their argument that they do not need an expedited removal order to invoke jurisdiction under § 1252(e)(3). ECF 80 at 9-10. But by its own terms, § 1252(e)(3) requires a "determination" under § 1225(b)(1) to review. 8 U.S.C. § 1252(e)(3). Because asylum determinations

9

are not themselves judicially reviewable, *id.* § 1252(a)(2)(A)(iii), Congress plainly intended that an alien seeking review of the expedited removal system under § 1252(e)(3) have an expedited removal order under § 1225(b)(1). *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1360 (D.C. Cir. 2000) (holding that § 1252(e)(3) was "meant to allow litigation challenging the ... [expedited removal] system by, and only by, aliens against whom the [expedited removal] procedures had been applied"). Because all Plaintiffs lack an expedited removal order and are not otherwise subject to expedited removal procedures, they do not have a claim under § 1252(e)(3).[11] Finally, Plaintiffs suggest that A.V.'s transfer into full removal proceedings is "highly unusual" and "came with no warning." ECF 80 at 7. Not only is that irrelevant to whether this Court has jurisdiction for the reasons discussed above, but it is belied by the fact that in March 2019, *A.V. requested* that she be referred for a credible fear interview during the pendency of her criminal case. *See* Ex. 1. Plaintiffs also assert that there would be "no outer limit on [the Government's] ability to engage in jurisdictional gamesmanship" if it could transfer a plaintiff from expedited to full removal proceedings and divest the Court of jurisdiction. ECF 80 at 8. But the result of A.V.'s request for a credible fear interview, as Plaintiffs acknowledge, *id.* at 7, was that she would be placed in full removal proceedings, where her application for asylum and any challenge to the asylum rule will be reviewed and decided by the immigration court.[12] And Plaintiffs have not pointed to any actual evidence of "gamesmanship," so their argument is irrelevant. To the extent any gamesmanship exists, it would be by Plaintiffs, who are seeking to circumvent § 1252 "simply by racing to the courthouse before the government initiates removal proceedings," in an effort "to confer jurisdiction on the federal courts." *Cabaccang*, 627 F.3d at 1317.

---

[11] Even if any Plaintiff had a cognizable claim under § 1252(e)(3), Plaintiffs cannot challenge 8 C.F.R. § 208.13(c) through § 1252(e)(3). Section 208.13(c) provides general substantive standards that govern *all* asylum proceedings—defensive, affirmative, or through credible fear. Thus, it is not a "written policy guideline ... issued by or under the authority of the Attorney General to implement [] section" 1225(b)(1), and so cannot be reviewed through § 1252(e)(3). *East Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 867 (N.D. Cal. 2018) (rejecting "proposition that any rule of asylum eligibility that may be applied in expedited removal proceedings is swallowed up by § 1252(e)(3)," and limiting injunction to § 208.13(c), as the court likely lacked jurisdiction over rule's changes to § 208.30(e)(5)).

[12] Indeed, by placing A.V. straight into removal proceedings instead of referring her to USCIS for initial review of her credible fear claim, she has the benefit of not delaying a determination on her asylum application that would result if she were to be first interviewed for credible fear by USCIS.

Dated:  June 12, 2019                                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

/s/ *Kathryne M. Gray*_____
KATHRYNE M. GRAY
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 858, Ben Franklin Station
Washington, DC 20044
(202) 305-7386
kathryne.m.gray@usdoj.gov

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

    I hereby certify that on June 12, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Kathryne M. Gray*_____
KATHRYNE M. GRAY
U.S. Department of Justice