**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

O.A., *et al.*,

and

S.M.S.R., *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity, *et al.*,

Defendants.

Civil Action Nos. 1:18-2718, 1:18-2838

**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants file this Notice of Supplemental Authority to bring to the Court's attention the July 16, 2019 decision by the D.C. Circuit in *American Federation of Government Employees (AFGE), AFL-CIO v. Trump*, --- F.3d ---, 2019 WL 3122446 (D.C. Cir. July 16, 2019). *See* Ex. A.

As in this case, *AFGE* involved a statutory scheme channeling judicial review of agency decisions directly to the courts of appeals, thereby depriving district courts of jurisdiction. Similar to Plaintiffs' challenges to the proclamation and rule here, the plaintiffs in *AFGE*—multiple federal labor unions—challenged a series of 2018 executive orders regarding federal labor-management relations, claiming, among other things, that the President had no authority to issue the executive orders and that the orders violated the Constitution and the governing statute. *See AFGE*, 2019 WL 3122446, at *2. The central issue on appeal was whether the plaintiffs' claims were "of the type" that Congress intended be subject to the exclusive review scheme under the statute. *Id.* at *3. The D.C. Circuit concluded that they were, holding that "the district court lacked subject matter jurisdiction" because "[t]he unions must pursue their claims through the scheme established by the Statute, which provides for administrative review by the [agency] followed by judicial review in the courts of appeals." *Id.* The court concluded that none of the three "limited circumstances" for finding a party's claims as "fall[ing] outside of the scope of a special statutory scheme"—that "(1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claims are wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency"—was present. *Id.* (internal quotation marks, brackets, and citations omitted).

*First*, the court of appeals rejected the plaintiffs' argument that the statutory scheme did not provide for meaningful judicial review because the plaintiffs would be unable to obtain "pre-implementation review of the executive orders or immediate relief barring all agencies from implementing [them]." *Id.* at *4. It explained that a plaintiff may lawfully be required to wait until the agency issues a decision and initiates enforcement proceedings, where challenges that the statute has been violated must first be made. *Id.* (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216 (1994)). This was true even where the statutory scheme "made it *impossible* to obtain particular forms of review or relief. The Statute 'can preclude a claim from being brought in a district court even if it *forecloses* the claim from administrative review' and provides no other way

to bring the claim." *Id.* at *5 (quoting *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) (emphasis in original)). And as is directly relevant here, the D.C. Circuit came to the same conclusion for plaintiffs who "did not wish to challenge the uniform regulation on a concrete 'local-by-local' basis through the [agency] but rather sought to do so on a 'nationwide' basis in an APA suit before the district court." *Id.* (quoting *Air Force*, 716 F.3d at 639). Although the "statutory scheme provided no way to assert such a 'nationwide' attack," the court held that "that did not mean [plaintiffs] could resort to the courts"; instead, "it meant [plaintiffs] 'may not raise the claim at all.'" *Id.* (citation omitted). Thus, "*[e]ven plaintiffs with 'nationwide' or 'systemwide' challenges may not 'circumvent' the scheme established by the Statute*." *Id.* (citation omitted) (emphasis added). The D.C. Circuit further held that "broader claims," including constitutional claims, were subject to the statute's channeling provisions because "it is of no dispositive significance whether the agency has the authority to rule on constitutional claims so long as the claims can eventually reach an Article III court." *Id.* According to the court, it "need not map the precise contours of the [agency's] authority to adjudicate [plaintiffs'] claims . . . . For even if the [agency] could not address the claims, circuit courts could do so on appeal." *Id.* at *6. Accordingly, "[a]lthough [plaintiffs] are not able to pursue their preferred systemwide challenge through the scheme, they can ultimately obtain review of and relief from the executive orders by litigating their claims in the context of concrete bargaining disputes. Such review . . . qualifies as meaningful." *Id.* at *7. The same is true in this case. Regardless of whether or not an immigration court has authority to issue the specific relief Plaintiffs seek in this Court, or hear the specific challenges Plaintiffs raise here, once a final decision is issued in their immigration proceedings, Plaintiffs may raise any challenge to the rule or proclamation in the appropriate court of appeals. *See id.*

*Second*, the D.C. Circuit held that "[f]or many of the same reasons, the [plaintiffs'] claims [were] not 'wholly collateral' to the statutory scheme." *Id.* (citation omitted). This was because the plaintiffs' challenges were "of the type that is regularly adjudicated through the [statute's] scheme: disputes over whether the Statute has been violated," and the plaintiffs requested "the same relief that they could ultimately obtain through the statutory scheme, namely rulings on whether the executive orders are lawful and directives prohibiting agencies from following the executive orders

during bargaining disputes." *Id.* Similarly, here, Plaintiffs' claims are not "wholly collateral to the statutory scheme" under 8 U.S.C. § 1252, such that they would be precluded from making the same challenges in their removal proceedings and ultimately through a petition for review in the courts of appeals, where they may seek a determination on whether the rule and proclamation are lawful and a directive prohibiting their application to deny Plaintiffs asylum.

*Finally*, the D.C. Circuit held that claims that the executive orders violated the statute and the Constitution were not "beyond the expertise" of the agency because they involved "matters [that] lie at the core of the [agency's] specialized expertise." *Id.* at *7. The court noted that the agency had "primary responsibility for administering and interpreting" the statute at issue and "serve[d] the special function of applying the general provisions of the Statute to the complexities of federal labor relations," including "adjudicat[ing] whether governmental actions violate the Statute." *Id.*; *see also id.* ("[A]n agency's relative level of insight into the merits of a constitutional question is not determinative."). Accordingly, there was "'no reason to conclude that Congress intended to exempt' the claims from the statutory scheme." *Id.* at *8 (citations omitted). Similarly, here, the immigration courts have the "primary responsibility for administering and interpreting" the INA, which they "'regularly construe[]'" to "adjudicate[] whether governmental actions violate the Statute." *Id.* at *7. Thus, "because [the immigration courts'] expertise can be brought to bear on [Plaintiffs'] claims in these ways," there is "no reason to conclude that Congress intended to exempt [Plaintiffs'] claims from the statutory scheme" under 8 U.S.C. § 1252. *Id.* at *8.

In sum, the D.C. Circuit's decision in *AFGE*, including its conclusions as to each of the three considerations for determining whether a specialized statutory scheme precludes district-court jurisdiction, is controlling in this case. Defendants respectfully submit that this Court should find that it lacks jurisdiction under 8 U.S.C. § 1252 for the same reasons found in *AFGE*.

Dated: July 31, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

/s/ *Kathryne M. Gray*______
KATHRYNE M. GRAY
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 858, Ben Franklin Station
Washington, DC 20044
(202) 305-7386
kathryne.m.gray@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Kathryne M. Gray*_____
KATHRYNE M. GRAY
U.S. Department of Justice

2019 WL 3122446
United States Court of Appeals,
District of Columbia Circuit.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., Appellees
v.
Donald J. TRUMP, in His Official Capacity as President of the United States, et al., Appellants

No. 18-5289
|
Argued April 4, 2019
|
Decided July 16, 2019

**Synopsis**
**Background:** Federal employee unions filed separate actions against President of United States, Office of Personnel Management (OPM), and Director of OPM, asserting claims challenging President's executive orders regarding federal labor-management relations as allegedly unlawful in violation of Take Care Clause, First Amendment right to freedom of association, and Federal Service Labor-Management Relations Statute (FSLMRS). After consolidation, the United States District Court for the District of Columbia (No. 1:18-cv-01261), Ketanji Brown Jackson, J., 318 F.Supp.3d 370, granted in part and denied in part parties' cross-motions for summary judgment and enjoined President's subordinates within executive branch from implementing various provisions of executive orders that were unlawful under FSLMRS. Government appealed.

**[Holding:]** The Court of Appeals, Griffith, Circuit Judge, held that claims were under exclusive FSLMRS scheme outside district court's jurisdiction.

Reversed and vacated.

West Headnotes (20)

**[1] Federal Courts**
Power of Congress to establish courts and define their jurisdiction

Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. 28 U.S.C.A. § 1331.

Cases that cite this headnote

**[2] Administrative Law and Procedure**
Exclusive or original jurisdiction

Congress may preclude district court jurisdiction over civil actions arising under the Constitution and laws of the United States by establishing an alternative statutory scheme for administrative and judicial review. 28 U.S.C.A. § 1331.

Cases that cite this headnote

**[3] Administrative Law and Procedure**
Exclusive or original jurisdiction

Under the two-step framework to determine whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, Congress intended that a litigant proceed exclusively through a statutory scheme when (1) such intent is fairly discernible in the statutory scheme, and (2) the litigant's claims are of the type Congress intended to be reviewed within the statutory structure.

Cases that cite this headnote

**[4] Labor and Employment**
Purpose

With the Federal Service Labor-Management Relations Statute (FSLMRS), as with all of the Civil Service Reform Act (CSRA), Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector; the scheme provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

**[5] Labor and Employment**
Purpose

Congress intended the statutory scheme of administrative and judicial review, under the Federal Service Labor-Management Relations Statute (FSLMRS), to be exclusive with respect to federal labor-management relations claims within its scope. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

[6] **Administrative Law and Procedure**
Exclusive or original jurisdiction

In determining whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, claims will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review, (2) the claims are wholly collateral to the statutory review provisions, and (3) the claims are beyond the expertise of the agency.

Cases that cite this headnote

[7] **Administrative Law and Procedure**
Exclusive or original jurisdiction

In determining whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, the three considerations for concluding claims fall outside of the scope of a special statutory scheme, namely, a finding of preclusion might foreclose all meaningful judicial review, the claims are wholly collateral to the statutory review provisions, and the claims are beyond the expertise of the agency, do not form three distinct inputs into a strict mathematical formula; rather, they serve as general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design.

Cases that cite this headnote

[8] **Labor and Employment**
Collective bargaining in general

Federal employee unions would not be foreclosed from all meaningful judicial review by requiring them to proceed through statutory scheme, under Federal Service Labor-Management Relations Statute (FSLMRS), for claims that President's executive orders regarding federal labor-management relations were unlawful, in support of determining that district court lacked jurisdiction over unions' claims that were of type Congress intended to be reviewed exclusively within FSLMRS scheme providing for administrative review before Federal Labor Relations Authority (FLRA) followed by judicial review in courts of appeals, even though unions could not pursue their preferred systemwide challenge via FSLMRS scheme, since unions could obtain meaningful review of and relief from orders by litigating claims through FSLMRS scheme in context of concrete bargaining disputes. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

[9] **Administrative Law and Procedure**
Construction, interpretation, or application of law in general

It is not unusual for an appellate court reviewing the decision of an administrative agency to consider a constitutional challenge to a federal statute that the agency concluded it lacked authority to decide.

Cases that cite this headnote

[10] **Labor and Employment**
Scope and extent of review in general

Under the Federal Service Labor-Management Relations Statute (FSLMRS), a Court of Appeals may review the broad statutory and constitutional claims on appeal from an Federal Labor Relations Authority (FLRA) administrative proceeding even if the FLRA cannot. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

[11] **Administrative Law and Procedure**

Exclusive or original jurisdiction

In determining whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, consideration of whether the claims are wholly collateral to the statutory review provisions is related to the consideration regarding whether meaningful judicial review is available through the statutory scheme, and the two considerations are sometimes analyzed together.

Cases that cite this headnote

**[12] Labor and Employment**

Collective bargaining in general

Federal employee unions' claims challenging lawfulness of President's executive orders regarding federal labor-management relations were not wholly collateral to statutory scheme, under Federal Service Labor-Management Relations Statute (FSLMRS), providing for administrative review before Federal Labor Relations Authority (FLRA) followed by judicial review in courts of appeals, in support of determining that district court lacked jurisdiction over unions' claims that were of type Congress intended to be reviewed exclusively within FSLMRS scheme, since claims alleged that executive orders violated FSLMRS, and unions requested same relief they could ultimately obtain through statutory scheme, namely, rulings as to whether executive orders were lawful and directives prohibiting agencies from following executive orders during bargaining disputes. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

**[13] Labor and Employment**

Collective bargaining in general

Federal employee unions' claims challenging lawfulness of President's executive orders regarding federal labor-management relations were not beyond expertise of Federal Labor Relations Authority (FLRA), and thus, district court lacked jurisdiction over unions' claims that were of type that Congress intended to be reviewed exclusively within statutory scheme, under Federal Service Labor-Management Relations Statute (FSLMRS), providing for administrative review before Federal Labor Relations Authority (FLRA) followed by judicial review in courts of appeals, since unions' claims alleged that executive orders directed agencies to violate FSLMRS by refusing to bargain over mandatory subjects or by taking actions inconsistent with duty to bargain in good faith, which were matters lying at core of FLRA's specialized expertise in field of federal labor relations. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

**[14] Labor and Employment**

Exclusive, Concurrent, and Conflicting Jurisdiction

The Federal Labor Relations Authority (FLRA) has primary responsibility for administering and interpreting the Federal Service Labor-Management Relations Statute (FSLMRS), and the FLRA serves the special function of applying the general provisions of the FSLMRS to the complexities of federal labor relations. 5 U.S.C.A. § 7105(a).

Cases that cite this headnote

**[15] Labor and Employment**

Powers and Functions of Boards

The Federal Labor Relations Authority (FLRA) regularly construes the Federal Service Labor-Management Relations Statute (FSLMRS) and adjudicates whether governmental actions violate the statute. 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

**[16] Labor and Employment**

Collective bargaining in general

Unlike Article III courts, the Federal Labor Relations Authority's (FLRA) ordinary course of business involves determining whether subjects are mandatory bargaining topics or whether

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

the government has bargained in good faith, as required under the Federal Service Labor-Management Relations Statute(FSLMRS); thus, the FLRA's familiarity with federal labor-management relations is more than helpful background knowledge. U.S. Const. art. 3; 5 U.S.C.A. §§ 7105(a), 7123(a), 7123(c).

Cases that cite this headnote

**[17] Administrative Law and Procedure**
Exclusive or original jurisdiction

In determining whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, the question that must be asked in considering whether the claims are beyond the expertise of the agency is whether agency expertise may be brought to bear on the claims, not whether the expertise is essential.

Cases that cite this headnote

**[18] Administrative Law and Procedure**
Exclusive or original jurisdiction

In determining whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, a federal agency's relative level of insight into the merits of a constitutional question is not determinative.

Cases that cite this headnote

**[19] Administrative Law and Procedure**
Exclusive or original jurisdiction

In determining whether Congress has precluded district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review, even in the absence of constitutional expertise a federal agency's expertise in other areas may still weigh in favor of administrative review if the agency could obviate the need to address broad constitutional and statutory claims by resolving a case on other grounds or if the agency could alleviate constitutional concerns through its interpretation of its statute.

Cases that cite this headnote

**[20] Administrative Law and Procedure**
Administrative Construction of Statutes

There are precious few cases involving interpretation of statutes authorizing agency action in which judicial review is not aided by the agency's statutory construction.

Cases that cite this headnote

Appeal from the United States District Court for the District of Columbia (No. 1:18-cv-01261)

**Attorneys and Law Firms**

Joseph F. Busa, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were Hashim M. Mooppan, Deputy Assistant Attorney General, and Mark B. Stern, Attorney, U.S. Department of Justice. Sarah Carroll, Attorney, U.S. Department of Justice, entered an appearance.

Andres M. Grajales and Gregory O'Duden, Washington, DC, argued the causes for appellees. With them on the joint brief were David A. Borer, Washington, DC, Matthew W. Milledge, Larry J. Adkins, Washington, DC, Julie M. Wilson, Paras N. Shah, Allison C. Giles, Washington, DC, Jessica Horne, Judith E. Rivlin, Teague P. Paterson, Syracuse, NY, Michael L. Artz, Washington, DC, Jefferson D. Friday, David Strom, Washington, DC, and Suzanne Summerlin, Washington, DC. Keith R. Bolek, Washington, DC, and Richard J. Hirn, Washington, DC, entered appearances.

Victoria L. Bor, Washington, DC, Jonathan D. Newman, Washington, DC, Harold C. Becker, Los Angeles, CA, Matthew J. Ginsburg, Andover, MA, Brian A. Powers, Washington, DC, Micah Berul, and Anthony Tucci, Staten Island, NY, were on the brief for amici curiae American Federation of Labor and Congress of Industrial Unions, et al. in support of appellees. James B. Coppess, Washington, DC, entered an appearance.

Mark Gisler and Jean-Marc Favreau, Washington, DC, were on the brief for amicus curiae Thomas Wolf, Governor of Pennsylvania, in support of appellees. Michael J. Gan, Washington, DC, entered an appearance.

Adina H. Rosenbaum, Washington, DC, and Adam R. Pulver, New York, NY, were on the brief for amici curiae Representative Elijah Cummings, et al. in support of appellees.

Before: Griffith and Srinivasan, Circuit Judges, and Randolph, Senior Circuit Judge.

**Opinion**

Griffith, Circuit Judge:

***1** In May 2018, the President issued three executive orders regarding relations between the federal government and its employees. Unions representing federal employees brought suit in the district court challenging various aspects of the orders. The district court concluded that certain provisions in the orders were unlawful and enjoined the President's subordinates in the executive branch from implementing them. We hold that the district court lacked jurisdiction and vacate its judgment.

I

A

In the 1960s, Presidents used executive orders to grant federal employees "limited rights to engage in concerted activity" through unions. *ATF v. FLRA*, 464 U.S. 89, 91-92, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983); *see* Exec. Order No. 10,988, *Employee-Management Cooperation in the Federal Service*, 27 Fed. Reg. 551 (Jan. 17, 1962); Exec. Order No. 11,491, *Labor-Management Relations in the Federal Service*, 34 Fed. Reg. 17,605 (Oct. 29, 1969). In 1978, Congress enacted the Federal Service Labor-Management Relations Statute (the "Statute" or FSLMRS) to govern labor relations between the executive branch and its employees. The Statute is set forth in Title VII of the Civil Service Reform Act (CSRA), Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (1978) (codified at 5 U.S.C. §§ 7101-35).

The Statute grants federal employees the right to organize and bargain collectively, and it requires that unions and federal agencies negotiate in good faith over certain matters. *See* 5 U.S.C. §§ 7102(2), 7103(a)(14), 7106, 7114, 7117(a)(1); *ATF*, 464 U.S. at 91-92, 104 S.Ct. 439. But except as "expressly provided," the Statute does not limit "any function of, or authority available to, the President which the President had immediately before [its] effective date." Pub. L. No. 95-454, § 904, 92 Stat. at 1224 (codified at 5 U.S.C. § 1101 note).

The Statute also establishes a scheme of administrative and judicial review. Administrative review is provided by the Federal Labor Relations Authority (FLRA), a three-member agency charged with adjudicating federal labor disputes, including "negotiability" disputes and "unfair labor practice" disputes. *See* 5 U.S.C. § 7105(a). In negotiability disputes, the FLRA determines whether agencies and unions must bargain over certain subjects. *Id.* §§ 7105(a)(2)(E), 7117(c)(1). In unfair labor practice proceedings, the FLRA resolves whether an agency must bargain over a subject, violated the duty to bargain in good faith, or otherwise failed to comply with the Statute. *Id.* §§ 7105(a)(2)(G), 7116(a), 7118. The FLRA's decisions in such disputes are subject to direct review in the courts of appeals. *Id.* § 7123(a), (c).

B

In May 2018, the President issued three executive orders regarding federal labor-management relations. Among other requirements, the "Collective Bargaining Order" provides agencies with certain procedures that they should seek to institute during negotiations with unions. *See* Exec. Order No. 13,836, *Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining*, 83 Fed. Reg. 25,329, 25,331-32 (May 25, 2018). This order also tells agencies not to negotiate over "permissive" subjects, *id.* at 25,332, defined as those that are negotiable "at the election of the agency" under 5 U.S.C. § 7106(b)(1).

***2** The "Official Time Order" instructs agencies to aim to limit the extent to which collective bargaining agreements authorize "official time," meaning time spent by employees on union business during working hours. *See* Exec. Order No. 13,837, *Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use*, 83 Fed. Reg. 25,335, 25,336 (May 25, 2018). This order also establishes rules that limit whether "agency time and resources" may be used by employees on non-government business. *Id.* at 25,337 (capitalization omitted).

The "Removal Procedures Order" tells agencies to seek to exclude from grievance proceedings any dispute over a decision to remove an employee "for misconduct or unacceptable performance." Exec. Order No. 13,839, *Promoting Accountability and Streamlining Removal*

*Procedures Consistent With Merit System Principles*, 83 Fed. Reg. 25,343, 25,344 (May 25, 2018). Subject to various exceptions, this order also prohibits agencies from resolving disputes over employee ratings and incentive pay through grievance or arbitration proceedings, and it mandates that some subpar employees may have no more than thirty days to improve their performance before being reassigned, demoted, or fired. *Id.* at 25,344-45.

Although numerous, the various challenged provisions of the executive orders fall into three categories: provisions that (1) direct agencies to refuse to bargain over "permissive" subjects based on 5 U.S.C. § 7106(b)(1); (2) establish government-wide rules for employee and agency conduct, which may have the effect of removing mandatory subjects from bargaining based on 5 U.S.C. § 7117(a)(1); and (3) set goals that agencies must pursue during bargaining. The executive orders enforce these goals by directing agencies to "commit the time and resources necessary" to achieve them and by requiring agencies to notify the President through the Office of Personnel Management (OPM) if the goals are not met. 83 Fed. Reg. at 25,331-32, 25,336, 25,344. The orders also require agencies "to fulfill their obligation to bargain in good faith" throughout their dealings with unions. *Id.* at 25,331, 25,336; *see also id.* at 25,344.

C

The American Federation of Government Employees (AFGE) and sixteen other federal labor unions immediately challenged the executive orders in four separate suits against the President, OPM, and the Director of OPM. *AFGE v. Trump*, 318 F. Supp. 3d 370, 391 (D.D.C. 2018). The suits were consolidated before the district court in June 2018. *Id.* at 392. As explained by the district court, the unions asserted four types of claims: (1) The executive orders are unlawful because the President has no authority "at all" to issue executive orders in the field of federal labor relations; (2) The executive orders violate the Constitution, specifically the Take Care Clause and the First Amendment right to freedom of association; (3) The executive orders and their various provisions violate particular requirements of the Statute; and (4) The executive orders' "cumulative impact" violates the right to bargain collectively as guaranteed by the Statute. *Id.* at 391-92.

Some of the unions moved for preliminary injunctions, but all parties ultimately agreed to the district court's proposal that the dispute be resolved on cross-motions for summary judgment, litigated on an expedited briefing schedule.

The district court issued its decision in late August 2018. The court first held that it had subject matter jurisdiction, rejecting the government's argument that jurisdiction belonged exclusively to the FLRA and (on direct review from the FLRA) the courts of appeals. *Id.* at 395-409. On the merits, the district court ruled that the President has constitutional and statutory authority to issue executive orders in the field of federal labor relations generally, but nine provisions of these executive orders violated the Statute: Some did so by removing from the bargaining table subjects that "must" or "may" be negotiable, others by preventing agencies from bargaining in good faith. *Id.* at 412-33. The court enjoined the President's subordinates within the executive branch from implementing these provisions. *Id.* at 440; Order at 2-3, *AFGE v. Trump*, No. 1:18-cv-1261 (D.D.C. Aug. 24, 2018), Dkt. No. 57. [*]

[*] The district court also held that several provisions of the executive orders were consistent with the Statute, *AFGE*, 318 F. Supp. 3d at 437-39; rejected the Take Care Clause claim, *id.* at 439; and did not address the First Amendment claim because the only provision of the executive orders challenged under the First Amendment was held unlawful under the Statute, *id.* at 430 n.16. The unions do not contest these decisions on appeal.

***3** The government appealed, arguing that the district court lacked subject matter jurisdiction and erred in holding unlawful the various provisions of the executive orders. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We review the district court's subject matter jurisdiction de novo. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009).

II

We reverse because the district court lacked subject matter jurisdiction. The unions must pursue their claims through the scheme established by the Statute, which provides for administrative review by the FLRA followed by judicial review in the courts of appeals.

A

**[1]** **[2]** **[3]** "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007). District courts have jurisdiction over civil actions arising under the Constitution and laws of the United States, 28 U.S.C § 1331, but Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review. To determine whether Congress has done so, we use the two-step framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994). Under that framework, "Congress intended that a litigant proceed exclusively through a statutory scheme ... when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.' " *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin*, 510 U.S. at 207, 212, 114 S.Ct. 771); *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010).

**[4]** **[5]** Here, the district court concluded that the first step is satisfied. *AFGE*, 318 F. Supp. 3d at 396-97. The parties do not dispute this conclusion on appeal, nor could they. "With the FSLMRS, as with all of the CSRA: 'Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector.' " *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990)). The scheme "provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims." *Id.* at 638; *see AFGE v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004). Thus, we can fairly discern that Congress intended the statutory scheme to be exclusive with respect to claims within its scope.

The parties' dispute arises at the second step. There, the district court held that the unions' claims are not "of the type" Congress intended for review within the statutory scheme. *AFGE*, 318 F. Supp. 3d at 397-409. We disagree.

B

**[6]** **[7]** Claims "will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018); *see Free Enter. Fund*, 561 U.S. at 489, 130 S.Ct. 3138; *Thunder Basin*, 510 U.S. at 212-13, 114 S.Ct. 771. These considerations do not form "three distinct inputs into a strict mathematical formula." *Jarkesy*, 803 F.3d at 17. Rather, they serve as "general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Id.* In this case, all three considerations demonstrate that the unions must pursue their claims through the statutory scheme and not before the district court.

1

***4** **[8]** First, "all meaningful judicial review" is not foreclosed by requiring the unions to proceed through the statutory scheme. *See Arch Coal*, 888 F.3d at 500. The unions argue that the scheme does not provide for meaningful judicial review because they are unable to obtain "pre-implementation" review of the executive orders or immediate relief barring all agencies from implementing the executive orders. This argument is foreclosed by the Supreme Court's decision in *Thunder Basin* and our decision in *AFGE v. Secretary of the Air Force*, 716 F.3d 633 (D.C. Cir. 2013).

In *Thunder Basin*, a mining company's employees designated two non-employees to serve as their representatives. 510 U.S. at 204, 114 S.Ct. 771. Believing this violated the National Labor Relations Act (NLRA), the company refused to post their contact information. *Id.* This refusal would ordinarily have drawn a citation from the mine safety agency, but before that could occur, the company filed a pre-enforcement challenge in the district court, arguing that the designation of non-employees as union representatives violated the NLRA. *Id.* at 204-05, 213-14, 216, 114 S.Ct. 771. The Supreme Court held that the district court's jurisdiction was precluded by the statutory scheme, which provided for review before the Mine Safety and Health Review Commission followed by appeal to the circuit courts. *Id.* at 218, 114 S.Ct. 771. Critically, that review was held "meaningful" even though there was no way for the company to assert its pre-enforcement challenge, whether before the Commission or the district court. *Id.* at 212-16, 114 S.Ct. 771. The company was required to wait until the mine safety agency issued a citation and initiated concrete enforcement proceedings before the Commission. *Id.* at 216, 114 S.Ct. 771. Only through those proceedings—not before the district court—could the company challenge

the designation of the non-employees as violating the NLRA. *Id.* Here, *Thunder Basin* instructs that the unions are not necessarily entitled to raise a pre-implementation challenge in the district court, and that Congress may require them to litigate their claims solely through the statutory scheme, at least so long as they can eventually obtain review and relief.

*Air Force* provides the same guidance, but more emphatically and in the specific context of the Statute's scheme for review. The case began with a regulation requiring certain civilian employees to wear Air Force uniforms. *See AFGE v. Sec'y of the Air Force*, 841 F. Supp. 2d 233, 235 (D.D.C. 2012). AFGE and its local unions brought an Administrative Procedure Act (APA) suit in the district court, challenging the regulation as arbitrary and capricious, unlawful under various provisions of Titles 10 and 18 of the U.S. Code, and in excess of the Secretary's authority under Title 10. *Id.* We held that the district court lacked jurisdiction, explaining that the Statute "provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims," and " 'federal employees may not circumvent' " the Statute "by seeking judicial review outside [its] procedures." *Air Force*, 716 F.3d at 636, 638 (quoting *Steadman*, 918 F.2d at 967).

This was so even though AFGE and its local unions could not obtain immediate review of their "pre-implementation" claims before the FLRA, nor could they obtain their preferred form of relief. Instead, the statutory scheme provided the local unions with more modest "administrative options" for challenging the uniform regulation, followed by judicial review in the courts of appeals. *Id.* at 636-38. For example, a local union could attempt to bargain over the dress code, and if the Air Force refused to bargain, the local union could raise a negotiability dispute with the FLRA. *Id.* at 637 (citing 5 U.S.C. § 7117(c)). A local union could also use a grievance proceeding to adjudicate a claim that the dress code violated Title 10. *Id.* at 637-38 & n.4 (citing 5 U.S.C. § 7121). Or a union could challenge the dress code by filing unfair labor practice charges. *Id.* at 638 (citing 5 U.S.C. §§ 7116(a), 7118(a)). We acknowledged that the unions "may not prevail using one of these procedures or would prefer to challenge the Air Force instructions by some other means," such as an APA suit in district court, but "that does not mean their claims may be brought outside the [Statute's] exclusive remedial scheme." *Id.*

***5** In fact, we went even further, holding that the unions were required to raise their challenges through the scheme even if that made it *impossible* to obtain particular forms of review or relief. The Statute "can preclude a claim from being brought in a district court even if it *forecloses* the claim from administrative review" and provides no other way to bring the claim. *Id.* (emphasis added). For example, AFGE did not wish to challenge the uniform regulation on a concrete "local-by-local" basis through the FLRA but rather sought to do so on a "nationwide" basis in an APA suit before the district court. *Id.* at 639. The statutory scheme provided no way to assert such a "nationwide" attack, but that did not mean AFGE could resort to the courts. *Id.* at 638. Rather, it meant AFGE "may not raise the claim at all." *Id.* Even plaintiffs with "nationwide" or "systemwide" challenges may not "circumvent" the scheme established by the Statute. *Id.* at 639 (internal quotation marks omitted). We also acknowledged that even though the scheme might not afford the unions the same relief they sought in district court, the Statute still precluded the district court from exercising jurisdiction: "[I]t is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention." *Id.* at 638 (internal quotation marks omitted).

We need not determine the extent to which *Air Force* would allow a statutory scheme to foreclose review and relief. This case does not test *Air Force*'s outer bounds because the unions here are not cut off from review and relief. Rather, they can ultimately obtain review of and relief from the executive orders by litigating their claims through the statutory scheme in the context of concrete bargaining disputes.

On the present record, it appears that the Statute provides the unions with several "administrative options" for challenging the executive orders before the FLRA, followed by judicial review. *See id.* at 637. First, if an agency follows the executive orders' goal-setting provisions while bargaining with a union, the union could charge in an unfair labor practice proceeding that the agency's adherence to those provisions amounted to bad-faith bargaining in violation of the Statute. The FLRA could then determine whether the agency had done so, and whether the agency may continue pursuing those goals during bargaining.

Also, if an agency refuses to bargain over various subjects based on the executive orders' government-wide rules, the unions could charge in a negotiability or unfair labor practice dispute that the agency had refused to bargain over mandatory matters in violation of the Statute. In response, the government could argue (as it does here) that 5 U.S.C. § 7117(a)(1) authorizes it to remove subjects from bargaining

in this way, and the FLRA could then determine whether the government is correct. *See, e.g.*, *Nat'l Fed'n of Fed. Emps. Local 15*, 33 F.L.R.A. 436, 438-39 (1988); *AFSCME Local 3097 Union*, 31 F.L.R.A. 322, 345-47 (1988); *cf. IRS v. FLRA*, 996 F.2d 1246, 1252 (D.C. Cir. 1993) (reviewing the FLRA's holding as to whether a government-wide rule displaced the duty to bargain under the Statute, indicating that the FLRA may hear such claims).

The same sequence could occur if an agency refuses to bargain over permissive subjects as directed by the executive orders. The union could charge the agency with violating the Statute, and the government could respond (as it does here) by invoking 5 U.S.C. § 7106(b)(1), which states that certain subjects are negotiable "at the election of the agency." The FLRA could then determine whether the agency may refuse to bargain in this way.

These administrative options might enable the unions to obtain from the FLRA much of the review and relief that they sought from the district court. The unions worry that the FLRA cannot address all of their claims, especially their broader claims: that the President acted ultra vires or violated the Take Care Clause, the First Amendment, or the Statute in issuing the executive orders. And the unions argue that the FLRA cannot entertain suits against the President. Even if true, the latter point does not appear to make FLRA review any less meaningful than district court review in this case, where the unions stated that injunctive relief against the President's subordinates in executive branch agencies was sufficient to afford them the relief they sought and the district court did not grant injunctive relief against the President. *See* Tr. of Mot. Hr'g at 133-34, *AFGE v. Trump*, No. 1:18-cv-1261 (D.D.C. July 25, 2018), Dkt. No. 56; Order at 2-3, *AFGE v. Trump*, No. 1:18-cv-1261 (D.D.C. Aug. 24, 2018), Dkt. No. 57. Instead, the unions obtained an order directing that the President's subordinates may not implement various provisions of the executive orders during bargaining. Order at 2-3, *AFGE v. Trump*, No. 1:18-cv-1261 (D.D.C. Aug. 24, 2018), Dkt. No. 57. On this record, it appears that the unions may seek similar orders through the statutory scheme. Indeed, the government has even taken the position that the FLRA would have the authority to resolve the unions' broad statutory claims, specifically those asserting that the executive orders are invalid or ultra vires under the Statute. *See* Tr. of Oral Arg. at 42:16-43:19 (April 4, 2019).

***6** **[9]** But we need not map the precise contours of the FLRA's authority to adjudicate the claims in this case. For even if the FLRA could not address the claims, circuit courts could do so on appeal from the FLRA. The statutory scheme provides that the courts of appeals "shall have jurisdiction of the [FLRA] proceeding and of the question determined therein" and "may make and enter a decree affirming and enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the [FLRA]." 5 U.S.C. § 7123(a), (c). Also, the courts of appeals generally may not consider objections that were not at least "urged" before the FLRA. *Id.* § 7123(c). Reviewing similar statutory schemes, the Supreme Court has explained that "[i]t is not unusual for an appellate court reviewing the decision of an administrative agency to consider a constitutional challenge to a federal statute that the agency concluded it lacked authority to decide," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 18 n.8, 132 S.Ct. 2126, 183 L.Ed.2d 1 (2012), and we recently elaborated that "it is of no dispositive significance" whether the agency "has the authority to rule" on constitutional claims so long as the claims "can eventually reach 'an Article III court fully competent to adjudicate' them," *Jarkesy*, 803 F.3d at 19 (quoting *Elgin*, 567 U.S. at 17, 132 S.Ct. 2126); *accord Bank of La. v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 925-26 (5th Cir. 2019). We see no reason why the scheme here would prevent us from resolving the unions' constitutional or statutory challenges even if the FLRA could not.

**[10]** The unions argue, and the district court concluded, that we would not be able to address such challenges because our jurisdiction is entirely "derivative" of the FLRA's. Union Br. 16-18; *AFGE*, 318 F. Supp. 3d at 400. As the district court put it, the Statute does not authorize us "to hear matters that are beyond the scope of the FLRA's jurisdiction," *AFGE*, 318 F. Supp. 3d at 400, because it merely grants us jurisdiction over the FLRA "proceeding" and "the question determined therein" and authorizes us to affirm, modify, or set aside only the FLRA's order, *id.* (quoting 5 U.S.C. § 7123(c)). We once suggested in a footnote that the Statute would not allow us to review constitutional claims that the FLRA could not consider. *Nat'l Fed'n of Fed. Emps. v. Weinberger*, 818 F.2d 935, 940 n.7 (D.C. Cir. 1987). But this suggestion cannot survive the Supreme Court's decision in *Thunder Basin*, which involved a statutory scheme that used nearly identical language, conferring on appellate courts jurisdiction over the Mine Safety and Health Review Commission's "proceeding" and "the questions determined therein," with the authority to affirm, modify, or set aside the Commission's order. 30 U.S.C. § 816(a)(1); *see* 510 U.S. at 208, 114 S.Ct. 771. The Supreme Court held that this scheme allowed the courts of appeals to "meaningfully address[ ]" statutory and constitutional claims

even if the Commission could not. *Thunder Basin*, 510 U.S. at 215, 114 S.Ct. 771. Likewise, *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 868 (D.C. Cir. 2002), involved a statute that used the same language to empower us to review the orders of the Occupational Safety and Health Review Commission, *see* 29 U.S.C. § 660(a). This scheme, we explained, permitted us to meaningfully address constitutional claims on appeal from the Commission. *Sturm*, 300 F.3d at 874; *see also Jarkesy*, 803 F.3d at 19 (nondelegation challenge must be channeled through the Securities and Exchange Commission, followed by review in this court, even if the Commission cannot resolve the challenge). The same language in the FSLMRS leads to the same conclusion: we may review the unions' broad statutory and constitutional claims on appeal from an FLRA proceeding even if the FLRA cannot.

This conclusion is confirmed by our decision in *AFGE v. Loy*, 367 F.3d 932 (D.C. Cir. 2004). There, several unions alleged in district court that an agency directive prohibiting airport security screeners from engaging in collective bargaining was "ultra vires" and violated the First and Fifth Amendments of the Constitution. *Id.* at 934, 936. We held that the district court lacked jurisdiction and the unions were required to pursue even their constitutional claims through the FSLMRS's scheme. *Id.* at 936-37. Our decision might have been different, we acknowledged, if the scheme "preclude[d] all judicial review of" the constitutional claims. *Id.* (quoting *Thunder Basin*, 510 U.S. at 215 n.20, 114 S.Ct. 771). But we found "unwarranted" the "assumption" that the courts of appeals would not be able to review the claims on appeal from the FLRA. *Id.* at 937. So too here. As we have explained, we see no reason to think that the unions' claims would be "unreviewable" by an appellate court through the statutory scheme. *See id.*; *see also Steadman*, 918 F.2d at 967 ("Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector," and "federal employees may not circumvent that structure even if their claim is based as well on the Constitution.").

***7** Requiring the unions here to proceed through the FSLMRS's scheme does not foreclose "all meaningful judicial review." *See Arch Coal*, 888 F.3d at 500. Although the unions are not able to pursue their preferred systemwide challenge through the scheme, they can ultimately obtain review of and relief from the executive orders by litigating their claims in the context of concrete bargaining disputes. Such review, according to *Thunder Basin*, *Air Force*, and *Loy*, qualifies as meaningful.

2

**[11]** For many of the same reasons, the unions' claims are not "wholly collateral" to the statutory scheme. *See Arch Coal*, 888 F.3d at 500. This consideration is "related" to whether "meaningful judicial review" is available, and the two considerations are sometimes analyzed together. *Jarkesy*, 803 F.3d at 22. In its most recent decision on this subject, the Supreme Court determined whether the plaintiffs' challenge was "wholly collateral" to a statutory scheme by asking whether the plaintiffs "aimed to obtain the same relief they could seek in the agency proceeding." *Id.* at 23 (citing *Elgin*, 567 U.S. at 22, 132 S.Ct. 2126). The Supreme Court concluded that they did, because their challenge was of the type that was "regularly adjudicated" through the statutory scheme and the statutory scheme empowered the agency and the reviewing appellate court to provide the relief sought by the plaintiffs. *Elgin*, 567 U.S. at 22, 132 S.Ct. 2126.

**[12]** The unions' challenge in this case is of the type that is regularly adjudicated through the FSLMRS's scheme: disputes over whether the Statute has been violated. And the unions ask the district court for the same relief that they could ultimately obtain through the statutory scheme, namely rulings on whether the executive orders are lawful and directives prohibiting agencies from following the executive orders during bargaining disputes. Their challenge is not wholly collateral to the statutory scheme.

3

**[13]** **[14]** **[15]** **[16]** Finally, the unions' claims are not "beyond the expertise" of the FLRA. *See Arch Coal*, 888 F.3d at 500. Many of their claims allege that the executive orders direct agencies to violate the Statute by refusing to bargain over mandatory subjects or by taking actions that are inconsistent with the duty to bargain in good faith. These matters lie at the core of the FLRA's "specialized expertise in the field of federal labor relations." *AFGE Council of Locals No. 214 v. FLRA*, 798 F.2d 1525, 1528 (D.C. Cir. 1986). The FLRA has "primary responsibility for administering and interpreting" the Statute, *id.*; *see* 5 U.S.C. § 7105(a), and it serves the " 'special function of applying the general provisions of the [Statute] to the complexities' of federal labor relations," *Nat'l Fed'n of Fed. Emps. Local 1309 v. Dep't of Interior*, 526 U.S. 86, 99, 119 S.Ct. 1003, 143 L.Ed.2d 171 (1999) (quoting *ATF*, 464 U.S. at 97, 104

S.Ct. 439). In doing so, the FLRA "regularly construes" the Statute and adjudicates whether governmental actions violate the Statute. *See Elgin*, 567 U.S. at 23, 132 S.Ct. 2126. Indeed, unlike Article III courts, the FLRA's "ordinary course of business" involves determining whether subjects are mandatory bargaining topics or whether the government has bargained in good faith. *See Jarkesy*, 803 F.3d at 28. The FLRA's familiarity with federal labor-management relations is thus more than "helpful background knowledge." *AFGE*, 318 F. Supp. 3d at 408. It is expertise that goes to the core issues in this case.

**[17]** The district court concluded that this consideration weighed in favor of exercising its jurisdiction because the FLRA's expertise was "potentially helpful" but "not essential to resolving" the unions' claims. *Id.* at 408-09 (capitalization omitted). But that is not the law. The question we must ask is whether agency expertise may be "brought to bear on" the claims, not whether the expertise is essential. *Jarkesy*, 803 F.3d at 29.

***8 [18] [19] [20]** The district court also viewed the unions' claims as "primarily" concerned with "separation-of-powers issues" and "whether a statute or the Constitution has authorized the President to act in a particular way"—issues that are the "bread and butter of the Judicial Branch." *AFGE*, 318 F. Supp. 3d at 408 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 597, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Frankfurter, J., concurring), and *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). As already discussed, many of the claims are not so grand, but rather require interpreting the FSLMRS—the very law that the FLRA is charged with administering and interpreting. Regardless, the Supreme Court has "clarified" that "an agency's relative level of insight into the *merits* of a constitutional question is not determinative." *Jarkesy*, 803 F.3d at 28-29 (citing *Elgin*, 567 U.S. at 22-23, 132 S.Ct. 2126). Even in the absence of constitutional expertise, an agency's expertise in other areas may still weigh in favor of administrative review if the agency could "obviate the need to address" broad constitutional and statutory claims by resolving a case on other grounds or if the agency could "alleviate constitutional concerns" through its interpretation of its statute. *Id.* at 29 (quoting *Elgin*, 567 U.S. at 22-23, 132 S.Ct. 2126); *see Bank of La.*, 919 F.3d at 929-30. That is the case here. The FLRA could "moot the need to resolve" the unions' constitutional claims by concluding that the Statute bars agencies from implementing the executive orders. *See Jarkesy*, 803 F.3d at 29; *cf. AFGE*, 318 F. Supp. 3d at 430 n.16 (doing just that by declining to resolve the First Amendment claim after concluding that the provision at issue ran afoul of the Statute). Also, the FLRA "could offer an interpretation of the [Statute] in the course of the proceeding" that might alleviate or "shed light on" the constitutional concerns. *See Jarkesy*, 803 F.3d at 29. After all, "there are precious few cases involving interpretation of statutes authorizing agency action in which our review is not aided by the agency's statutory construction." *Id.* (quoting *Mitchell v. Christopher*, 996 F.2d 375, 379 (D.C. Cir. 1993)). Because the FLRA's expertise can be "brought to bear" on the unions' claims in these ways, "we see no reason to conclude that Congress intended to exempt" the claims from the statutory scheme. *Id.* (quoting *Elgin*, 567 U.S. at 23, 132 S.Ct. 2126).

III

All three considerations demonstrate that the unions' claims fall within the exclusive statutory scheme, which the unions may not bypass by filing suit in the district court. *See Arch Coal*, 888 F.3d at 500. Lacking jurisdiction, the district court had no power to address the merits of the executive orders. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018). We therefore reverse the judgment of the district court holding that it had jurisdiction, and we vacate the district court's judgment on the merits.

*So ordered.*

**All Citations**

--- F.3d ----, 2019 WL 3122446, 2019 L.R.R.M. (BNA) 261,655

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.